UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――― x
                                                :
                                                :
                                                :
                                                :
In re PARMALAT SECURITIES LITIGATION  :  MASTER DOCKET
                                                :  04 MD 1653 (LAK)
This document relates to:                       :
                                                :
    PARMALAT SECURITIES LITIGATION  :  04 Civ. 0030 (LAK) ECF Case
                                                :  ELECTRONICALLY FILED
                                                :
                                                :
                                                :
―――――――――――――――――――――――― x

# MEMORANDUM IN SUPPORT OF THE MOTION OF DEFENDANT JAMES E. COPELAND, JR. TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

KRAMER LEVIN NAFTALIS & FRANKEL, LLP
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant James E. Copeland, Jr.

KL3:2389410.1

# TABLE OF CONTENTS

**PAGE**

Table Of Authorities ..................................................................................................... ii - iv

Preliminary Statement ............................................................................................................. 1

The Complaint ........................................................................................................................ 2

    A.    No Facts Linking Mr. Copeland To The Parmalat Audits ........................................ 2

    B.    No Facts Linking Mr. Copeland To A Primary Violator ........................................... 3

Argument ................................................................................................................................ 4

    I.    COUNT IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OR RULE 10b-5(A)&(C) ........................................... 4

        A.    The Complaint Does Not Allege A Single Misrepresentation Or Omission By Mr. Copeland ............................................................................. 5

        B.    The Complaint Fails To Allege Scienter As To Mr. Copeland ............................ 5

        C.    The Allegations Against Mr. Copeland Do Not Constitute Market Manipulation ......................................................................................... 7

        D.    The Complaint's Fraud Allegations Are Insufficient As To Mr. Copeland Because They Are Based On Information And Belief .............................. 8

    II.    COUNT VIII SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 20(A) OF THE SECURITIES EXCHANGE ACT ....................................................................................... 9

        A.    The Complaint Fails To Allege A Primary Violation By The Alleged Controlled Person ........................................................................................... 10

        B.    The Complaint Fails To Allege Facts Showing That Mr. Copeland Controlled DTT, Deloitte USA Or The Parmalat Audits Or Was A Culpable Participant In Wrongdoing ............................................................... 10

Conclusion ........................................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

**PAGE**

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 02 Civ. 8726 (LAK),
  2004 WL 616123 (S.D.N.Y. Mar. 30, 2004) ............................................................................9

*American Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240
  (S.D.N.Y. 1996) ......................................................................................................................8

*American Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir.), *cert. denied*,
  488 U.S. 852, 109 S. Ct. 136 (1988) .....................................................................................13

*Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, No. 03 Civ. 0971(RCC), 2004
  WL 51224 (S.D.N.Y. Jan. 9, 2004) .........................................................................................8

*Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir. 1986) ...........................11

*In re Blech Secs. Lit.*, 961 F. Supp. 569 (S.D.N.Y. 1997) ......................................................11, 13

*Branch v. Tower Air, Inc.*, No. 94 Civ. 6625(JFK), 1995 WL 649935
  (S.D.N.Y. Nov. 3, 1995) ......................................................................................................8, 9

*Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir. 1984) ..............................................................11

*CFTC v. Avco Fin. Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998), *aff'd in part
  rev'd in part on other grounds, CFTC v. Vartuli*, 228 F.3d 94 (2nd Cir.
  2000) .....................................................................................................................................11

*Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997) ............................8

*In re Citigroup, Inc. Secs. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ...................................5, 6

*In re Deutsche Telekom AG Secs. Litig.*, No. 00 CIV 9475 SHS,
  2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) .........................................................................11

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ..............................8

*Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) ................................................................7

*Eickhorst v. American Completion & Dev. Corp.*, 706 F. Supp. 1087
  (S.D.N.Y. 1989) ............................................................................................................... 12-13

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384 (1976) ............................7

*In re Health Mgmt. Sys., Inc. Secs. Litig.*, No. 97 CIV. 1865(HB),
   1998 WL 283286 (S.D.N.Y. June 1, 1998) .................................................................. 9

*ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234 (S.D.N.Y. 1997) ...................................... 9

*IIT Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980); ............................................ 11

