UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                   :

In re PARMALAT SECURITIES LITIGATION     :     MASTER DOCKET
                                     :     04 MD 1653 (LAK)

This document relates to:                      :
                                     :

PARMALAT SECURITIES LITIGATION        :     04 Civ. 0030 (LAK) ECF Case
                                     :     ELECTRONICALLY FILED
                                     :
                                     :
———————————————————— x


## REPLY MEMORANDUM IN FURTHER SUPPORT
## OF THE MOTION OF DEFENDANT JAMES E. COPELAND, JR.
## TO DISMISS THE FIRST AMENDED
## CONSOLIDATED CLASS ACTION COMPLAINT


KRAMER LEVIN NAFTALIS & FRANKEL, LLP
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for Defendant James E. Copeland, Jr.

KL3:2399444.1

## TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................ 1

Argument ............................................................................................................................... 1

I.    COUNT VIII SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM AGAINST MR. COPELAND UNDER SECTION 20(A) OF
      THE SECURITIES EXCHANGE ACT ............................................................................ 1

      A.   The Complaint Fails To Allege A Primary Violation By The
           Alleged Controlled Person ..................................................................................... 2

      B.   The Complaint Fails To Allege Facts Showing That Mr. Copeland
           Controlled The Parmalat Audits Or Was A Culpable Participant In
           Wrongdoing ........................................................................................................... 2

II.   COUNT IV SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM AGAINST MR. COPELAND UNDER SECTION 10(B) OF THE
      SECURITIES EXCHANGE ACT .................................................................................... 5

Conclusion ............................................................................................................................. 6

KL3:2399444.1

## TABLE OF AUTHORITIES

### CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 02 Civ. 8726 (LAK), 2005
    WL 435186 (S.D.N.Y. Feb. 25, 2005)......................................................................................2

*In re Baan Co. Secs. Litig.*, 103 F. Supp. 2d 1 (D.D.C. 2000).........................................................2

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ............................................................1

*In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ............................6

*Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180 (S.D.N.Y. 1999) ........................................3

*Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281 (S.D.N.Y. 1994)............................................3

*Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ..........................2

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................................................2

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*, 941 F. Supp. 1369 (S.D.N.Y. 1996).......3

### STATUTES

Securities Exchange Act, Section 10(b) ...............................................................................1, 3, 5

Securities Exchange Act, Section 20(a)................................................................................1, 2, 3

KL3:2399444.1

Defendant James E. Copeland, Jr. respectfully submits this reply memorandum in further support of his motion to dismiss the Complaint.

### Preliminary Statement

Plaintiffs' opposing brief fails to supply a basis for their extraordinarily attenuated and legally deficient theory of liability with respect to Mr. Copeland. Plaintiffs simply reiterate their conclusory allegations that Deloitte Touche Tohmatsu ("DTT") and Deloitte & Touche LLP ("Deloitte USA") are vicariously liable for the conduct of DT-Italy and, because Mr. Copeland had "direct involvement in the day-to-day operations" of DTT and Deloitte USA, he is "*presumed* to have had the power to control or influence the particular conduct giving rise to the securities law violations, and exercised that power . . . ." (Compl. ¶ 1138; emphasis added). But plaintiffs do not point to even a single non-conclusory factual allegation in their 1259 paragraph, 368 page Complaint showing that Mr. Copeland controlled DT-Italy or played any role in its audits of Parmalat, much less that he had any role in any fraudulent scheme. Plaintiffs' theory of "vicarious liability by association" is insufficient to state a claim against Mr. Copeland under either Section 20(a) or Section 10(b) of the Exchange Act.

### Argument

## I.   COUNT VIII SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 20(A) OF THE SECURITIES EXCHANGE ACT

Plaintiffs do not show that the Complaint meets any of the requirements to state a Section 20 claim against Mr. Copeland: "[1] a primary violation . . . by the controlled person . . . and [2] control of the primary violator by the targeted defendant . . ., and . . . [3] that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170-71 (2d Cir. 2000) (citation omitted).

A.   **The Complaint Fails To Allege A Primary Violation By The Alleged Controlled Person**

Plaintiffs' argument that "Defendants generally do not contest that the Complaint alleges fraud on the part of the controlled persons" (Pl. Mem. 89), is not accurate as to Mr. Copeland. The only "persons" that the Complaint alleges Mr. Copeland controlled are DTT and Deloitte USA. However, the Complaint does not adequately allege that either of those entities committed a primary violation. (DTT Mem. 8-29; DTT Reply Mem. 1-7). As this Court very recently noted, under such circumstances control person claims should be dismissed. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, No. 02 Civ. 8726 (LAK), 2005 WL 435186, at *5 (Feb. 25, 2005) (Kaplan, J.) (dismissing Section 20(a) claims with prejudice where plaintiff failed adequately to allege a primary violation) (citing *Rombach v. Chang*, 355 F.3d 164, 177-178 (2d Cir. 2004)).

