UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                                        :
                                                        :
                                                        :
                                                        :     MASTER DOCKET
                                                        :     04 MD 1653 (LAK)
In re PARMALAT SECURITIES LITIGATION      :
                                                        :
This document relates to:                            :
                                                        :
                                                        :     04 Civ. 0030 (LAK) ECF Case
PARMALAT SECURITIES LITIGATION            :     ELECTRONICALLY FILED
                                                        :
                                                        :
———————————————————————— x


## REPLY MEMORANDUM IN FURTHER SUPPORT
## OF THE MOTION OF DEFENDANT DELOITTE TOUCHE TOHMATSU
## TO DISMISS THE FIRST AMENDED
## CONSOLIDATED CLASS ACTION COMPLAINT



KRAMER LEVIN NAFTALIS & FRANKEL, LLP
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant Deloitte Touche Tohmatsu

KL3:2399846.1

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................................ ii

Preliminary Statement ......................................................................................................................... 1

I.      THE COMPLAINT FAILS TO ALLEGE A PRIMARY VIOLATION
        BY DTT OF RULE 10b-5 ..................................................................................................... 1

II.     THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO
        IMPUTE DT-ITALY'S PURPORTED FRAUDULENT CONDUCT TO DTT ................ 7

        A.      Plaintiffs' "One Firm" Argument Is Defective And Has Been Consistently
                Rejected .............................................................................................................................. 7

        B.      The Complaint Fails To Plead That DTT Is DT-Italy's Alter Ego .......................... 9

        C.      The Complaint Fails To Plead That DT-Italy Is DTT's Agent ............................. 10

III.    COUNT VI FAILS TO STATE A CONTROL PERSON CLAIM AGAINST
        DTT FOR VIOLATION OF SECTION 20(a) OF THE SECURITIES
        EXCHANGE ACT ................................................................................................................. 11

IV.     THE COMPLAINT DOES NOT COMPLY WITH THE PLEADING
        REQUIREMENTS OF FED. R. CIV. P. 8(a)(2) AND 8(e)(1) .......................................... 14

Conclusion ........................................................................................................................................... 14

## **TABLE OF AUTHORITIES**

### CASES

*Abell v. Potomac Ins. Co.*, 858 F.2d 1104 (5th Cir. 1988), *vacated on other grounds sub nom. Fryer v. Abell*, 492 U.S. 914 (1989).......................................................6

*American Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 136 (1988)................................................................9

*In re AOL Time Warner, Inc. Secs. & "ERISA" Litig.*, No. 1500, 02 Civ. 5575 (SWK), 2004 WL 992991 (S.D.N.Y. May 5, 2004).......................................................13

*Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352 (S.D.N.Y. 1999)...................................................................................6, 7

*In re Asia Pulp & Paper Secs. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003)................................12

*In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................................................13

*AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000) ..............................................2

*In re Bayer AG Secs. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004)..................................................................................13

*In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004)..............................3

*Bourjaly v. United States*, 483 U.S. 171, 107 S. Ct. 2775 (1987)...................................................11

*Burstyn v. Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002).................................................................14

*Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) ...........................................3

*In re Corning, Inc. Secs. Litig.*, 349 F. Supp. 2d 698 (S.D.N.Y. 2004)........................................13

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) .........................................8, 10

*Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2002 WL 826847 (S.D.N.Y. May 2, 2002)...................................................................................8, 10, 11

KL3:2399846.1

*Cromer Fin. Ltd. v. Berger*, 245 F. Supp. 2d 552 (S.D.N.Y. 2003) ........................................11, 12

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...............................................................................................................................7

*DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65 (2d Cir.), *cert. denied*, 519 U.S. 1007, 117 S. Ct. 509 (1996)............................................................................7

*In re Deutsche Telekom AG Secs. Litig.*, No. 00 Civ. 9475 (SHS), 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ................................................................................14

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837 (2d Cir. 1998) ...........................................................................................................2

*In re Dynegy, Inc. Secs. Litig.*, 339 F. Supp. 2d 804 (S.D. Tex. 2004) ...........................................3

*In re Elan Corp. Secs. Litig.*, No. 02 Civ. 865 (RMB)(FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004).................................................................................13

*In re Emex Corp. Secs. Litig.*, No. 01 Civ. 4886 (SWK), 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) .........................................................................................14

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 310 F. Supp. 2d 819 (S.D. Tex. 2004).......................................................................................... 5-6

*Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793 (RCC), 2004 WL 744594 (S.D.N.Y. Apr. 6, 2004)........................................................................................3

*In re Flag Telecom Holdings Ltd. Secs. Litig.*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005) .....................................................................................................12, 13

*Franklin High Income Trust v. APP Global, Ltd.*, 7 A.D.2d 400, 776 N.Y.S.2d 473 (N.Y. App. Div. 2004) .............................................................................10

*Gabriel Capital L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407 (S.D.N.Y. 2000) .......................7

*In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ............. 4, 5, 11-14

*Goldin Assocs., LLC v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 24, 2003) .......................8

*In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281(S.D.N.Y. 2003) ................................6

*International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995)..............................................................................................................3

KL3:2399846.1

iii

*Jansen v. Packaging Corp. of Am.*, 123 F.3d 490 (7th Cir. 1997)..................................................11

*Kahn v. Chase Manhattan Bank, N.A.*, 90 Civ. 2824 (LMM), 1995 WL 491067
    (S.D.N.Y. Aug. 17, 1995) ........................................................................................2

*Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd*, No. 96-9422,
    1998 WL 406036 (2d Cir. June 8, 1998) ..........................................................10

