```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          x
                                       :
In re PARMALAT SECURITIES LITIGATION   :
                                       :     MASTER DOCKET
This document relates to:  04 Civ. 0030 (LAK)  :     04 MD 1653 (LAK)
                                       :
                                       :     ELECTRONIC FILING
                                       x
```

# GRANT THORNTON INTERNATIONAL'S REPLY MEMORANDUM
# OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

**STROOCK & STROOCK & LAVAN LLP**

180 Maiden Lane
New York, NY 10038
(212) 806-5400

*Attorneys for Grant Thornton International*

*Of Counsel:*
Brian M. Cogan
James L. Bernard
Quinlan D. Murphy

**TABLE OF CONTENTS**

    Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT    GTI IS NOT LIABLE FOR THE ACTS OF ITS MEMBER FIRMS OR GT-ITALY BECAUSE GTI PLAYED NO ROLE IN PARMALAT'S COLLAPSE, PLAINTIFFS HAVE NOT PLED FACTS TO SUPPORT AN ALTER EGO OR AGENCY CLAIM AGAINST GTI, AND PLAINTIFFS HAVE NOT PLED ANY FACTS TO SUPPORT CONTROL PERSON LIABILITY AGAINST GTI ................................................................................................ 2

    A.    Plaintiffs' One-Firm Allegations, Couched in Terms of Alter Ego and Agency Liability, are Insufficient to State a Claim Against GTI for GT-Italy's Alleged Violations of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5 .................................................................................3

    B.    Plaintiffs Have Not Sufficiently Alleged a Cause of Action Against GTI Under Section 20(a) of the Securities Exchange Act of 1934 ..........................9

    C.    Leave to Replead Should Be Denied ....................................................................11

CONCLUSION    ............................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

In re Asia Pulp & Paper Sec. Litigation,
    293 F. Supp. 2d 391 (S.D.N.Y. 2003)...............................................................................10

In re Blech Sec. Litigation,
    961 F. Supp. 569 (S.D.N.Y. 1997).................................................................................9, 10

Boguslavsky v. Kaplan,
    159 F.3d 715 (2d Cir. 1998).................................................................................................11

Cromer Finance Ltd. v. Berger,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................................10

Cromer Finance Ltd. v. Berger,
    Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC),
    2002 WL 826847 (S.D.N.Y. May 2, 2002) ......................................................................6, 7

DeJesus v. Sears, Roebuck & Co., Inc.,
    87 F.3d 65 (2d Cir. 1996) ................................................................................................. 2-3

In re Elan Corp. Securities Litigation,
    No. 02 Civ. 865 (RMB)(FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004).....................3

First Capital Asset Management v. Brickellbush, Inc.,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002)................................................................................11

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)............................................................................................10, 11

Franklin High Income Trust v. APP Global, Ltd.,
    7 A.D.3d 400, 776 N.Y.S.2d 473 (1st Dep't 2004)..............................................................5

Freeman v. Complex Computing Co.,
    119 F.3d 1044 (2d Cir. 1997)...............................................................................................4

In re Lernout & Hauspie Sec. Litigation,
    230 F. Supp. 2d 152 (D.Mass. 2002) ..................................................................................8

Myzel v. Fields,
    386 F.2d 718 (8th Cir. 1967) ...............................................................................................9

Neubauer v. Eva-Health USA, Inc.,
    158 F.R.D. 281 (S.D.N.Y. 1994) .....................................................................................3, 9

## TABLE OF AUTHORITIES

Page

Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP,
    03 Civ. 0613 (GBD), 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)............................3, 4, 10

Ross v. Bolton,
    No. 83 Civ. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr. 4, 1989)....................................9

Seippel v. Sidley, Austin, Brown & Wood LLP,
    03 Civ. 6942 (SAS), 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005).......................................2

Skidmore Energy, Inc. v. KPMG,
    03 Civ. 2138, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ...................................... 3, 4-5

In re Sotheby's Holdings, Inc.,
    No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)............................9

Teachers' Retirement System of Louisiana v. A.C.L.N. Ltd.,
    No. 01 Civ. 11814 (MP), 2003 WL 21058090 (S.D.N.Y. May 12, 2003) ..................5, 6, 9

In re WorldCom, Inc. Sec. Litigation,
    02 Civ. 3288 (DLC), 2003 WL 21488087 (S.D.N.Y. June 25, 2003).................................7

**PRELIMINARY STATEMENT**

Despite Plaintiffs' lengthy Opposition to Defendants' motions to dismiss, they have once again failed to attribute to Grant Thornton International ("GTI") a single statement, act, or omission involving the alleged fraud at Parmalat. Apparently recognizing its futility, Plaintiffs have abandoned their attempt to impute the allegedly fraudulent activity of Grant Thornton S.p.A. ("GT-Italy") to GTI by lumping them together under the collective term "Grant Thornton."