*In re Initial Public Offering Secs. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................ 9

*In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239 (S.D.N.Y. 1996) ........................................ 5

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) ........................................... 10-11, 12

*Lewis v. Oppenheimer & Co.*, 481 F. Supp. 1199 (S.D.N.Y. 1979) ................................... 7

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ................................................................... 8

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) .................................. 5, 7

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................... 6

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991) ............................................... 12

*In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227 (S.D.N.Y. 2001) .................................... 11

*Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281 (S.D.N.Y. 1994) ............................. 11

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir.), *cert. denied*, 531 U.S. 1012,
   121 S. Ct. 567 (2000) ............................................................................................... 9

*O'Brien v. National Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ......... 12

*Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) .......... 11

*Piper v. Chris-Craft Indus.*, 430 U.S. 1, 97 S. Ct. 926 (1977) .......................................... 7

*Rombach v. Chong*, 955 F.3d 164 (2d Cir. 2004) ............................................................. 6

*In re Royal Ahold N.V. Secs. & ERISA Litig.*, No. Civ.1:03-MD-01539,
   2004 WL 2955934 (D. Md. Dec. 21, 2004) ............................................................. 7

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S. Ct. 1292 (1977) ............................... 7

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), *cert. denied*,
   421 U.S. 976, 95 S. Ct. 1976 (1975) ........................................................................ 8

KL3:2389410.1

*Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438 (S.D.N.Y. 1999) .................................................. 5

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) .................................................. 8

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) .................................................. 5

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) .................................................. 10

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231(RPP), 2001 WL 396521 (S.D.N.Y. Apr. 19, 2001) .................................................. 10

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369 (S.D.N.Y. 1996) .................................................. 10, 12

*In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041(DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .................................................. 13

*Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 137 (1988) .................................................. 8

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) .................................................. 8

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .................................................. 5

## STATUTES

15 U.S.C. § 78u-4(b)(1)(B) .................................................. 5, 8

Fed.R. Civ. P. 8 .................................................. 1, 2, 3

Fed. R. Civ. P. 9 .................................................. 1, 5, 8

Fed. R. Civ. P. 12 .................................................. 1, 7

Private Securities Litigation Reform Act .................................................. 1, 5

Securities Exchange Act, Section 10 .................................................. 1, 4, 5, 7

Securities Exchange Act, Section 20 .................................................. 1, 10

Defendant James E. Copeland, Jr. ("Copeland") respectfully submits this memorandum in support of his motion to dismiss the First Amended Consolidated Class Action Complaint ("Complaint") as against him for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 8(a)(2), 8(e)(1), 9(b), 12(b)(1), 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA").

## Preliminary Statement

Plaintiffs sue for alleged damages sustained as a result of their purchase of securities of Parmalat Finanziaria S.p.A. ("Parmalat") and its subsidiaries between January 5, 1999 and December 18, 2003. Plaintiffs allege that the price of Parmalat securities was inflated due to a multi-billion dollar fraud.

The Complaint asserts two causes of action against Mr. Copeland: Count IV for securities fraud pursuant to Section 10(b) of the Securities Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder, and Count VIII pursuant to Section 20(a) of the Exchange Act for being a controlling person of Deloitte Touche Tohmatsu ("DTT") and Deloitte & Touche LLP ("Deloitte USA").

Mr. Copeland shows in Point I that Count IV should be dismissed for failure to state a claim and to plead fraud with particularity. Plaintiffs fail adequately to allege any of the elements of a Section 10(b) claim. For example, *Central Bank* requires dismissal because plaintiffs do not allege that Mr. Copeland made any statement or omission on which plaintiffs relied in purchasing Parmalat securities. In addition, plaintiffs fail to allege facts that establish a strong inference of scienter. Rather, plaintiffs impermissibly base their conclusory allegations against Mr. Copeland on information and belief without a shred of evidentiary support.

Mr. Copeland shows in Point II that Count VIII should be dismissed for failure to state a claim under Section 20(a) of the Exchange Act. Plaintiffs have not adequately alleged that Mr. Copeland was a controlling person of a primary violator or a culpable participant in wrongdoing.