B.   **The Complaint Fails To Allege Facts Showing That Mr. Copeland Controlled The Parmalat Audits Or Was A Culpable Participant In Wrongdoing**

Plaintiffs' argument in support of their assertion of control person liability against Mr. Copeland (Pl. Mem. 102-04), essentially boils down to citing a string of cases for the proposition that "a position as CEO *may* be enough to establish controlling person status by itself." *In re Baan Co. Secs. Litig.*, 103 F. Supp. 2d 1, 24 n. 28 (D.D.C. 2000) (emphasis added). However, CEO status alone is not always enough to plead control over the company for which the CEO actually works. *See, e.g., Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996). Certainly, none of the cases cited by plaintiffs suggests that such status is enough to plead control over an entirely different company.[1]

---

[1]   Plaintiffs argue that Mr. Copeland "suggests that the control person allegation against him is based simply on the fact that he is a director." (Pl. Mem. 103.) That is mistaken. Mr. Copeland's opening brief (at 10) quoted from the Complaint in noting that it alleges that "*[b]y virtue of his executive positions* . . . Copeland had the power to influence and did influence and control, directly or indirectly, the decision making of [DTT] and [Deloitte USA]." (Compl. ¶ 1137; emphasis added.)

Here, although plaintiffs seek to gloss it over, they are attempting to hold Mr. Copeland liable as a control person for the conduct of DT-Italy, the entity that actually audited Parmalat, not DTT or Deloitte USA, the entities of which Mr. Copeland was the CEO. *See* Pl. Mem. 82 n.46 ("[W]hether or not they are liable under Section 10(b), the Auditor Defendants *are liable as control persons of the Italian auditors* under Section 20(a) of the Exchange Act.") (emphasis added). But the Complaint does not allege that Mr. Copeland held any position at, or was in any way involved in the day-to-day operations of or controlled DT-Italy.

Moreover, a bare allegation of control [will] not suffice . . . as the Court need not accept as true on a motion to dismiss allegations which amount simply to legal conclusions." *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281, 285 (S.D.N.Y. 1994) (Kaplan, J.). Yet here, plaintiffs have not pled any "*facts* from which control status [by Mr. Copeland] can be inferred" with respect to DT-Italy. *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996) (emphasis added).

Plaintiffs' *opposing memorandum* tries to make something of an alleged disagreement in 2002 between Adolfo Mamoli, the DT-Italy partner in charge of its Parmalat audit, and Wanderly Olivetti, an auditor at DT-Brazil. Plaintiffs label this as an "eloquent example" of Mr. Copeland's power "to control activities by Deloitte offices in other countries." (Pl. Mem. 102-03). However, plaintiffs' actual allegations *in their Complaint* tell a different story, and "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999).

The Complaint alleges that Mr. Olivetti complained to Mr. Mamoli about a lack of documentation and cooperation from certain Parmalat entities and told him about a series of significant problems encountered during the audit of Parmalat's Brazilian operations (*see* Compl. ¶¶ 1005-09). Plaintiffs further allege that Mr. Mamoli then "sent an internal note to Jim Copeland in

- 3 -

New York . . . expressing concern that Parmalat's management might take the Company's 'multimillion-dollar world-wide engagement' away from Deloitte as a result of Olivetti's inquiries, and asked Copeland to intervene to settle the situation" (*id.* ¶ 1010). Mr. Mamoli's internal note told Mr. Copeland that Mr. Mamoli would "prefer not to bother you with the details on the subject" but nonetheless "would strongly appreciate your input or the input of *somebody delegated by you* to arbitrate the matter." (Dell Aff. Ex. B) (emphasis added). These allegations are inconsistent with any suggestion that Mr. Copeland controlled DT-Italy. Moreover, the *Complaint* does not allege that Mr. Copeland did *anything* in response to this note, let alone anything wrongful. (*See* Compl. ¶ 1010.) Nevertheless, plaintiffs in their opposing memorandum (at 102-03) attempt to create the misimpression that Mr. Copeland did respond, and "silenced" Mr. Olivetti. However, *the Complaint* does not allege that Mr. Copeland confronted, let alone "silenced," Mr. Olivetti or any other auditor, or controlled DT-Brazil, or that DT-Brazil committed a primary violation.[2]

Beyond this, even had the Complaint alleged facts establishing that Mr. Copeland silenced or removed Mr. Olivetti *at DT-Brazil*, that would not show or even suggest that Mr. Copeland had any control over *DT-Italy*, much less its audits of Parmalat at issue (and, as noted, there is no allegation that DT-Brazil committed a primary violation). Nor would it establish that Mr. Copeland was a culpable participant in *DT-Italy's* conduct in connection with its audits of Parmalat or in any wrongdoing engaged in by any defendant.