*In re Laser Arms Corp. Secs. Litig.*, 794 F. Supp. 475 (S.D.N.Y. 1989), *aff'd*,
    969 F.2d 15 (2d Cir. 1992)........................................................................................6

*Laser Mortg. Mgmt. v. Asset Securitization Corp.*, No. 00 Civ. 8100 (NRB), 2001
    WL 1029407 (S.D.N.Y. Sept. 6, 2001)..............................................................14

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)..........................................................2

*In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002).................................10

*Lippe v. Bairnco Corp.*, 225 B.R. 846 (Bankr. S.D.N.Y. 1998) ......................................................6

*In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001)....................3, 14

*In re Loral Space & Communications Ltd. Secs. Litig.*, No. 01 Civ. 4388 (JGK),
    2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)......................................................13

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003).................................................2

*In re NTL, Inc. Secs. Litig.*, No. 02 Civ. 3013 (LAK), 2004 WL 2786024
    (S.D.N.Y. Dec. 6, 2004)........................................................................................13

*Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263 (S.D.N.Y. 2003) .......................5

*Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281 (S.D.N.Y. 1994).........................................13

*In re Philip Servs. Corp. Secs. Litig.*, No. 98 Civ. 0835 (MBM), 2004 WL
    1152501 (S.D.N.Y. May 24, 2004).....................................................................13

*Pits, Ltd. v. American Express Bank Int'l*, 911 F. Supp. 710 (S.D.N.Y. 1996) ..............................7

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904
    (S.D.N.Y. Aug. 30, 1996) ........................................................................................2

*In re Regeneron Pharms. Secs. Litig.*, No. 03 Civ. 3111 (RWS), 2005 WL 225288
    (S.D.N.Y. Feb. 1, 2005) ........................................................................................13

iv

*Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724
(S.D.N.Y. Dec. 20, 2002)...................................................................................................13

*Ross v. Bank South, N.A.*, 885 F.2d 723 (11th Cir. 1989)...............................................................6

*Ross v. Bolton*, No. 83 CIV. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr. 4,
1989), *aff'd*, 904 F.2d 819 (2d Cir. 1990) ..........................................................................12

*In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 77-78 (2d Cir.), *cert. denied sub*
*nom. Scholastic Corp. v. Truncellito*, 534 U.S. 1071, 122 S. Ct. 678 (2001)....................13

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) .....................................................5

*Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*, No. 00 Civ. 8058 (NRB), 2001 WL
1111508 (S.D.N.Y. Sept. 20, 2001)....................................................................................14

*Stinson v. Van Valley Development Corp.*, 719 F. Supp. 362 (E.D. Pa. 1989),
*aff'd*, 897 F.2d 524 (3d Cir. 1990) .......................................................................................7

*Sobek v. Quattrochi*, No. 03 Civ.10219(RWS), 2004 WL 2809989 (S.D.N.Y. Dec.
8, 2004) ................................................................................................................................3

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
No. 01 Civ. 11814 (MP), 2003 WL 21058090 (S.D.N.Y. May 12, 2003) ....................9, 13

*In re Towers Fin. Corp. Noteholders Litig.*, No. 93 CIV.0810 (WK) (AJP), 1996
WL 393579 (S.D.N.Y. July 15, 1996) ..................................................................................7

*In re Vivendi Universal, S.A. Secs. Litig.*, No. 02 Civ. 5571 (HB), 2003 WL
22489764 (S.D.N.Y. Nov. 3, 2003) ....................................................................................13

*Washington Nat'l Ins. Co. of New York v. Morgan Stanley & Co.*, No. 90 Civ.
3342, 1999 WL 461796 (S.D.N.Y. July 2, 1999) ................................................................6

*Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997) ..............................................................5

## STATUTES

Fed. R. Civ. P. 8......................................................................................................................7, 12, 14

Fed. R. Civ. P. 9(b) ...........................................................................................................................7

Fed. R. Civ. P. 10b-5.................................................................................................................1, 2, 7

Fed. R. Civ. P. 12(b) .........................................................................................................................7

KL3:2399846.1

Securities Exchange Act, Section 10(b) ...................................................................................1, 13

Securities Exchange Act, Section 20(a) ............................................................................1, 11, 13

## MISCELLANEOUS

*Restatement (Second) of Agency* § 8 Comment a (1957)...............................................................11

KL3:2399846.1

Defendant Deloitte Touche Tohmatsu ("DTT") respectfully submits this reply memorandum in further support of its motion to dismiss the Complaint.[1]

### Preliminary Statement

Plaintiffs' memorandum confirms that they have not stated a claim against DTT. Unable to make allegations in their Complaint that DTT participated in the purported Parmalat fraud, plaintiffs try instead to rewrite their Complaint and obfuscate where it falls short. Unable to allege that DTT knew about the purported fraud, plaintiffs highlight allegations concerning the purported knowledge and recklessness of a separate entity, DT-Italy. Unable to distinguish the numerous cases that have considered and rejected the very "one firm" arguments plaintiffs make here, plaintiffs simply pretend they do not exist. And unable to live by established limitations on Section 10(b) and Section 20(a) liability, plaintiffs ask this Court to stretch the law well beyond what Congress provided or intended. Because the Complaint's conclusory and undifferentiated allegations are insufficient, the Complaint should be dismissed as against DTT with prejudice.