Nevertheless, Plaintiffs continue their campaign of obfuscation. As GTI expected, Plaintiffs fail to give each defendant adequate notice of what they allegedly did wrong. (See Cogan Decl. Ex. A). Despite their assurances to the contrary (id. at Ex. B), Plaintiffs have not clearly set forth which claims and allegations apply to which Defendants, and have made arguments relevant to multiple Defendants in sections of the Opposition purportedly focused on specific Defendants.

What Plaintiffs hope to accomplish by pleading in this manner is to hide their half-hearted effort to name GTI as a defendant in this case. The only specific allegations against any of the "Auditor Defendants" outside of Italy concern the various Deloitte entities. As the Deloitte entities address in their reply memorandums of law, those allegations are not sufficient against them. They are entirely irrelevant to the claims against GTI for the obvious reason that what some other entity allegedly said or did has nothing whatsoever to do with GTI.

This deficiency is all the more glaring given the access to a significant cache of documents Plaintiffs have had. (Compl. ¶ 1). Plaintiffs plead nothing against GTI that they could not have pled against any accounting umbrella organization in the world. Stated otherwise, Plaintiffs plead no facts specifically linking GTI to Parmalat or concerning GTI's relationship with GT-Italy or any other GTI member firm. Plaintiffs pepper the Opposition with

new allegations gleaned from documents they obtained since filing the Complaint, but like the allegations in the Complaint, none of these new allegations pertain to GTI, any GTI member firm, GTI member firm employee, or even GT-Italy.  It is telling that Plaintiffs have had access to these documents, and have used them to make allegations against the Deloitte entities, and yet in neither the Complaint nor the Opposition do they make more than generic allegations about GTI's involvement in Parmalat or relationship with GTI member firms.

Among Congress' goals in passing the Private Securities Litigation Reform Act ("PSLRA") was reducing meritless securities litigation and preventing plaintiffs from embarking on fishing-expeditions at the expense of innocent defendants.  See, e.g., Seippel v. Sidley, Austin, Brown & Wood LLP, 03 Civ. 6942 (SAS), 2005 WL 388561, at *2, (S.D.N.Y. Feb. 17, 2005) (citations omitted).  Unlike their allegations against other Defendants, Plaintiffs have pled nothing against GTI specific to the fraud that occurred at Parmalat, have not named a single GTI employee in the Complaint, and have done no more than make allegations parroting legal standards and repeating boilerplate one-firm allegations.  This is just the type of meritless claim that the PSLRA was meant to prevent.  This Court should not countenance the generic allegations Plaintiffs have made against GTI in the hope of surviving a motion to dismiss so they can begin a costly discovery process they plan to leverage into a settlement.

## ARGUMENT

### GTI IS NOT LIABLE FOR THE ACTS OF ITS MEMBER FIRMS OR GT-ITALY BECAUSE GTI PLAYED NO ROLE IN PARMALAT'S COLLAPSE, PLAINTIFFS HAVE NOT PLED FACTS TO SUPPORT AN ALTER EGO OR AGENCY CLAIM AGAINST GTI, AND PLAINTIFFS HAVE NOT PLED ANY FACTS TO SUPPORT CONTROL PERSON LIABILITY AGAINST GTI

Courts are not required to accept a party's conclusory factual allegations as true and need not assign any weight to unsupported conclusions of law.  See DeJesus v. Sears, Roebuck & Co.,

Inc., 87 F.3d 65, 70 (2d Cir. 1996); Neubauer v. Eva-Health USA, Inc., 158 F.R.D. 281, 285 (S.D.N.Y. 1994) (Kaplan, J.). "It is [also] well settled that the Court need not accept any averments of a complaint which are contradicted by documents incorporated by reference therein." In re Elan Corp. Sec. Litig., No. 02 Civ. 865 (RMB)(FM), 2004 WL 1305845, at *12 (S.D.N.Y. May 18, 2004) (citation omitted).