While plaintiffs make a conclusory allegation that Mr. Copeland controlled DTT and Deloitte USA, neither was an auditor of Parmalat or had anything to do with the audit reports at issue. The Complaint does not plead any facts that show that Mr. Copeland controlled the audits of or audit reports concerning Parmalat by Deloitte & Touche S.p.A. ("DT-Italy").

Finally, Mr. Copeland adopts the arguments of DTT for dismissal of the complaint for failure to comply with Fed.R. Civ. P. 8(a)(2) and (e)(1).

## The Complaint

Most of the relevant facts are set forth in DTT's memorandum of law in support of its motion to dismiss the Complaint. (*See* DTT Mem. at pp. 3-7). To avoid repetition, Mr. Copeland incorporates DTT's statement. The fact section of the 1259 paragraph, 368-page Complaint mentions Mr. Copeland in only eight paragraphs on a mere seven pages, and the allegations made there are vague, conclusory and repetitive. (Compl. ¶¶ 40, 136, 151, 1010, 1012-13, 1033-34).

### A.   No Facts Linking Mr. Copeland To The Parmalat Audits

Plaintiffs allege that Mr. Copeland was the CEO or Managing Partner of DTT and Deloitte USA from 1999 until May 2003. (Compl. ¶¶ 136, 151). They assert in conclusory fashion that "[w]hen Deloitte's own employees raised concerns about improprieties at Parmalat, senior auditors at Deloitte, including its US-based CEO Jim Copeland, opted to participate in the fraud rather than to warn investors of it." (Compl. ¶ 40). However, no factual basis is alleged for that assertion.

Plaintiffs allege that on April 5, 2002, Mr. Mamoli of DT-Italy, Parmalat's auditor, sent Mr. Copeland a note "expressing concern that Parmalat's management might take the Company's 'multimillion-dollar world-wide engagement' away from Deloitte as a result of" inquiries made by Mr. Olivetti, an audit partner at Deloitte Touche Tohmatsu Auditores Independentes (Brazil) ("Deloitte Brazil") and "asked Copeland to intervene to settle the situation." (Compl. ¶ 1010). The Complaint states that "the situation" was settled the following month when Mr. Olivetti sent Mr. Mamoli "an e-mail in May 2002 agreeing that Deloitte Brazil would not issue a qualified opinion on

the financial statements of [Parmalat's Brazilian operation] . . . Olivetti said he would include an 'emphasis note' to the auditors opinion." (Compl. ¶ 1011). Plaintiffs do not say whether Mr. Copeland responded to Mr. Mamoli's request or "intervened" in this disagreement, or had anything to do with its resolution.

Plaintiffs also allege that, in 2003, approximately one year later, "Olivetti told Mamoli that Parmalat's CFO . . . had decided to transfer $187 million of inter-company debt to Bonlat [a Parmalat subsidiary] by means of fraudulent accounting entries entered after the fact." (Compl. ¶ 1013). The Complaint does not say that Mr. Copeland was told about this or, if so, what, by whom, and when. But plaintiffs allege that "[w]hen Olivetti threatened once again to refuse to sign off on [Parmalat Brazil's] financials, which would have made it difficult for the other Deloitte member firms to sign off on Parmalat's overall consolidated financial statements, the global Deloitte organization, headed in the United States by Jim Copeland, 'removed' Olivetti from any further role in auditing Parmalat's Brazilian operations." (Compl. ¶ 1013). The Complaint concludes that "Deloitte, including its officers in the United States, such as CEO James Copeland, confronted the auditors who had detected the fraud, and told them to keep quiet so that Deloitte could retain its multi-million dollar client." (Compl. ¶ 1034; *see also id.* at 1033). Plaintiffs' bare conclusory statement that "[a]s explained above, Copeland successfully silenced Deloitte auditors who raised questions regarding their audits of Parmalat's Brazilian affiliates" (Compl. ¶ 1034), is not supported by any factual allegations.