---

[2]    Similarly, plaintiffs' *opposing memorandum* attempts to create the misimpression that the Complaint alleges that Mr. Copeland later removed Mr. Olivetti from an ongoing role in DT-Brazil's audit of Parmalat's Brazilian operations. In fact, *the Complaint* alleges that "the global Deloitte organization, *headed* in the United States by Jim Copeland, 'removed' Olivetti from any further role in auditing Parmalat's Brazilian operations." (Compl. ¶ 1013) (emphasis added). There is no allegation that Mr. Copeland himself had any involvement in the alleged removal.

## II.   COUNT IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST MR. COPELAND UNDER SECTION 10(B) OF THE SECURITIES EXCHANGE ACT

Plaintiffs repeat their conclusory allegation that Mr. Copeland participated in a scheme to defraud holders of Parmalat securities in violation of Rule 10b-5(a) and (c), (Pl. Mem. 82-84), but do not point to any allegation in their Complaint that adequately pleads that claim. *Nor could they, because the Complaint does not allege a single deceptive or manipulative act by Mr. Copeland in furtherance of the alleged scheme to defraud, much less that he acted with scienter or that plaintiffs relied on his conduct.*[3]

Instead, plaintiffs rely on their conclusory assertion that "[t]op executives of Deloitte, including its officers in the United States, *such as* CEO James Copeland, confronted the auditors who had detected the fraud, and told them to keep quiet so that Deloitte could retain its multi-million dollar client." Compl. ¶ 1033 (emphasis added). However, plaintiffs do not identify any allegation in their Complaint that pleads even a single instance in which Mr. Copeland confronted an auditor or told him to be quiet, much less participated in a fraudulent scheme.

Plaintiffs make other futile attempts to recast the general conclusory allegations of their Complaint. For example, plaintiffs' brief rewrites their allegation concerning Mr. Mamoli's note to Mr. Copeland. Although the Complaint does not allege that Mr. Copeland did anything in response to this note (Compl. ¶ 1010), plaintiffs' brief creates the misimpression that Mr. Copeland did respond, and "silenced" Mr. Olivetti. (*See* Pls. Mem. 83.)

---

[3]   Plaintiffs contend at one point that Mr. Copeland is "liable for all of the violations of Rule 10b-5(a), (b) and (c) committed by DT-Italy" (Pl. Mem. 69), but later acknowledge that they have not asserted a Rule 10b-5(b) claim against him. (*See* Pl. Mem. 84, 88-89; *see also* Compl. ¶¶ 1109-19.) Furthermore, plaintiffs pay only lip service to the contention that Mr. Copeland is liable for the conduct of DT-Italy on an agency theory. The sections of their opposing brief that address agency law do not mention any alleged agency relationship between DT-Italy and Mr. Copeland. *See, e.g.*, Pl. Mem. 82 ("[T]hrough alter ego and agency principles . . . DTT and [Deloitte USA] are liable for the actions of Deloitte's Italian firm. Moreover . . . DTT, [Deloitte USA] and *Copeland* are liable for their own *primary* participation in fraudulent schemes related to Parmalat.") (emphasis added). To the extent that plaintiffs still purport to assert a 10b-

Plaintiffs' reliance on *In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004), is misplaced. *Global Crossing* held that, in order to state a fraudulent scheme claim, plaintiffs must specify "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Id.* at 329 (citations omitted). Here, however, the Complaint does not contain a single allegation of a specific manipulative act performed by Mr. Copeland with scienter in furtherance of the alleged scheme to defraud Parmalat's securities holders. Rather, because Mr. Copeland was the CEO of DTT and Deloitte USA, plaintiffs try to attribute to him responsibility for the alleged removal or silencing of auditors by "the global Deloitte organization." (*See* Compl. ¶¶ 1013, 1033.) That is manifestly insufficient to state a claim that Mr. Copeland directly participated in a scheme to defraud Parmalat's securities holders in violation of Rule 10b-5(a) or (c).

## Conclusion

For the foregoing reasons and those set forth in Mr. Copeland's opening memorandum, and DTT's opening and reply memoranda in support of its motion to dismiss,

---

5(b) claim against Mr. Copeland on agency theories of liability, he refers to his opening brief and incorporates DTT's arguments for dismissal of Count V.

Mr. Copeland respectfully requests the Court to enter an Order dismissing the First Amended Consolidated Class Action Complaint as to him with prejudice.

Dated: New York, New York
      March 3, 2005

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:_____
      Michael J. Dell (MD-7714)
      Jonathan A. Popolow (JP-8066)

919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant James E. Copeland, Jr.