## I. THE COMPLAINT FAILS TO ALLEGE A PRIMARY VIOLATION BY DTT OF RULE 10b-5

Effectively conceding that the Complaint does not allege a misrepresentation by DTT and thus a violation of Rule 10b-5(b), plaintiffs contend that Counts IV and V plead DTT's supposed "active participation" in a fraudulent scheme in violation of Rule 10b-5(a) and (c). (Pl. Mem. 82). However, the only conduct by DTT alleged in the Complaint is that it allegedly "quashed" concerns raised by Mr. Olivetti, an auditor at DT-Brazil. (*Id*. 82-84). These allegations are insufficient to state a claim.

---

[1] This reply memorandum does not respond to every contention made by plaintiffs in their opposing memorandum, but the lack of a response to any contention should not be interpreted as a concession that it is correct.

*First*, plaintiffs have not shown that so-called "scheme" liability is a viable theory of recovery under Rule 10b-5(a) and (c) in this case. DTT's opening brief cited (at 9 n. 3) *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 375 (S.D.N.Y. 2003), for the proposition that plaintiffs cannot avoid pleading a misrepresentation by DTT by purporting to assert Rule 10b-5(a) and (c) claims. Plaintiffs did not address DTT's argument, nor did they even attempt to distinguish *Merrill Lynch*. Since DTT's motion was filed, the Second Circuit has affirmed *Merrill Lynch*, holding that "where the sole basis for [Rule 10b-5(a) and (c)] claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c), and remain subject to the heightened pleading requirements of the PSLRA." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 177 (2d Cir. 2005). DTT's reading of Rule 10b-5(a) and (c), therefore, not only remains unchallenged by plaintiffs, it has been confirmed by the Second Circuit.[2]

The Second Circuit's holding in *Lentell* is consistent with its prior rulings that, although each participant in a group may be liable for his or her own primary violation, there is no separate cause of action for conspiracy to violate Rule 10b-5. *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 841-42 (2d Cir. 1998). Therefore, even courts that apply so-called "scheme" liability require plaintiffs to plead *a primary violation* by the defendant, including scienter. *See Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *7 (S.D.N.Y. Aug. 30, 1996) (financing purchase of questionable securities and extending credit in violation of internal guidelines so as to enable fund to become dangerously leveraged was mere aiding and abetting, not a primary violation); *Kahn v. Chase Manhattan Bank, N.A.*, 90 Civ. 2824 (LMM), 1995 WL 491067, at *1-2 (S.D.N.Y. Aug. 17, 1995) (allowing broker to

---

[2] Contrary to plaintiffs' argument (Pl. Mem. 35-38) that the Supreme Court and Second Circuit meant "manipulation" to cover an unending variety of conduct, "[t]here is a particular reluctance to expand liability in any direction." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 227 (2d Cir. 2000) (Jacobs, J., concurring) (citing *Central Bank v. First Interstate Bank,* 511 U.S. 164, 177-78, 114 S. Ct. 1439, 1448 (1994)).

cash checks bearing forged endorsements to further securities schemes was mere aiding and

abetting); *Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793 (RCC), 2004 WL 744594, at *19

(S.D.N.Y. Apr. 6, 2004) (knowledge of fraud and clearing fraudulent transactions does not state a

primary claim for market manipulation); *In re Dynegy, Inc. Secs. Litig.*, 339 F. Supp. 2d 804, 913-14

(S.D. Tex. 2004).

      Here, the Complaint's factual allegations -- as distinguished from the misleading

gloss plaintiffs now place upon them in their brief -- do not support the assertion that DTT silenced

Mr. Olivetti or any other auditor, "quashed" any concern, or committed any primary violation in

order to perpetuate an alleged scheme, much less that it did so with scienter.  A "complaint cannot . .

. be amended by the briefs in opposition to a motion to dismiss." *In re Livent, Inc. Noteholders Secs.

Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).

      The same is true of the other assertions in plaintiffs' brief.  For instance, plaintiffs

allege in paragraph 1033 of their Complaint that "Deloitte . . . told [the auditors] to keep quiet so that

Deloitte could retain *its* multi-million dollar client" (emphasis added).  That allegation does not

mention DTT or any individuals through whom it could have acted.  It is directed at the collective

"Deloitte," but DTT showed in its opening brief (at 9-10, 13) that such lumping of different entities

is impermissible.[3]

      Plaintiffs similarly fail to mention DTT and lump many entities together in their

Complaint's allegation that "the global Deloitte organization . . . 'removed' Olivetti from any further

---

[3] Plaintiffs mistakenly argue that the fact that DTT is not an audit firm should be ignored as it is "based on a factual assertion outside of the Complaint" and "runs directly contrary to what the firm represents to the world." (Pl. Mem. 72). "'The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference'." *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  That includes the DTT website referenced in the Complaint, which states DTT does not provide audit services.  (Compl. ¶¶ 138-39). "The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); *Sobek v. Quattrochi*, No. 03 Civ.10219(RWS), 2004 WL 2809989, at *2 (S.D.N.Y. Dec. 8, 2004).

role in auditing Parmalat's Brazilian operation" (¶ 1013). Even if the allegations in paragraph 1013 were ascribed to DTT, they do not support a claim that DTT exercised any control over DT-Italy's audits of Parmalat's financial statements. Further, the Complaint does not allege that Mr. Olivetti's removal resulted in his concerns being ignored, or that DTT exerted influence over how the concerns were resolved, the Parmalat audit process or the resulting audit report, nor even that DT-Brazil committed a primary violation. Plaintiffs have simply lumped DTT together with other entities.[4]