A.   **Plaintiffs' One-Firm Allegations, Couched in Terms of Alter Ego and Agency Liability, are Insufficient to State a Claim Against GTI for GT-Italy's Alleged Violations of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5**

Despite having had substantial access to documents, as Plaintiffs admit in the Complaint (compl. ¶ 1), Plaintiffs fail to make any allegations relating to work performed for Parmalat by GTI. This is hardly a surprise given that GTI is not licensed to and does not perform accounting work of any kind. Thus, Plaintiffs have abandoned any attempt to state a claim for direct liability against GTI (see, e.g., compl. ¶ 156), and turned their attention to holding GTI liable for the alleged acts of its member firms through one-firm allegations couched in terms of alter ego and agency claims.

Yet as GTI explained in its moving brief, and Plaintiffs fail to substantially contest in their Opposition, in other one-firm cases courts addressed precisely the same claims made here and rejected them time and time again. (Motion to Dismiss at 9-13).[1] The common thread that runs through all of those cases, and the theories of alter ego and agency liability, is that of control, see Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP, 03 Civ. 0613 (GBD), 2004 WL 112948, at *5-8 (S.D.N.Y. Jan. 22, 2004) (theories of agency and alter ego require

---

[1]   In addition to those one-firm cases cited in GTI's moving papers, Skidmore Energy, Inc. v. KPMG, 03 Civ. 2138, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004) addresses claims based on the same theory and likewise rejects them.

-3-

control by defendant), and Plaintiffs utterly fail to plead facts supporting their claim that GTI controlled GT-Italy.

The documents Plaintiffs reviewed have apparently been no more fruitful in making allegations of control against GTI than they were in supporting allegations of work performed by GTI for Parmalat, a theory Plaintiffs have since abandoned.  What Plaintiffs are left with are rote one-firm allegations insufficient to demonstrate control by GTI over its member firms or any other entity for that matter.  (Motion to Dismiss at 5).

In short, Plaintiffs' limited allegations of control cannot support their vicarious liability claims that GTI is liable for the Rule 10b-5 violations allegedly committed by GT-Italy.

### 1.	Plaintiffs' Allegations Are Not Sufficient to Support an Alter Ego Claim

The Complaint does not make out an alter ego claim against GTI.  Instead, this theory arises for the first time in Plaintiffs' Opposition.  But Plaintiffs make no factual allegations in their Opposition or the Complaint to support such a claim.  In order to establish an alter ago claim, Plaintiffs must demonstrate that:  (1) GTI has exercised such complete domination and control over GT-Italy that GT-Italy "has become a mere instrumentality" of GTI, (2) that "such control has been used to commit a fraud or other wrong," and (3) that the "fraud or wrong results in an unjust loss or injury to plaintiff."  Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997) (citation omitted).  Here, the only allegations of control pled by Plaintiffs are the stock one-firm allegations discussed in GTI's moving brief.  (Motion to Dismiss at 5).  Moreover, Plaintiffs do not allege any common ownership or management between or among GTI and its member firms and do not describe any commingling of assets or undercapitalization, despite the magnitude of such allegations to an alter ego claim.  See Freeman, 119 F.3d at 1053.

Based on pleadings nearly identical to this Complaint, this court has previously dismissed a plaintiffs' alter ego claim.  Nuevo Mundo, 2004 WL 112948, at *7; see also Skidmore Energy,

2004 WL 3019097, at *5 (rejecting "alter ego" claim against KPMG-US).  Plaintiffs, however, offer no cases addressing alter ego liability to support their position that their allegations are sufficient to demonstrate alter ego liability.  Instead, they cite two one-firm cases, one of which is a one-page New York State, First Department decision that does not describe the facts alleged there, making its application dubious at best.  <u>Franklin High Income Trust v. APP Global, Ltd.</u>, 7 A.D.3d 400, 776 N.Y.S.2d 473 (1st Dep't 2004).