### B.   No Facts Linking Mr. Copeland To A Primary Violator

The Complaint asserts that as CEO or Managing Partner of DTT and Deloitte USA, Mr. "Copeland acted as a controlling person of [DTT] and [Deloitte USA]." (Compl. ¶¶ 136, 151, 1134-39). However, the Complaint's more specific allegations make clear that neither DTT nor Deloitte USA was Parmalat's auditor. (*See* DTT Mem. 5-6, 13). Nevertheless, the Complaint concludes that "by virtue of his executive positions" Mr. Copeland "had direct involvement in the

- 3 -

KL3:2389410.1

day-to-day operations of [DTT] and [Deloitte USA], and specifically with respect to the audit and other services provided by [DTT] and [Deloitte USA] to Parmalat entities." (Compl. ¶ 1137). But the Complaint does not make any non-conclusory allegations showing any direct involvement by Mr. Copeland in the audit or other services provided to Parmalat. Indeed, the Complaint elsewhere alleges that Parmalat was audited by DT-Italy, not by DTT or Deloitte USA. (DTT Mem. 6).

In addition, the Complaint alleges that "[b]y virtue of his executive position as alleged . . . [Mr. Copeland] had the ability to prevent the issuance of false and misleading statements or cause the statements to be corrected" (Compl. ¶ 1137), and that he is "therefore, *presumed* to have had the power to control or influence the particular conduct giving rise to the securities law violations." (Compl. ¶ 1138) (emphasis added). But the Complaint does not offer any specific factual allegations showing Mr. Copeland could do that with respect to DT-Italy.

## Argument

I. **COUNT IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OR RULE 10b-5(A)&(C)**

To avoid repetition, Mr. Copeland adopts DTT's arguments for dismissal of Count IV, and adds the following arguments that relate particularly to him. Plaintiffs' inclusion of Mr. Copeland in Count IV appears to be a mistake or an afterthought. The heading of Count IV, mentioning the defendants against whom the claim is directed, does not include Mr. Copeland. He is added merely by lumping him together with DTT, Deloitte USA, DT-US and the Grant Thornton defendants as one of the "Auditor Defendants." (Compl. ¶ 1099). Even that appears to be a mistake, as the term "Auditor Defendants" is defined earlier in the Complaint as consisting of the collective "Deloitte" and Grant Thornton, without mention of Mr. Copeland. (Compl. ¶ 170). And plaintiffs have not included Mr. Copeland in their 10b-5(b) claim.

KL3:2389410.1

### A. The Complaint Does Not Allege A Single Misrepresentation Or Omission By Mr. Copeland

The Complaint does not allege a single misrepresentation by Mr. Copeland. (Compl. ¶¶ 1-1259). This absence requires dismissal. *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 375 (S.D.N.Y. 2003) (plaintiffs' contrary contention "is simply not true in this case where [plaintiffs'] claims are based *only* on alleged misrepresentations and omissions . . . . plaintiffs must comply with the pleading requirements of the [PSLRA]") (emphasis in original); *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447 (S.D.N.Y. 1999); 15 U.S.C. § 78u-4(b)(1)(B) (plaintiffs must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."). "If *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997); *see also In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1255-56 (S.D.N.Y. 1996). "[A] secondary actor cannot incur primary liability . . . for a statement not attributed to that actor at the time of its dissemination . . . as '[r]eliance only on representations made by others cannot itself form the basis of liability'." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998).[1]

### B. The Complaint Fails To Allege Scienter As To Mr. Copeland

Plaintiffs fail to plead facts showing that Mr. Copeland acted with scienter. However, "[i]n order to satisfy the pleading requirements of Rule 9(b) and the PSLRA, a plaintiff must allege that an officer or director '*personally* knew of, or participated in, the fraud'." *In re Citigroup, Inc.*

---

[1]   Plaintiffs do not allege that Mr. Copeland controlled DT-Italy or other DTT member firms alleged to have audited Parmalat, or even the vaguely defined "Deloitte." (Compl. ¶ 1137 ("Copeland acted as a controlling person of [DTT] and [Deloitte USA]")).