   *Second*, even if plaintiffs had adequately alleged that DT-Brazil auditor concerns were quashed, that still would not amount to active participation by DTT in the alleged scheme. According to plaintiffs, these "episodes" resemble *In re Global Crossing Secs. Litig.*, 322 F. Supp. 2d 319, 346-47 (S.D.N.Y. 2004), where, in denying the auditors' motion to dismiss, the court stressed that when an employee of the audit firm raised a question, his "concerns had been 'quashed.'" (Pl. Mem. 83). However, far from relying on such a narrow allegation, Judge Lynch noted that the *Global Crossing* plaintiffs devoted more than 30 paragraphs of their complaint to

---

[4] Plaintiffs' brief is littered with numerous other attempts to rewrite the Complaint's allegations. For example:

   (i) Plaintiffs' brief states "Defendants here are . . . auditors that *directly participated* in . . . creating the notorious Enron-like Special Purpose Entities . . . used to mask the Company's huge debt levels" (Pl. Mem. 2, emphasis in original) and that "Defendants did far more than provide the typical services of outside professionals." (Pl. Mem. 3). However, the Complaint does not contain any such allegation as to DTT and the DTT website referenced in the Complaint (¶¶ 138-39) shows DTT is not an auditor and provides no professional services;

   (ii) Plaintiffs' brief refers to "Deloitte USA's lead partners and other DTT personnel in charge of the Parmalat audit" (Pl. Mem. 20), but the Complaint does not allege that any DTT personnel were in charge of the Parmalat audit. (Compl. ¶¶ 514, 570, 594, 620, 646, 684, 724, 1024);

   (iii) Plaintiffs' brief refers to "DTT's regional auditors" (Pl. Mem. 20), but the Complaint and the documents it references make clear DTT does not provide audit services. (Compl. ¶¶ 138-39, 150);

   (iv) Plaintiffs' brief alleges that "DTT's decision to bury red flags was understandable" and that DTT did so to protect "its retention of Parmalat as a client" (Pl. Mem. 20), but the Complaint does not allege DTT buried any red flags or that Parmalat was its client. (Compl. ¶¶ 135);

   (v) Plaintiffs' brief alleges that "DTT's auditing contract in Argentina was revoked" (Pl. Mem. 21), but the Complaint does not allege DTT has any audit contracts. (Compl. ¶¶ 1035-36);

   (vi) Plaintiffs' brief refers to "DTT's omissions" and then refers to paragraphs in the Complaint setting forth purportedly improper audit practices (Pl. Mem. 109 n.65), but none of them even mentions DTT.

allegations that the auditor "was well aware that the Companies' books were misleading, and that it played an active role in creating the schemes used to inflate the Companies' revenue." 322 F. Supp. 2d at 346. Plaintiffs here have made no such factual allegations against DTT and, as noted, DT-Brazil is not alleged to have violated the law.[5]

*Third*, DTT demonstrated in its moving memorandum (at 6, 10-14, 33-34) that plaintiffs have not adequately pled scienter as to DTT, which is an essential element of the claim. Plaintiffs have not even responded to this argument, much less rebutted it. Instead, plaintiffs point to the magnitude of the alleged fraud to conclude that the "Auditor Defendants" must have known or been willfully blind to the purported fraud. (Pl. Mem. 67-69.) However, plaintiffs must plead scienter as to each defendant with specificity; "must have known" pleading is not enough. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994) (affirming dismissal where defendants allegedly "knew or should have known" about certain accounting issues); *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp.2d 263, 276 (D.N.J. 2002) (rejecting scienter pleading based "almost entirely on what PwC 'must have known' by virtue of its role as Campebell's auditor"); *Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997) (claim that auditor knew or recklessly disregarded adverse facts based solely on its "status of auditor" held to be insufficient).

*Fourth*, DTT showed in its prior memorandum (at 14-16) that the Complaint's reliance on the fraud on the market doctrine to show reasonable reliance and loss causation is unwarranted. As to loss causation, plaintiffs also rely upon cases that are completely distinguishable on the facts, principally *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 310 F. Supp. 2d 819

---

[5] The plaintiffs in *Global Crossing* asserted, among other allegations, that (i) Andersen, through one of its audit partners, designed and executed the illegal transactions; (ii) two Andersen partners were regularly present at the Global Crossing headquarters and had access to and knowledge of the company's private books and records, which contained information at odds with its public filings; and (iii) the Andersen "Professional Standards Group" had been alerted to the questionable practices by an Andersen auditor assigned to a different client, and that auditor's concerns had allegedly been "quashed." *In re Global Crossing Secs. Litig.*, 322 F. Supp. 2d at 346-47. Judge Lynch cited each of these allegations in support of his conclusion that the *Global Crossing* plaintiffs had adequately pled scienter.

(S.D. Tex. 2004) ("*Enron II*"). There, Merrill Lynch was unsuccessful in its motion to dismiss for failure to plead loss causation because it was purportedly a direct participant in transactions by which the fraud was perpetrated. Here, in contrast, although auditors at GT-Italy are alleged to have been knowingly engaged in the design and implementation of the fraud, the accusation against DT-Italy is that its auditors allowed themselves to be misled by the actual fraudsters. Moreover, DTT is not alleged to have had *any* involvement in the fraud. Therefore, plaintiffs' claims against DTT are unlike *Enron II* and the other cases relied upon by plaintiffs.