The second and central case Plaintiffs rely upon for their alter ego analysis – <u>Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.</u>, No. 01 Civ. 11814 (MP), 2003 WL 21058090 (S.D.N.Y. May 12, 2003) -- does not address alter ego liability, and does not support a finding of liability against GTI because, unlike the Complaint here, that complaint contained specific factual allegations.  There, plaintiffs brought Rule 10b-5 and Section 20(a) claims against the accounting umbrella organization BDO International B.V. ("BDO International").  <u>Id</u>. at *1.  In stark contrast to the claims here, however, each allegation of control plaintiffs made in <u>Teachers Ret. Sys.</u> was specific, factual, and supported by documentation such as audit reports, SEC filings, and the BDO International website.  <u>Id</u>. at *2-5.  Also, plaintiffs alleged that International member firms were required to identify themselves as "BDO International" and use the BDO International logo.  <u>Id</u>. at *6.  The audited company's filings with the SEC, which were reviewed by BDO International through its representatives and BDO member firms, stated that the company's auditor was BDO International.  <u>Id</u>. at *2.  Finally, BDO International signed two audit reports on the company's financial statements alleged to be false and misleading.  <u>Id</u>. at *5.

None of those facts have been nor, consistent with Fed. R. Civ. P. 11, could they be alleged here. Plaintiffs make no allegations that GTI demands that its name and logo appear on audit reports (it does not), claims to be the auditor of any companies (it does not), or signs audits

reports (it does not). The documents GTI attached to its motion to dismiss establish that such claims could not be made. (See infra pp. 8). Because Plaintiffs do not make the allegations against GTI that the Court found sufficient in Teachers Ret. Sys., the case is inapplicable here.

Ultimately, Plaintiffs cite no proper authority for their assertion that an umbrella organization and its member firms should be treated as "alter egos" of one another. Notwithstanding Plaintiffs' conclusory allegations of control, the Complaint and Opposition are devoid of any factual allegations to support a finding of alter ego liability against GTI. Without such factual allegations, Plaintiffs fail to allege sufficient facts to avoid dismissal of their Rule 10b-5 claim against GTI based on alter ego liability.

### 2. Plaintiffs' Allegations Are Not Sufficient to Support an Agency Claim

Plaintiffs' actual agency argument is based almost entirely on Judge Cote's decision in Cromer Finance Ltd. v. Berger, Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC), 2002 WL 826847, at *1 (S.D.N.Y. May 2, 2002). Cromer, however, shows precisely why the Complaint here fails. The level of detail in Cromer was significantly greater than the allegations made against GTI.

There, plaintiffs' theory was that William Jack ("Jack"), the Deloitte Bermuda ("DTB") partner in charge of the audits for the Manhattan Investment Fund, Ltd (the "Fund"), was Deloitte Touche Tohmatsu's ("DTT") agent. Id. at *1. Unlike Plaintiffs' reliance upon allegations relating to marketing materials, the setting of standards, reviews, and conclusory statements of control, the Cromer Court based its ruling on "the allegations in the amended pleading . . . [from] a variety of sources of information and not just marketing materials." Id. at *5. Although the Court reviewed allegations relating to marketing materials, the key was the additional allegations relating to DTT's relationship with DTB and DTT's connections to the Fund audits. Id.

Specifically, plaintiffs pled that Jack, "the DTB partner in charge of the Fund audits, was [DTT]'s contact person in Bermuda for asset management company audits, and acted in that capacity when he signed audit opinions for the Fund." Id. at *2. Plaintiffs explained that "[DTT] represent[ed] to the investing community that Jack [was then] a member of [DTT]'s Global Financial Services Industries team and [was then] part of [DTT]'s global investment management and hedge fund practice." Id. "DTT was also directly identified as responsible for the Fund audits. . . .[and] [t]he audit report [bore] the name and logo of [DTT] as well as 'Deloitte & Touche' . . . [and] [t]he audits [were] . . . signed 'Deloitte & Touche' . . . ." Id. at *3.

In stark contrast, the Complaint here contains no remotely similar allegations concerning GTI, save for bald legal conclusions disguised as factual allegations. Plaintiffs, for example, do not allege that "GT-Italy auditors" Penca and Bianchi held any positions in specialized groups within GTI (they did not). Nor do Plaintiffs allege that the audit reports GT-Italy prepared used GTI's name and logo (they did not). The reason for this is clear. As GTI established in its moving papers, and as Parmalat did not dispute in Opposition, the audit reports prepared by GT-Italy for Parmalat prominently contain GT-Italy's name and logo, and GTI is mentioned only in small font indicating that GT-Italy was a member firm of GTI. (Motion to Dismiss Ex. B).