*Secs. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)) (emphasis in original).[2]

The misrepresentations alleged are those contained in DT-Italy's audit reports for Parmalat. (Compl. ¶¶ 514, 570, 594, 620, 646, 684, 724). But plaintiffs do not allege any facts that show that Mr. Copeland knew DT-Italy's "statements were false at the time they were made," as plaintiffs must to assert a securities fraud claim. *In re Citigroup*, 330 F. Supp. 2d at 381. Plaintiffs make the conclusory assertion that "Deloitte, including its officers in the United States, such as CEO James Copeland" told the auditors "who had detected the fraud . . . to keep quiet" (Compl. ¶ 1034), but no facts are pleaded that support this allegation. *See Rombach v. Chong*, 955 F.3d 164, 170 (2d Cir. 2004). The Complaint also alleges that "the global Deloitte organization, headed in the United States by Jim Copeland, 'removed' Olivetti.'" (Compl. ¶ 1013). But plaintiffs do not allege that Mr. Copeland was personally involved in the decision to remove Mr. Olivetti, nor that Mr. Copeland knew about the allegedly fraudulent $187 million transfer of inter-company debt between Parmalat's Brazilian operation and its Bonlat subsidiary. On the contrary, the internal note referred to in the Complaint (Compl. ¶ 1010), by which Mr. Mamoli asked Mr. Copeland to intervene in a similar disagreement involving Mr. Olivetti and Parmalat's Brazilian operations, shows Mr. Copeland was unlikely to have been personally involved. Mr. Mamoli asked Mr. Copeland "in a moment while you are clearly busy with other matters" for "*somebody delegated by you* to arbitrate the matter." (Dell Aff. Ex. B, emphasis added).

Moreover, Mr. Copeland's "presumed" tenuous involvement with that limited disagreement in connection with an audit in Brazil in no way suffices to allege his familiarity with Parmalat's fraud or DT-Italy's audits and audit reports. While plaintiffs take hundreds of pages to

---

[2] Plaintiffs' allegation that Mr. Copeland was a controlling person under section 20(a) cannot provide the missing link (Compl. ¶¶ 1134-39), because plaintiffs do not allege that he controlled the DT-Italy audits of Parmalat. Moreover, even if true, the "mere fact that [] Directors were controlling persons . . . does not link them to the statements." *Mills*, 12 F.3d at 1175.

describe the intricacies of Parmalat's fraudulent schemes, they do not link those allegations to Mr. Copeland. *See In re Royal Ahold N.V. Secs. & ERISA Litig.*, No. Civ.1:03-MD-01539, 2004 WL 2955934, at *38 n.45 (D. Md. Dec. 21, 2004) ("plaintiffs' allegations pertaining to . . . Copeland lack sufficient evidentiary support, and therefore they will be stricken and dismissed").

### C. The Allegations Against Mr. Copeland Do Not Constitute Market Manipulation

Plaintiffs fail to plead market manipulation as to Mr. Copeland pursuant to Rule 10b-5(a) and (c). The removal of an auditor or the silencing of criticism of the Parmalat audits, even had plaintiffs sufficiently alleged Mr. Copeland was responsible, simply does not constitute market manipulation.

"Plaintiffs . . . ignore that, . . . '[m]anipulation is a term of art with a narrow definition'." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d at 376 (quoting *Lewis v. Oppenheimer & Co.*, 481 F. Supp. 1199, 1202 n.1 (S.D.N.Y. 1979) (Pollack, J.) (quoting *Piper v. Chris-Craft Indus.*, 430 U.S. 1, 42, 97 S. Ct. 926, 949 (1977)). It has a limited, circumscribed meaning when "'used in connection with securities markets'." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476, 97 S. Ct. 1292, 1302 (1977) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384 (1976)). The United States Supreme Court has held that the term "manipulation", as used in Section 10(b), refers to practices "such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Id.* However, while "Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices . . . we do not think it would have chosen this 'term of art' if it had meant to bring within the scope of § 10(b) instances of corporate mismanagement." *Id.* at 477, 97 S. Ct. at 1303.

"Additionally, in order to survive a Rule 12(b)(6) motion, a plaintiff asserting a market manipulation claim must allege direct participation in a scheme to manipulate the market for securities." *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 338 (S.D.N.Y. 1999). The Complaint does not allege any such direct participation by Mr. Copeland in a market manipulation scheme.