With respect to reliance, plaintiffs' invocation of the "fraud on the market" doctrine is unavailing, because the Complaint fails to delineate the markets on which Parmalat securities about which plaintiffs complain were traded and thus does not establish that these securities were traded on a mature, developed market. *In re Laser Arms Corp. Secs. Litig.*, 794 F. Supp. 475, 490 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992) ("the Second Circuit has limited the application of the fraud on the market theory to developed markets, which represent the 'efficient market' model"). Nor does plaintiffs' reliance on the "fraud-created-the-market" notion excuse their failure to plead causation. The Second Circuit has not adopted the theory as valid, and courts in this district have expressed doubt as to its viability. *In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281, 377 (S.D.N.Y. 2003); *Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 363 (S.D.N.Y. 1999); *Washington Nat'l Ins. Co. of New York v. Morgan Stanley & Co.*, No. 90 Civ. 3342, 1999 WL 461796, at *9 (S.D.N.Y. July 2, 1999). The cases cited by plaintiffs (Pl. Mem. 112-13) are from outside this Circuit.[6]

---

[6] Moreover, the "accepted standard in jurisdictions that have approved the theory that fraud created the market is whether the bonds were qualified legally to be issued," *Washington Nat'l Ins. Co. of New York*, 1999 WL 461796, at *9, and only allows plaintiffs to rely "on the integrity of the market, i.e., the action of the market to furnish only securities that are entitled to be marketed." *Ross v. Bank South, N.A.*, 885 F.2d 723, 729 (11th Cir. 1989), *cert. denied*, 495 U.S. 905, 110 S. Ct. 1924 (1990). "Securities meet the test of 'not entitled to be marketed' only where the promoters knew the enterprise itself was patently worthless." *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1122 (5th Cir. 1988), *vacated on other grounds sub nom. Fryer v. Abell*, 492 U.S. 914 (1989). Here, the Complaint does not allege that DTT was a promoter of the securities or that it knew that Parmalat was worthless. Further, plaintiffs have not pled that Parmalat's

## II.   THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO IMPUTE DT-ITALY'S PURPORTED FRAUDULENT CONDUCT TO DTT

Recognizing that DTT was not itself engaged in any alleged fraud, plaintiffs try to hold DTT liable for alleged "violations of Rule 10b-5(a), (b) and (c) committed by" non-party DT-Italy. (Pl. Mem. 69.)   They base their efforts on three theories of vicarious liability: (i) the "one firm" theory (Pl. Mem. 70-72); (ii) purported alter ego liability (Pl. Mem. 73-78); and (iii) agency. (Pl. Mem. 78-82.)  However, the Complaint fails to plead facts supporting any of these theories.[7]

### A.   Plaintiffs' "One Firm" Argument Is Defective And Has Been Consistently Rejected

Plaintiffs' "one firm" theory is predicated on the allegation that DTT and its member firms are a single "integrated worldwide firm." (Pl. Mem. 71.)  However, that is not enough to state a claim against DTT, for several reasons.

*First*, the Complaint's "one firm" allegations cited in plaintiffs' brief (¶¶ 138-151) are too muddled to support plaintiffs' argument.  These allegations concern the operation of "Deloitte," which the Complaint defines as "Deloitte Touche Tohmatsu, Deloitte & Touche LLP and Deloitte & Touche USA LLP" (Compl. ¶ 134) or as other larger groups. *See* DTT Mem. 5-6, 9-10.  As noted,

---

securities were *patently* worthless *when issued,* because Parmalat "was [a] genuine [company]." *Stinson v. Van Valley Dev. Corp.*, 719 F. Supp. 362, 366-67 (E.D. Pa. 1989), *aff'd*, 897 F.2d 524 (3d Cir. 1990) (allegations of serious financial mismanagement and undisclosed self-dealing "fail to show the kind of sham or hoax required").  In addition, the "theory fails here as a matter of fact as well as law" to the extent that Parmalat and its bankers "successfully marketed" the securities offerings before DTT's alleged misconduct, which, therefore, was "not necessary to 'create' a market for the [securities]." *In re Towers Fin. Corp. Noteholders Litig.*, No. 93 CIV.0810 (WK) (AJP), 1996 WL 393579, at *17 (S.D.N.Y. July 15, 1996).  Accordingly, the theory cannot cure plaintiffs' failure to plead reliance with respect to purchases prior to April 5, 2002, the first date on which the Complaint (¶ 1010) alleges that DTT took any action in connection with the fraud.  Finally, even had the Second Circuit adopted this controversial theory and plaintiffs pled facts that would make it applicable to their purchases or sales of Parmalat securities and to DTT in particular (which they did not), it "would only help plaintiffs allege reliance or transaction causation, not the missing element of loss causation." *Arduini/Messina P'ship*, 74 F. Supp. 2d at 363.

[7] Plaintiffs argue that they need not plead alter ego or agency with particularity. (Pl. Mem. 76, 80-82).  But because plaintiffs seek to hold DTT vicariously liable for fraud, they are required to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See, e.g., Gabriel Capital L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 433 (S.D.N.Y. 2000); *Pits, Ltd. v. American Express Bank Int'l*, 911 F. Supp. 710, 715 (S.D.N.Y. 1996).  Even under Fed. R. Civ. P. 8, conclusory agency and alter ego allegations are insufficient to survive a Rule 12(b)(6) motion to dismiss. *DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied*, 519 U.S. 1007, 117 S. Ct. 509 (1996); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

this "lumping" together of defendants and others is impermissible, and renders meaningless the allegations upon which plaintiffs rest their "one firm" argument. *See Lippe v. Bairnco Corp.*, 225 B.R. 846, 860 (Bankr. S.D.N.Y. 1998); *Goldin Assocs., LLC v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2003 WL 22218643 at *3 (S.D.N.Y. Sept. 24, 2003) ("the complaint must also disclose the specific nature of each defendant's participation in the alleged fraud").