Judge Cote said it best in her subsequent opinion in In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2003 WL 21488087 (S.D.N.Y. June 25, 2003), when she rejected the one-firm arguments plaintiffs raised there and distinguished her prior decision in Cromer because it was based on fact-specific allegations not present in WorldCom: "[T]he complaint [in Cromer] included specific allegations of a conveyance of actual authority . . . [and] the name and logo of the international umbrella organization appeared on the audits prepared by [DTB]." Id. at *10

-7-

(citations omitted). Plaintiffs do not make the allegations against GTI that Judge Cote found sufficient in Cromer, and their reliance on Cromer is therefore inappropriate and misplaced.[2]

In short, GTI explained in its moving papers that Plaintiffs had not sufficiently alleged any of the elements of agency with respect to GTI (Motion to Dismiss 15-16), and Plaintiffs do not offer, by way of appropriate authority or allegations, any substantive response to that argument.

### 3. Plaintiffs' Allegations are Directly Contradicted by Documents Referenced in the Complaint

In addition to these specific deficiencies in what is alleged, each of Plaintiffs' theories of vicarious liability is directly contradicted by documents referenced by Plaintiffs in the Complaint. The GTI website and the January 8, 2004 press release (Motion to Dismiss Ex. A), both plainly state that GTI is legally distinct from its member firms. They explain that each firm "is a separate independent national firm," and that no one firm is "responsible for the services or activities of any other." In the absence of any legally sufficient allegations of fact to the contrary, these documents fully support dismissal of the Complaint. See, e.g., In re Lernout & Hauspie Sec. Litig., 230 F. Supp. 2d 152, 170-71 (D.Mass. 2002) (plaintiffs cited the KPMG International website for its description of KPMG International and its member firms as a unitary global entity, but the website also explained that each of KPMG International's member firms was a "separate and independent legal entity" and the Court thus rejected plaintiffs' one-firm argument and reasoned that "the very source upon which Plaintiffs rely – the home page of the KPMG website – belies their claim").

---

[2] Plaintiffs have not alleged that GTI is liable under an apparent agency theory, nor have they alleged any facts to support such a theory.

**B. Plaintiffs Have Not Sufficiently Alleged a Cause of Action Against GTI Under Section 20(a) of the Securities Exchange Act of 1934**

GTI set forth in its moving brief the appropriate pleading requirements under Section 20(a) and will not repeat them here, except to emphasize that "bare allegation[s] of control [do] not suffice[,]" Neubauer, 158 F.R.D. at 285, and the test for control is a functional one requiring "[a]ctual control over the wrongdoer and the transactions in question . . . ." In re Sotheby's Holdings, Inc., No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (citation omitted); In re Blech Sec. Litig., 961 F. Supp. 569, 586-87 (S.D.N.Y. 1997) (citing Ross v. Bolton, No. 83 Civ. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr. 4, 1989) (stating that defendant must possess actual control over the transactions in question)).

Plaintiffs fail to allege that GTI had the ability to exercise control over the conduct of GT-Italy and fail to allege any involvement by GTI in GT-Italy's audit and consulting work for Parmalat.  The only cases Plaintiffs cite in support of their argument that these allegations are sufficient to demonstrate control are an Eighth Circuit case from 1967 that Plaintiffs mistakenly identify as a Second Circuit decision, Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), and Teachers' Ret. Sys., 2003 WL 21058090.  But the allegations Plaintiffs point to in Teachers Ret. Sys. could hardly have been more different than those alleged here.  In that case, in addition to the numerous allegations already discussed (see supra pp. 5-6), the Complaint contained allegations quoting the BDO International website and other documents attached to the complaint that reflected BDO International's "repeated[] represent[ation] that 'the organization structure ensures strict quality control . . . .'" Teachers Ret. Sys., 2003 WL 21058090, at *4 (quoting a BDO International Annual Report).