- 7 -

KL3:2389410.1

### D. The Complaint's Fraud Allegations Are Insufficient As To Mr. Copeland Because They Are Based On Information And Belief

The Complaint's allegations of fraud concerning Mr. Copeland are made on information and belief. However, "[a]llegations of fraud based on information and belief do not satisfy Rule 9(b)." *American Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 248 (S.D.N.Y. 1996) (Kaplan, J.). Accordingly, Count IV must be dismissed. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972); *see also, Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 137 (1988); *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S. Ct. 1976 (1975).

The only exception to this rule is when "the facts are peculiarly within the knowledge of the defendant[], in which case the complaint must allege facts demonstrating the basis for the information and belief." *American Buying Ins. Servs., Inc.*, 944 F. Supp. at 248-49. Moreover, "this exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). The Complaint does not allege facts showing that Mr. Copeland had peculiar or any knowledge of the accounting fraud purportedly perpetrated by other defendants.[3]

Moreover, even if "the facts regarding the alleged participation . . . may be said to be peculiarly within the knowledge of the defendant[]," a complaint must be dismissed if it "does not put forward facts demonstrating plaintiffs' basis for the information and belief, and is therefore insufficient." *American Buying Ins. Servs., Inc.*, 944 F. Supp. at 249; 15 U.S.C. § 78u-4(b)(1)(B)

---

[3] Because the PSLRA requires that "'*the complaint* shall state'" this information, plaintiffs cannot cure this pleading defect in their reply memorandum. *Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, No. 03 Civ. 0971(RCC), 2004 WL 51224, at *4 n.2 (S.D.N.Y. Jan. 9, 2004) (emphasis in decision) (quoting 15 U.S.C. § 78u-4(b)(1)(B)); *Branch v. Tower Air, Inc.*, No. 94 Civ. 6625(JFK), 1995 WL 649935, at *6 (S.D.N.Y. Nov. 3, 1995).

("the complaint shall state with particularity all facts on which that belief is formed"); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 02 Civ. 8726 (LAK), 2004 WL 616123, at *3 (S.D.N.Y. Mar. 30, 2004) (complaint dismissed for failure to allege "which defendants committed which acts [and] [n]or does the Complaint allege the facts upon which the plaintiff's belief is based"); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 245 (S.D.N.Y. 1997) (Kaplan, J.) ("even in such cases facts setting forth a sufficient basis for the inference of fraud must be alleged").

The Complaint's prefatory blanket statement that plaintiffs "allege the following upon information and belief" (Compl. ¶ 1), cannot cure this defect as "[c]ourts unanimously agree . . . a prefatory statement . . . clearly does not satisfy the PSLRA's information and belief pleading requirements." *In re Initial Public Offering Secs. Litig.*, 241 F. Supp. 2d 281, 355 n.88 (S.D.N.Y. 2003). Moreover, that statement is insufficient as to Mr. Copeland as it mostly lists categories of information (Compl. ¶ 1a-b, g, j-l, n, o-p). *In re Health Mgmt. Sys., Inc. Secs. Litig.*, No. 97 CIV. 1865(HB), 1998 WL 283286, at *3 (S.D.N.Y. June 1, 1998) (general categories "insufficient because it does not indicate what publicly available articles, releases and filings the plaintiffs relied on"); *Branch*, 1995 WL 649935, at *5 (complaint "fails to particularize the portions of the prospectus on which Plaintiff relied"). When the Complaint does list documents, virtually none of them indicate that they even mention Mr. Copeland. Not tying those documents to Mr. Copeland, "[c]ontrary to the clearly expressed purpose of the PSLRA, [] would allow complaints to survive dismissal where 'all' the facts supporting the plaintiff's information and belief were pled, but those facts were patently insufficient to support that belief" as to him. *See Novak v. Kasaks*, 216 F.3d 300, 314 n.1 (2d Cir.), *cert. denied*, 531 U.S. 1012, 121 S. Ct. 567 (2000).

## II.     COUNT VIII SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 20(A) OF THE SECURITIES EXCHANGE ACT

To avoid repetition, Mr. Copeland adopts DTT's arguments for dismissal of the Section 20(a) claim against DTT, and adds the following arguments that relate particularly to him.