*Second*, plaintiffs recognize in their Complaint that DTT is separate and distinct from its member firms. (*See, e.g.*, Compl. ¶ 131, alleging that DTT "is a professional services organization with member firms around the world"). This is no surprise, as plaintiffs' own lead counsel has represented to the Court in argument, and has averred in a sworn declaration, that DTT and its member firms are legally distinct entities that operate separately. (*See* DTT Mem. 7, citing Dell Aff. Exs. E & F). Plaintiffs' response does not address these representations.

*Third*, in the face of a mountain of cases rejecting the "one firm" theory (*see* DTT Mem. 18), plaintiffs mistakenly rely on a single inapposite case. (Pl. Mem. 72, citing *Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2002 WL 826847 (S.D.N.Y. May 2, 2002) ("*Cromer II*")). *Cromer II* is no help to plaintiffs, because Judge Cote had, in an earlier decision, addressed the situation in which plaintiffs find themselves here, namely where there is no specific allegation that a DTT member firm that prepared audit reports was an agent of DTT. In *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ("*Cromer I*"), the court dismissed "one firm" claims for failure to state a claim. Later, DTT was brought back into that case, in *Cromer II*, but only after the Court found plaintiffs presented specific evidence that the "partner [at D&T Bermuda] in charge of the [Manhattan] Fund's audits" played a unique role in the operations of DTT. *Id.* at 561-62. Such allegations are not present here. (*See* DTT Mem. 28-29.)

### B. The Complaint Fails To Plead That DTT Is DT-Italy's Alter Ego

Because the Complaint here fails to plead an alter ego relationship between DTT and DT-Italy, plaintiffs' reliance on cases where the complaint did plead facts establishing an alter ego relationship is misplaced. As an initial matter, plaintiffs fail to distinguish the alter ego cases cited in DTT's moving brief . (*See* DTT Mem 19.) And plaintiffs do not claim to have alleged that DTT exercised complete dominion and control over its member firms, or to have pled with specificity allegations that would establish that DTT used such complete domination to "commit fraud or wrong" against plaintiffs. *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 136 (1988). Similarly, plaintiffs do not argue that DTT has any ownership interest in DT-Italy or other member firms.

Plaintiffs rely heavily on *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814 (MP), 2003 WL 21058090 (S.D.N.Y. May 12, 2003), but that case does not support them. There, plaintiffs alleged that the international membership organization had itself "certified that the financial statements of [the company] were fairly presented in conformity with [applicable accounting principles and auditing standards]" because "[e]ach of these audit reports was signed 'BDO International'." *Id*. at *1-2. No such pleading is attempted in this case.

Similarly, in *Teachers* BDO signed the audit reports, which "was not an isolated event." *Id*. at *5. Plaintiffs here did not and cannot make a similar allegation about DTT. All Parmalat audit reports referenced in the Complaint (¶¶ 514, 570, 594, 620, 646, 684, 724) were issued by DT-Italy on its letterhead and signed by a DT-Italy partner on its behalf.

*Teachers* is inapposite for the additional reason that plaintiffs there alleged that they were misled by representations by the international membership organization that it was a "global network" with "stringent standards and quality controls imposed and implemented by International." *Id*. at *2. The Complaint here does not allege that plaintiffs relied on any notion that DTT and its

- 9 -

member firms are "one firm" or on any other purported act by DTT.  Instead, the DTT webpage referenced in the Complaint (¶¶ 138-39) states that "[e]ach of the member firms is a separate and independent legal entity," and "[s]ervices are provided by the member firms or their subsidiaries or affiliates and not by the Deloitte Touche Tohmatsu Verein." (DTT Mem. 5, 13, 24, 27, 30; Dell Aff. Ex. C).  Similarly, the press release cited in the Complaint (¶ 150) reports that revenues are "from [DTT's] member firms," and that services are provided by them "and not by the Deloitte Touche Tohmatsu Verein." (Dell Aff. Ex. H).[8]

### C.      The Complaint Fails To Plead That DT-Italy Is DTT's Agent

Contrary to plaintiffs' argument (Pl. Mem. 81), whether they have adequately pled agency is an issue properly decided on a motion to dismiss.  *See Cromer I* at 496 ("Nor have plaintiffs succeeded in alleging their common law fraud claim against DTUS under an agency argument").  Moreover, Rule 9 applies to plaintiffs' agency claim.  *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), *aff'd*, No. 96-9422, 1998 WL 406036 (2d Cir. June 8, 1998).

Plaintiffs again rely mistakenly on *Cromer II* to support their position that they have pled an agency relationship between DTT and DT-Italy.  The facts alleged in *Cromer II* are very different than those alleged here, which resemble *Cromer I*, where "plaintiffs have not alleged that DTT knew that the audit reports contained false information, and their allegations are insufficient to infer that DTT was reckless," because they have "not allege[d] that DTT was even aware of the reports, much less aware that its name and logo were included on the audit reports ...." *Cromer I*, 137 F. Supp. 2d at 493.  While plaintiffs contend that the placement of the DTT logo on the Parmalat audit reports is "devastating" to DTT (Pl. Mem. 80 n. 44), *Cromer I* is to the contrary.  Without

---

[8] Plaintiffs' reliance on *Franklin High Income Trust v. APP Global, Ltd.*, 7 A.D.3d 400, 776 N.Y.S.2d 473 (1st Dep't 2004), is similarly misplaced.  There, unlike the Complaint here, plaintiffs had made "allegations that defendant AWSC . . . a Swiss cooperative domiciled in Geneva, Switzerland, prepared financial statements." *Id.*

more, plaintiffs have failed to plead an agency relationship. *See In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp .2d 152, 173 (D. Mass. 2002).