Here, Plaintiffs point to the expulsion of the GT-Italy member firm, and their allegation that GTI sets policies and procedures.  (Opposition at 105-06).  But those allegations are

-9-

insufficient as a matter of law.  See In re Asia Pulp & Paper Sec. Litig., 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003) (dismissing complaint and describing it as "bereft of any allegations that AWSC [Anderson's international organization] . . . was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms[]" when it "generally [claimed] that AWSC set 'professional standards and principles' under which the individual offices operated"); Nuevo Mundo, 2004 WL 112948, at *3 (dismissing claim against one member firm based on conduct of another where plaintiff alleged there was "overall training and supervision of all affiliates and peer review meetings held to assure compliance with the accepted professional standards and ethical requirements of what each affiliate is doing").  Plaintiffs do not allege that GTI repeatedly made proclamations about "stringent quality control," and the fact that GT-Italy was expelled as a GTI member firm could never be mistaken as evidence that GTI had the "actual control over the wrongdoer and the transactions in question . . . necessary for control person liability."  Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 484 (S.D.N.Y. 2001) (emphasis added); In re Blech Sec. Litig., 961 F. Supp. at 586-87.  GT-Italy's expulsion occurred after the fact, and had nothing to do with "the transactions in question."

Plaintiffs have likewise failed to provide the Court with any basis for concluding that GTI had the ability to control the actions of Bonlat or Camfield.  Contrary to Plaintiffs' suggestion that "GTI is merely challenging the accuracy of the allegations" concerning Bonlat and Camfield (Opposition at 106), GTI is instead urging rejection of legal conclusions that are based on nothing more than allegations that, even if true, would not sufficiently support a finding of control.  See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) (recognizing that "courts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what

-10-

happened") (citations omitted); First Capital Asset Mgmt. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 387 (S.D.N.Y. 2002) (Kaplan, J.) (citing First Nationwide Bank, 27 F.3d at 771).

In addition, nearly all of Plaintiffs' allegations of control concern the supposed connections of GT-Italy and the GTI Singapore member firm ("GT Singapore") to Bonlat and Camfield, respectively.  Not only are Plaintiffs thus improperly alleging control twice removed (GT-US Motion to Dismiss at 23; GT-US Reply at 9-10), i.e., control over a member firm who in turn controlled a primary violator, but as discussed above, Plaintiffs have failed to sufficiently allege that GTI controlled GT-Italy and do not make any specific allegations that GTI controlled GT Singapore.  Not surprisingly, Plaintiffs have offered no case law to support their claim that any of these ineffectual allegations are sufficient to demonstrate control.

The Complaint also fails to allege particularized facts giving rise to an inference that GTI culpably participated in the fraud allegedly perpetrated by GT-Italy and others.  Plaintiffs do not attribute a single fraudulent act to GTI involving Parmalat; at most, they allege that GTI had access to the Parmalat work papers of GT-Italy, and they vaguely assert that either GTI or one of its member firms created Bonlat and Camfield.  These allegations fall far short of demonstrating that GTI was in some meaningful sense a culpable participant in the alleged fraud.  See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (culpable participation requires "'that the controlling person was in some meaningful sense a culpable participant' in the primary violation") (citation omitted).

## C. Leave to Replead Should Be Denied

Leave to replead should be denied because GTI does not perform accounting work and is not legally responsible for the audit work of its member firms, and any claims to the contrary would be futile.  Despite having had access to numerous sources of information, which Defendants have not had, Plaintiffs have pled nothing but generic allegations against GTI.

-11-

Plaintiffs' primary argument that they should be granted to leave to amend is that it "would not be futile because Plaintiffs are now in a position to provide even greater particularization of their allegations . . . ." (Opposition at 145). Plaintiffs then set forth the documents they have obtained which allegedly forms the basis of this "greater particularization."

But none of these documents concern GTI, any GTI member firm, GTI member firm employee, nor even GT-Italy, and Plaintiffs Opposition contains no "greater particularization" as to GTI. This Court should not countenance the type of fishing expedition in which Plaintiffs are seeking to engage as to GTI. That is what the PSLRA was meant to prevent.

## CONCLUSION

For the reasons set forth above, and in GTI's moving memorandum of law, GTI respectfully submits that this action should be dismissed as to GTI with prejudice.

DATED:   New York, New York
         March 4, 2005

                              **STROOCK & STROOCK & LAVAN LLP**

                              By:   /s/ BRIAN M. COGAN
                                    Brian M. Cogan (BC-1876)
                                    James L. Bernard (JB-4273)
                              180 Maiden Lane
                              New York, New York 10038-4982
                              (212) 806-5400

                              *Attorneys for Grant Thornton International*

*Of Counsel:*
Quinlan D. Murphy

-12-