- 9 -

A. **The Complaint Fails To Allege A Primary Violation By The Alleged Controlled Person**

The Complaint alleges that Mr. Copeland controlled DTT and Deloitte USA, but does not adequately allege that either of them committed a primary violation. (DTT Mem., Points __-__). However, that is a prerequisite for control person liability. "[B]ecause . . . the primary violation asserted by [plaintiffs] is not adequately pleaded . . . therefore . . . dismissal of the claims of secondary liability under § 20" is warranted. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231(RPP), 2001 WL 396521, at *10 (S.D.N.Y. Apr. 19, 2001) ("no basis for control person liability . . . since no primary violation has been adequately alleged").

B. **The Complaint Fails To Allege Facts Showing That Mr. Copeland Controlled DTT, Deloitte USA Or The Parmalat Audits Or Was A Culpable Participant In Wrongdoing**

The Complaint alleges that "*[b]y virtue of his executive positions* . . . Copeland had the power to influence and did influence and control, directly or indirectly, the decision making of [DTT] and [Deloitte USA]." (Compl. ¶ 1137) (emphasis added). However, "[d]irector status alone does not establish control person liability" *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996), particularly here where plaintiffs seek to impose liability for the conduct of DT-Italy, which audited Parmalat (Compl. ¶¶ 209, 514, 570, 594, 620, 646, 684, 724, 939, 953; DTT Mem., Point __), not the conduct of DTT or Deloitte USA, and the Complaint does not allege that Mr. Copeland held any position with DT-Italy or had any control of its audits of or audit reports concerning Parmalat. (See DTT Mem. at __). *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1298-99 (2d Cir. 1973) ("liability does not result solely from . . . occupying a status"); *IIT Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 927 (2d Cir. 1980) (plaintiffs "should not obscure the basic proposition that mere bystanders, even if aware of the fraud, cannot be held liable for inaction since they do not, in Judge Hand's words, associate themselves with the venture or participate in it as

- 10 -

something they wish to bring about"); *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1163-64 (9th Cir. 1996) (CEO was not a control person although he was "at least consulted on every major decision," because he did not manage the company on a day-to-day basis and was "the classic conceptualizer and idea man who leaves behind a long swath of details for someone else to handle"); *Burgess v. Premier Corp.*, 727 F.2d 826, 832-33 (9th Cir. 1984) (a director was not a control person where he was not involved in the day-to-day operations and had nothing to do with the transactions at issue); *CFTC v. Avco Fin. Corp.*, 28 F. Supp. 2d 104, 114, 117 (S.D.N.Y. 1998), *aff'd in part rev'd in part on other grounds, CFTC v. Vartuli*, 228 F.3d 94 (2nd Cir. 2000) (a vice president whose signature appeared on letters in connection with the transaction attacked but who had not actually signed the letters or authorized use of his signature is not a controlling person).

Moreover, "a bare allegation of control [will] not suffice . . . as the Court need not accept as true on a motion to dismiss allegations which amount simply to legal conclusions." *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281, 285 (S.D.N.Y. 1994) (Kaplan, J.). Further, "[c]ontrol is not the same as influence; a 'control person' must have some enforceable power over the primary violator." *In re Motel 6 Secs. Litig.*, 161 F. Supp. 2d 227, 238 (S.D.N.Y. 2001); *In re Blech Secs. Lit.*, 961 F. Supp. 569, 587 (S.D.N.Y. 1997) (influence without power does not constitute control). "[A]ctual control over the primary violator is required." *In re Deutsche Telekom AG Secs. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002). Where plaintiffs "seek[] to attribute control status to a third party, director, or employee who is not in a control position . . . further factual allegations must be made to show that in fact such control can be inferred." *Id.*; *see also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494-97 (7th Cir. 1986) (neither law firm nor accounting firm which rendered services to corporation which sold bonds and notes in violation of federal securities law had ability to control corporation); *Morse v. Weingarten*, 777 F. Supp. 312, 318 (S.D.N.Y. 1991) (allegations that underwriter exercised control over corporation's investments fail to state a claim for control person liability absent allegations identifying any position

- 11 -

or title that underwriter held at corporation or any meetings which underwriter attended or conversations which he had with any of the corporation's officers); *O'Brien v. National Prop. Analysts Partners*, 719 F. Supp. 222, 227 (S.D.N.Y. 1989) ("[m]ere conclusory allegations of insider status, however, without accompanying facts which tie a defendant to the [allegedly fraudulent] materials in a specific way, will not suffice to obviate the need to specify each defendant's connection with the alleged fraudulent acts").