*Cromer II* and *Cromer III* also do not help plaintiffs. DTT was brought back into *Cromer* only after the plaintiffs had pled *facts unique to that case*, purportedly showing that the partner of the member firm in charge of the audit was "invited to join [a DTT committee] precisely because of his experience with and expertise" in audits *such as the particular audit at issue*, that his relationship with DTT "encompassed knowledge he acquired in his work as an auditor" *on that particular engagement*, and that auditing work was "within the scope of [his] participation in [the DTT committee]." *Cromer III*, 245 F. Supp. 2d at 555, 561-62. Plaintiffs here have not pled any such facts.[9]

## III. COUNT VI FAILS TO STATE A CONTROL PERSON CLAIM AGAINST DTT FOR VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

Plaintiffs argue that they have pled DTT control over DT-Italy by alleging that the "Deloitte global network" sets "standards and procedures" and can expel member firms (Pl. Mem. 102). But none of plaintiffs' cases sustained the pleading of a control person claim against an incorporated umbrella association of separate international accounting firms that operated in their separate respective jurisdictions, on the basis of such allegations. In contrast, DTT cited numerous cases (DTT Mem. 32-33) in which courts dismissed, at the pleading stage, claims that an umbrella accounting entity such as DTT was a control person of the member accounting firms that allegedly conducted defective audits or otherwise violated the securities laws. Plaintiffs essentially have ignored those cases.

---

[9] Contrary to plaintiffs' accusation (Pl. Mem. 81 n.45), there is nothing "misleading" about DTT's citation to *Bourjaly v. United States*, 483 U.S. 171, 189, 107 S. Ct. 2775, 2786 (1987) (Blackmun, J., dissenting), for the proposition that "the agent's authority must be traced back to some act or statement by the alleged principal." The proposition is not the issue on which the minority dissented, nor did the majority disagree with it. The proposition is a generally accepted principle of agency law. *Jansen v. Packaging Corp.*, 123 F.3d 490, 562 (7th Cir. 1997); *Restatement (Second) of Agency* § 8, Comment a (1957).

Plaintiffs try to distinguish one case, *In re Asia Pulp & Paper Secs. Litig.*, 293 F.
Supp. 2d 391 (S.D.N.Y. 2003), based on their conclusory allegations that DTT was able to control
member firms. However, that decision supports DTT's position. The factual allegations in the
Complaint here (as opposed to its conclusory legal assertions) do not support an inference that DTT
actually exercised control over DT-Italy or any other DTT member firms in the conduct of Parmalat-
related audits. At most, the Complaint suggests that DTT may have been in a position to resolve by
persuasion an alleged disagreement between auditors at DT-Italy and DT-Brazil. But "the mere
ability to persuade" is not sufficient to support a control person claim, *In re Flag Telecom Holdings
Ltd. Secs. Litig.*, 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005); *Ross v. Bolton*, No. 83 Civ. 8244
(WK), 1989 WL 80428, at *3 (S.D.N.Y. Apr. 4, 1989), *aff'd*, 904 F.2d 819 (2d Cir. 1990), and there
is no allegation that DT-Brazil committed a primary violation.

As noted above, Judge Pollack's decision in *Teachers' Retirement System of
Louisiana* also does not support plaintiffs. There, BDO International B.V., the international
umbrella corporation, was alleged to have actually *certified* the financial statements at issue, and to
have done so "routinely." *Teachers* at *5. In addition, the court relied on allegations that, quoting
from BDO's own materials, indicated that "the organization structure 'ensures *strict quality control*
... ,' and that the '*stringent* conditions which each member firm has to comply to be part of the BDO
network are paramount." *Id.* at *12 (emphasis added). Here, in contrast, the Complaint contains no
comparable quotations from Deloitte materials indicating "strict" or "stringent" control by DTT of
Deloitte member firms (*see* ¶¶ 138-43).[10] *Cromer Finance Ltd. v. Berger*, 245 F. Supp. 2d 552
(S.D.N.Y. 2003) ("*Cromer III*"), is distinguishable on the basis of the dual role of the particular
individual in charge of the relevant audit. *Global Crossing* is inapposite because the complaint there

---

[10] To the contrary, the Complaint relies upon the establishment of a new "global code of conduct," which will serve as a
"guide" to Deloitte member firms "in developing their own codes of conduct," and which was announced on May 14,
2004, *after* the Parmalat-related events that are the subject of this litigation (*see* Compl. ¶ 147).

contained extensive detailed factual allegations about the intimate involvement of the controlling person, an Arthur Andersen entity, in the wrongful conduct, including allegations that it "was actually aware of the fraudulent accounting schemes, and, indeed, that it was responsible for ensuring that they were applied consistently . . . ." 322 F. Supp. 2d at 351. Notably, the court in *Global Crossing* also concluded that the controlling person allegations were insufficient to state a claim against some defendants. *Id.*

Plaintiffs also argue that there is no requirement that they plead culpable participation. They largely ignore the case law that holds otherwise, and rely heavily on cases like this Court's decision in *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281 (S.D.N.Y. 1994), where this Court noted that "Judges in this circuit are divided on this issue," *id.* at 284, but concluded that "the better reasoned" view is that a plaintiff can plead a claim for control person liability under Section 20(a) without pleading that the "the alleged controlling person was a culpable participant in the alleged [primary] violation." *See also In re NTL, Inc. Secs. Litig.*, No. 02 Civ. 3013 (LAK), 2004 WL 2786024, at *13 (S.D.N.Y. Dec. 6, 2004) ("an interesting question on which courts, both within and outside this circuit, are deeply divided"). DTT respectfully submits that, under Second Circuit authority, the position in its moving memorandum is correct.[11]