Here, plaintiffs have not pled "*facts* from which control status can be inferred, *e.g.*, that defendant had power, pursuant to an agreement to control the primary violator or aided the primary violator in performing some culpable conduct linking the defendant to the primary violation for which relief is sought." *Sloane Overseas Fund, Ltd.*, 941 F. Supp. at 1378 (emphasis added). Moreover, "the mere existence of control is not made a basis for liability unless that control is effectively exercised to bring about the action upon which liability is based." *Lanza*, 479 F.2d at 1298-99. Plaintiffs do not meet this requirement by alleging that "[t]op executives at Deloitte . . . *such as* CEO James Copeland, confronted the auditors who had detected the fraud, and told them to keep quiet so that Deloitte could retain its multi-million dollar client" (Compl. ¶ 1033, emphasis added), and that "[a]s explained above, Copeland successfully silenced Deloitte auditors who raised questions regarding their audits of Parmalat's Brazilian affiliates." (Compl. ¶ 1034). Plaintiffs do not plead facts or "explain above," but instead merely *conclude*, that "Mr. Copeland successfully silenced auditors," and he is only "*presumed* to have had the power to control *or influence* the particular conduct giving rise to the securities law violations." (Compl. ¶¶ 1034, 1138) (emphasis added). That is insufficient to plead control. *See also Eickhorst v. American Completion & Dev. Corp.*, 706 F. Supp. 1087, 1092-93 (S.D.N.Y. 1989) (conclusory information and belief allegations insufficient because "[n]owhere in the complaint [] is the factual basis set forth for this conclusion . . . . [l]ikewise, plaintiffs offer no source of facts for their assertion").

Moreover, even had plaintiffs alleged facts that established that Mr. Copeland controlled Mr. Olivetti or DT-Brazil in connection with a dispute with DT Italy (and plaintiffs have not come close to doing that), that would not be sufficient to establish that Mr. Copeland controlled DT-Italy's audit of and audit report concerning Parmalat in the year in which Mr. Olivetti had his dispute, much less DT-Italy's other audits of and audit reports concerning Parmalat on which plaintiffs predicate their Complaint. Yet, "[a]ctual control over the wrongdoer *and the transactions in question* is necessary for control person liability." *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041(DLC), 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (emphasis added); *see also American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 136 (1988) (control must be "in respect to the transaction attacked"); *In re Blech Secs. Litig.*, 961 F. Supp. at 587 ("defendant must possess actual control over the transactions in question").

KL3:2389410.1

- 14 -

## Conclusion

For the foregoing reasons and those set forth in DTT's memorandum in support of its motion to dismiss, James E. Copeland, Jr. respectfully requests the Court to enter an Order dismissing the First Amended Consolidated Class Action Complaint as to him with prejudice, and granting such other and further relief as the Court deems proper.

Dated: New York, New York
January 10, 2005

KRAMER LEVIN NAFTALIS & FRANKEL, LLP


By:_____
Michael J. Dell (MD-7714)
Robert A. de By (RD-6197)
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant James E. Copeland, Jr.

## Conclusion

For the foregoing reasons and those set forth in DTT's memorandum in support of its motion to dismiss, James E. Copeland, Jr. respectfully requests the Court to enter an Order dismissing the First Amended Consolidated Class Action Complaint as to him with prejudice, and granting such other and further relief as the Court deems proper.

Dated: New York, New York
January 10, 2005

KRAMER LEVIN NAFTALIS & FRANKEL, LLP

By: _____
Michael J. Dell (MD-7714)
Robert A. de By (RD-6197)
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant James E. Copeland, Jr.