---

[11] In the most recent Second Circuit decision discussing culpable participation in the context of a Section 20(a) claim, the Court of Appeals reiterated the rule that plaintiffs must "allege a primary § 10(b) violation by a person controlled by the defendant, *and culpable participation by the defendant in the perpetration of the fraud.*" *In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 77-78 (2d Cir.), *cert. denied sub nom. Scholastic Corp. v. Truncellito*, 534 U.S. 1071, 122 S. Ct. 678 (2001) (emphasis added) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Since *In re Scholastic* was decided, approximately 20 courts within this district have held that culpable participation is a required element to plead a section 20(a) claim. *See In re Regeneron Pharms. Secs. Litig.*, No. 03 Civ. 3111 (RWS), 2005 WL 225288, at *11 n.4 (S.D.N.Y. Feb. 1, 2005); *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d at 458-59; *In re Corning, Inc. Secs. Litig.*, 349 F. Supp. 2d 698, 721-22 (S.D.N.Y. 2004); *In re Bayer AG Secs. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004); *In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*, 324 F. Supp. 2d 474, 499 (S.D.N.Y. 2004); *In re Philip Servs. Corp. Secs. Litig.*, No. 98 Civ. 0835 (MBM), 2004 WL 1152501, at *20 (S.D.N.Y. May 24, 2004); *In re Elan Corp. Secs. Litig.*, No. 02 Civ. 865 (RMB)(FM), 2004 WL 1305845, at *27 (S.D.N.Y. May 18, 2004); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500, 02 Civ. 5575 (SWK), 2004 WL 992991, at *30 (S.D.N.Y. May 5, 2004); *In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp.2d 319, 349 & n.24 (S.D.N.Y. 2004); *In re Loral Space & Communications Ltd. Secs. Litig.*, No. 01 Civ. 4388 (JGK), 2004 WL 376442, at *19 (S.D.N.Y. Feb. 27, 2004); *In re Vivendi Universal, S.A. Secs. Litig.*, No. 02 Civ. 5571 (HB), 2003 WL 22489764, at * 24 (S.D.N.Y. Nov. 3, 2003); *Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724,

Plaintiffs further argue that they have pled culpable participation (Pl. Mem. 104).

However, the Complaint is devoid of factual allegations establishing that DTT "knew or should have

known that [DT-Italy] was engaging in fraudulent conduct." *Global Crossing*, 322 F. Supp. 2d at

349.

## IV.    THE COMPLAINT DOES NOT COMPLY WITH THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8(a)(2) AND 8(e)(1)

Plaintiffs respond to the showing that the Complaint does not comply with the

requirements of Fed. R. Civ. P. 8(a)(2), and 8(c)(1) (DTT Mem. 34-35), by asserting that DTT is

"seek[ing] to place" plaintiffs in a "procedural Catch-22", and that the Complaint's extraordinary

length is largely due to "the extensive, far-reaching and complex nature and scope of the fraudulent

activities and conduct alleged." (Pl. Mem. 142).

Plaintiffs miss the point. Their Complaint repeatedly aggregates the separate DTT

member firms together without differentiation as "Deloitte" and, to compound the obfuscation, it

repeatedly lumps DTT and its member firms together with various undifferentiated Grant Thornton

firms as the "Auditor Defendants." Moreover, in seeking to articulate whatever wrongdoing

plaintiffs purport to ascribe to "Deloitte" entities, the Complaint repeatedly makes inconsistent

alternative allegations. For example, after the Complaint alleges that "Deloitte" requested

information from Parmalat and Grant Thornton about the balance sheet of an entity called Camfield

(¶ 964), the Complaint goes on to allege that "Deloitte either received the information . . . and

recklessly ignored or disregarded it, or Deloitte recklessly failed to follow through" on its requests

---

at *12 (S.D.N.Y. Dec. 20, 2002); *Burstyn v. Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741, at *7-8 (S.D.N.Y. Sept. 30, 2002); *In re Emex Corp. Secs. Litig.*, No. 01 Civ. 4886 (SWK), 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002); *In re Deutsche Telekom AG Secs. Litig.*, No. 00 Civ. 9475 (SHS), 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002); *Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*, No. 00 Civ. 8058 (NRB), 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001); *Laser Mortg. Mgmt. v. Asset Securitization Corp.*, No. 00 Civ. 8100 (NRB), 2001 WL 1029407, at *11 (S.D.N.Y. Sept. 6, 2001); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001).

for the information (¶ 965).  Elsewhere, the Complaint alleges that "Deloitte knew, recklessly disregarded or recklessly failed to discover" a particular aspect of the Parmalat fraud (¶ 1000).[12]

The problem with this Complaint is not any "procedural Catch-22" of DTT's making, but rather plaintiffs' own over-reaching in trying to craft a pleading that would bring before this Court as many deep pockets as possible by, among other things, using DTT -- an umbrella corporation that conducts no audits -- to override the separate legal identities of the various foreign entities that actually performed audits of Parmalat and its affiliates.

### Conclusion

DTT respectfully requests the Court to dismiss the Complaint as to it with prejudice.

Dated: New York, New York
March 3, 2005

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
Michael J. Dell (MD-7714)
Robert A. de By (RD-6197)

919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for defendant Deloitte Touche Tohmatsu

---

[12]    The Complaint contains several similar inconsistent alternative allegations about "Deloitte" (*see* ¶¶ 970, 976, 985, 994, 996, 998, 1004, 1020, 1021, 1050, 1057).

KL3:2399846.1