UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

MASTER DOCKET

This document relates to:   04 Civ. 0030

04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Steven J. Toll
> Mark S. Willis
> Julie Goldsmith Reiser
> Joshua S. Devore
> COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
>
> Stuart M. Grant
> John C. Kairis
> Diane Zilka
> James J. Sabella
> GRANT & EISENHOFER, P.A.
>
> *Attorneys for Plaintiffs*
>
> Jeffrey R. Burke
> Michael Burrows
> Serena Boscia Montalbano
> GREENBERG TRAURIG LLP
> *Attorneys for Defendant Maria Martellini*

LEWIS A. KAPLAN, *District Judge.*

Defendant Maria Martellini moves to dismiss the first amended consolidated class action complaint on a variety of grounds including lack of personal jurisdiction and failure to allege fraud with particularity.

*Facts*

Maria Martellini is a citizen and resident of Italy. She is a professor of economics at the Universitá degli Studi de Brescia where she has taught business and economics for nearly 15 years. She is a defendant in this case because she was a minority shareholder representative on the Board of Statutory Auditors ("Statutory Board") of Parmalat's holding company, Parmalat Finanziaria S.p.A. ("Finanziaria") during the period commencing with the Statutory Board's 1999 Half-Year Report and concluding with its 2001 Annual Report.[1] She never was an officer or director of Finanziaria or any of its subsidiaries.

The complaint alleges in substance that reports issued by the Statutory Board during Prof. Martellini's tenure stated that the Board (1) had "verified the adequacy of the administrative/accounting and internal audit systems"[2] as well as "compliance with legal provisions concerning the drawing up and layout of the statutory and consolidated financial statements and the directors' report through direct checks and information received from" Deloitte,[3] (2) had "carried out the checks required by law in accordance with the principles for boards of statutory auditors established by the Italian accounting profession,"[4] (3) was unaware of any atypical or unusual related party or intercompany transactions and that the notes to the financial statements relating to such

---

[1]      First Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Cpt.") ¶ 125.

[2]      *Id.* ¶ 513 (fiscal year 1999 report).

[3]      *Id.* ¶¶ 513 (fiscal year 1999 report), 568 (fiscal year 2000 report).

[4]      *Id.* ¶ 621 (fiscal year 2001 report).

transactions were adequate,[5] (4) had carried out its obligation to supervise the administration of the company and had checked the adequacy of the internal controls and administrative and accounting system,[6] and (5) Parmalat had complied substantially with the Voluntary Code of BestPractice set up by the Italian stock exchange.[7]  Plaintiffs allege that the Board in fact was under the control of company management, that it recklessly failed to oversee the accuracy of Parmalat's financial statements and to see to it that internal controls were working effectively, that it recklessly failed to recognize that Parmalat's web of affiliates and special purpose entities were not accounted for properly,[8] that the Board members and others "individually and collectively were responsible for the . . . preparation and review of [Parmalat's] audited and unaudited financial statements,"[9] that the members of the Board were reckless in not knowing of – or directed or participated in – Parmalat's fraudulent overstatement of assets and earnings and understatement of liabilities,[10] and that they recklessly or deliberately issued false reports.[11]

---

[5]

 *Id.* ¶ 621 (fiscal year 2001 report).

[6]

 *Id.* ¶ 622 (fiscal year 2001 report).

[7]

 *Id.*

[8]

 *Id.* ¶¶ 948-50.

[9]

 *Id.* ¶ 1085.

[10]

 *Id.* ¶¶ 1074-75.

[11]

 *Id.* ¶¶ 1085-86.

Martellini's memorandum ignores many of these allegations, asserting erroneously that "the only allegation is that Prof. Martellini failed in her oversight duties."  Def. Mem. 26.  Such

II

On a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction. The standard applicable to plaintiff's burden depends upon the procedural context in which the jurisdictional challenge is raised.[12] Where, as here, no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction "by pleading in good faith, *see* Fed.R.Civ.P. 11, legally sufficient allegations of jurisdiction."[13]

Section 27 of the Securities Exchange Act of 1934[14] allows the exercise of personal jurisdiction to the limits of the Due Process Clause of the Fifth Amendment.[15] The question whether due process permits an exercise of jurisdiction requires "an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry."[16] The former looks to "whether the defendant has certain minimum contacts [with the forum] . . . such that the maintenance of the suit

---

inaccuracy is regrettable.

[12]

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990).

[13]

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball*, 902 F.2d at 197).

[14]

15 U.S.C. § 78aa.

[15]

*SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 (2d Cir.), *cert. denied*, 423 U.S. 1018 (1975)).

[16]

*Bank Brussels Lambert v. Fidler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir. 2002) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996)).

does not offend traditional notions of fair play and substantial justice."[17]  The latter "asks  . . . whether it is reasonable under the circumstances of the particular case" to assert personal jurisdiction.[18]

A.    *Minimum Contacts*

Under the minimum contacts analysis, contacts with the forum may confer two types of jurisdiction -- specific and general.[19]  Specific jurisdiction exists when a forum "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."[20]  A court's general jurisdiction, on the other hand, "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."[21]

---

[17]

> *Id.* at 127 (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (in turn quoting *Calder v. Jones,* 465 U.S. 783, 788 (1984)) (internal quotation marks omitted).

[18]

> *Id.* at 129 (quoting *Metropolitan Life Ins. Co.,* 84 F.3d at 568 (in turn quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

[19]

> *Metropolitan Life Ins. Co.,* 84 F.3d at 567-68.

[20]

> *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984)).

[21]

> *Metropolitan Life*, 84 F.3d at 568 (citing *Helicopteros*, 466 U.S. at 414-16 & nn. 8-9).
>
> Although the distinction between specific and general jurisdiction originates from a line of cases interpreting the Due Process Clause under the Fourteenth Amendment, the Second Circuit has noted that "the due process analysis is basically the same under both the Fifth and Fourteenth Amendments," the "principal difference [being] that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be

In this case, plaintiffs assert only that the Court has specific jurisdiction, although they make this contention on two grounds. They argue first that Martellini is subject to jurisdiction based on foreseeable reliance by U.S. investors on the Statutory Board reports and Parmalat financial statements. They contend also that her alleged position as a controlling person of Parmalat within the meaning of Exchange Act Section 20(a)[22] subjects her to jurisdiction on that basis alone.

The second of these contentions is readily disposed of. Even assuming that Martellini's status as a member of the Statutory Board afforded a sufficient factual basis for inferring that she was a control person,[23] a proposition of which the Court is skeptical, that status alone would be insufficient to warrant the conclusion that her contacts with the United States satisfied the requirements of due process.[24] Those decisions that have reached the contrary result "impermissibly conflate[] statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair" and that the Due Process Clause is "made of sterner stuff"

---

considered." *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir.), *cert denied*, 525 U.S. 948 (1998) (citing cases); *see also In re Magnetic Audiotape*, 334 F.3d 204, 207-08 (2d Cir. 2003)(using the distinction between specific and general jurisdiction in a due process analysis under the Fifth Amendment).

[22]

15 U.S.C. § 78t(a).

[23]

This Court rejects plaintiffs' contention that a "naked allegation[] of control" is sufficient. Pl. Mem. 22. A different conclusion would be inconsistent with the principle that a motion to dismiss assumes the truth of the well-pleaded factual allegations, but not the legal conclusions asserted in, the complaint. *E.g., Neubauer v. Eva-Health USA, Inc.,* 158 F.R.D. 281, 284-85 (S.D.N.Y. 1994).

[24]

*See, e.g., Monroe v. Bridgestone,* 387 F.3d 468, 483 (6th Cir. 2004); *In re Cinar Corp. Sec. Litig.,* 186 F. Supp.2d 279, 306 n.18 (E.D. N.Y. 2001); *FDIC v. Milken,* 781 F. Supp. 226, 234 (S.D.N.Y. 1991).

than a mere allegation of control.[25]

The question whether Martellini's role, whatever precisely it was,[26] with respect to the reports of the Statutory Board and the Parmalat financial statements involved sufficient contact with the United States to satisfy the minimum contacts branch of the due process analysis is somewhat more troublesome. Parmalat shares were traded actively in the United States.[27] There were many U.S. shareholders.[28] The company conducted note offerings to U.S. investors.[29] The company posted the Board's reports and certain regulatory filings on web sites where they were available to U.S. investors.[30] Plaintiffs therefore argue that it was foreseeable to Martellini that the Board's reports to Parmalat's shareholders and other allegedly misleading documents that she was involved in preparing would have effects in the United States and, accordingly, that the minimum contacts test has been satisfied.[31]

---

[25]

*Monroe,* 387 F.3d at 483.

[26]

Martellini has submitted a declaration that broadly denies many of plaintiffs' factual allegations. As the declaration does not fully negate plaintiffs' allegations (e.g., it does not specifically deny that the Statutory Board members were responsible for preparing Parmalat's financial statements), and as there has been no discovery, the Court declines to rely on the declaration in deciding this motion. *See Ball*, 902 F.2d at 197.

[27]

Cpt. ¶ 59.

[28]

*Id.*

[29]

*Id.* ¶¶ 534, 581, 587.

[30]

*Id.* ¶ 62.

[31]

Pl. Mem. 28.

It long has been recognized that effects in the United States attributable to conduct abroad may be sufficient predicate for the exercise of personal jurisdiction over the actor.[32] But this principle is not without limits. As then Chief Judge Friendly so pithily explained in *Leasco Data Processing Equipment Corp. v. Maxwell*:[33]

> "[T]his is a principle that must be applied with caution, particularly in an international context. [citations omitted] At a minimum the conduct must meet the tests laid down in § 18 of the Restatement (Second) of Foreign Relations Law, including the important requirement that the effect 'occurs as a direct and foreseeable result of the conduct outside the territory.' We believe, moreover, that attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him."[34]

The questions, in other words, are whether Martellini's actions caused effects in the United States, whether those effects were direct and foreseeable results of those actions, and whether she knew or had good reason to know that her conduct would have effects here.

The allegations of the complaint satisfy this test when viewed in purely linguistic terms. It would be reasonable to infer that Martellini, as a member of the Statutory Board, knew that

---

[32]

See, e.g., RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 37 (1971).

[33]

*Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972).

[34]

*Id.* at 1341 (footnote omitted). *Accord Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 1000 (2d Cir. 1975).

Martellini suggests that *Calder v. Jones,* 465 U.S. 783 (1984), raised the bar even higher, implying that it requires that the defendant's action be "'expressly aimed' at the United States and [that] the 'brunt' of the harm [be] suffered" here. Pl. Mem. 25-26. This is too broad a reading of the case. *Calder* held only that these were sufficient conditions for the exercise of personal jurisdiction. It did not suggest that they were necessary conditions. *Id.* at 789-90.

Parmalat securities traded in the United States and that Board reports and other Parmalat materials were posted on company web sites in English, thus suggesting that she knew that U.S. investors would rely upon them. The likelihood that U.S. investors would be injured by the issuance by Parmalat of false and misleading financial statements and Statutory Board reports must have been palpable. Hence, if, as plaintiffs claim, Prof. Martellini knowingly participated in the issuance of false financials and reports, she knew or had good reason to know that her actions would have effects here. But, as Justice Frankfurter once wrote, words can be "empty vessels into which [one] can pour anything he will."[35] It therefore is important to look at how Judge Friendly applied the test he formulated for our Circuit in order better to discern its meaning.

The gist of the claim there was that the late Robert Maxwell caused the plaintiffs to buy stock in Pergamon Press, an English company listed on the London Stock Exchange, at an inflated price.[36] So far as is relevant here, the plaintiffs contended that Maxwell sent them an annual report, certified by Chalmers, Impey & Co., an English accounting firm, that contained false reports of profits.[37] They alleged, among other things, that Chalmers "'knew or had good reason to know' that the allegedly false and misleading financial reports it had prepared 'would be given by the defendants to plaintiffs as prospective purchasers . . . and that plaintiffs would receive them and rely

---

[35]

Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 COLUM. L. REV. 527, 529 (1947).

[36]

*Leasco Data Proc. Equip. Corp.,* 468 F.2d at 1330.

[37]

*Id.* at 1331.

upon them.'"[38]

Following the purchase, the plaintiffs sued Chalmers, among others. Chalmers challenged the exercise of jurisdiction over its person, submitting an affidavit contending that it did not learn of the purchase negotiations until after most of the plaintiffs' purchases had been made, and there was no evidence that the Chalmers-certified financial statements caused any of the few subsequent purchases. Plaintiffs – critically – did not dispute this.[39] They thus "relied simply on the fact that Chalmers must have known that its reports on [the purchased company] would be relied on by anyone interested in buying [its] shares."[40]

The Second Circuit rejected the contention that the minimal contacts test could be satisfied on the basis that it would have been generally foreseeable that a prospective buyer, in the event of a proposed sale of the company, would rely on the financial statements:

> "On that basis accountants operating solely in London could be subjected to personal jurisdiction in any country whose citizen had purchased stock of a company they had audited; the same would be true, of course, of accountants operating solely in the United States. Although such worldwide reliance may be, in a sense, foreseeable, it is not sufficiently so to constitute a basis of personal jurisdiction consonant with due process."[41]

Prof. Martellini seizes upon this language to argue that she may not properly be called upon to defend here because her role was no different in principle than that of Chalmers. To be sure,

---

[38]

    *Id.* at 1342.

[39]

    *Id.*

[40]

    *Id.*

[41]

    *Id.*

there are some similarities. But there are differences as well, and the differences illustrate the boundaries of the *Leasco* test.

The securities of Pergamon, so far as to Circuit's opinion discloses, were traded only on the London Stock Exchange. Hence, while it may have been foreseeable, in a very general sense, to an English accountant that an American might see and rely upon its certification of Pergamon's financial statements to buy shares and consequently suffer an injury in the United States, the overwhelming likelihood was that any effects of a breach of duty by the English accountant would have been felt exclusively or, at least, predominantly in the United Kingdom. It thus becomes clear that *Leasco* requires for the exercise of personal jurisdiction activity in relation to the United States that is "sufficiently extensive and regular to make [the] possibility" of injury here a genuine "risk of the business."[42]

Viewed through this lens, Prof. Martellini's argument appears less substantial. The complaint here alleges that Parmalat securities traded actively in the United States, that Parmalat made note offerings here, and that company documents including Statutory Board reports were posted on company web sites in English. All or much of this presumably was known to Prof. Martellini. In consequence, if plaintiffs can prove their allegations against Prof. Martellini, it would be quite appropriate to conclude that her conduct in relation to the United States satisfied the minimum contacts test.

To be sure, even assuming that the reasonableness test, discussed below, were satisfied, this would not get plaintiffs all the way to their desired destination. As the *Leasco* panel

---

[42] *See id.* at 1342 n.11.

pointed out, personal jurisdiction under the effects test extends only to a "cause of action arising from the[] effects"[43] in the forum state, here the United States. Of the eleven plaintiffs in this case, only two – Laura and Arch Sturaitis – claim to have purchased Parmalat securities in the United States.[44] As the other nine plaintiffs have failed to allege that their causes of action arise from any effects in the United States of Prof. Martellini's actions, their claims against her must be dismissed for lack of personal jurisdiction.

B.      *Reasonableness*

It remains to consider whether the exercise of personal jurisdiction over Prof. Martellini in respect of the Sturaitis claims would be reasonable. This requires analysis of:

> "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."[45]

Moreover, "[w]here a plaintiff makes the threshold showing of the minimum contacts required by the first test, a defendant must present 'a compelling case that the presence of some other

---

[43]      *Id.* at 1341 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 37).

[44]      Cpt. ¶¶ 104-13.

A third claims to be an American citizen and to have purchased Parmalat bonds, but does not claim that he did so, or that he thereby was injured, in the United States. *Id.* ¶ 113.

[45]      *Metropolitan Life Ins. Co.,* 84 F.3d at 568.

considerations would render jurisdiction unreasonable.'"[46]

Prof. Martellini argues that defending this case here would be an unreasonable burden because she lives and works in Italy and does not speak English as a first language. Her memorandum offers, albeit without any supporting evidence, that she is a person of modest means whose presence in the litigation would not materially affect the ability of plaintiffs to obtain any relief to which they may be entitled.

The Court is sympathetic. Nevertheless, Prof. Martellini's concerns fall short of "a compelling case" in view of the countervailing considerations, most notably the interest of the United States in securing relief, if it ultimately is appropriate, for U.S. citizens injured here in consequence of any violations of the federal securities laws by officials of a foreign company that accessed our capital markets. The Court therefore concludes that the exercise of personal jurisdiction over Prof. Martellini in respect of the Sturaitis claims would be reasonable.

III

Having concluded that it has personal jurisdiction over the Sturaitis claims against Prof. Martellini, the Court turns to her attack on the sufficiency of the Section 10(b) claim against her.

As this is a securities fraud case, those aspects of the complaint that allege fraud must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. Among these is the requirement that *scienter* be alleged "either (a) by alleging facts that defendants had both

---

[46]

*Bank Brussels Lambert,* 305 F.3d at 129 (quoting *Metropolitan Life Ins. Co.,* 84 F.3d at 568)).

motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[47]

Plaintiffs argue that the complaint adequately alleges that members of the Statutory Board, including Prof. Martellini, recklessly failed to oversee the accuracy of financial controls and otherwise to serve as a check on improper financial practices.[48] More specifically, they contend that the Board, including Prof. Martellini, (1) failed to investigate claims made by shareholders on April 14, 2003,[49] (2) failed to investigate concerns expressed by CONSOB, the Italian securities regulator, "in 2002 or 2003" concerning the Epicurum Fund,[50] and (3) swept under the rug questions raised by local Deloitte partners concerning a Parmalat Argentine subsidiary.[51] These contentions, however, fail.

To begin with, the complaint alleges that Prof. Martellini's term on the Statutory Board ended with the 2001 Annual Report, which appears to have been issued in April 2002.[52] Thus,

---

[47]

*Acito v. IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995); *see, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); *Ganino*, 228 F.3d at 169-70.

[48]

Pl. Mem. 16.

[49]

*Id.* at 6, 16, 18.

[50]

*Id.* at 6, 18.

[51]

*Id.* at 6, 16.

[52]

Cpt. ¶¶ 125, 621.

The complaint alleges that it was April 12, 2001. *Id.* ¶ 621. This almost certainly reflects a typographical error. The 2001 Annual Report doubtless was issued in 2002. The context in which the April 12, 2001 date appears supports that conclusion. *See id.* ¶¶ 621-23. Parenthetically, Prof. Martellini's declaration states that her term ended in 2002 and that

there is no basis for supposing that Prof. Martellini had anything to do with shareholder complaints in 2003.

The assertion relating to the CONSOB concerns is equally specious. Plaintiffs' memorandum says that the Statutory Board "in 2002 or 2003" ignored an "obvious red flag" raised by a CONSOB inquiry relating to allegedly suspicious transactions involving the Epicurum fund.[53] The complaint, however, alleges that Epicurum was incorporated in September 2002[54] and, contrary to the statement in plaintiffs' memorandum, does not date the CONSOB inquiry.[55] Given the fact that the complaint alleges that Prof. Martellini left the Statutory Board months before Epicurum even was incorporated, there is simply nothing here to support an allegation of recklessness or worse on her part.

Finally, plaintiffs' argument concerning the concerns raised by Deloitte with respect to the Argentine subsidiary takes liberties with the record. Their memorandum states:

"Additionally, during Martellini's tenure on the Board of Statutory Auditors in 2000, local Deloitte partners raised questions about the accounting of Parmalat's Argentinian operations, but when they requested certain information, Tonna angrily revoked Deloitte's auditing contract in Argentina. Mamoli, the Deloitte partner in Italy, met with Tonna *and with Parmalat's Board of Statutory Auditors – which at the time, included Martellini.* The issues raised by the local Deloitte auditor in Argentina were never addressed, and Martellini and the Statutory Auditors swept

---

she did not serve a second term. Martellini Decl. ¶ 19. The complaint alleges that the election for the succeeding term occurred at the April 30, 2002 shareholders meeting. Cpt. ¶ 623.

[53]  Pl. Mem. 6.

[54]  Cpt. ¶ 356.

[55]  *Id.* ¶¶ 363, 994.

them under the rug.  ¶¶ 1033-39."[56]

In fact, the complaint tells a somewhat different story.

According to the complaint, problems arose between Deloitte's regional auditor in Argentina and Deloitte's Italian office and Parmalat.[57]  Following a request for information from unspecified Deloitte partners, Tonna revoked Deloitte's Argentine contract.[58]  Mamoli, the engagement partner at Deloitte Italy,  then expressed the hope that Deloitte Argentina and Deloitte Italy would be more cooperative to avoid offending Parmalat.[59]  Esteban, evidently the Argentine partner, nevertheless reaffirmed his position.[60]  The complaint then states that "[a]fter a meeting with Tonna and Parmalat's Board of Statutory Auditors, but without addressing the issues Esteban had raised . . . ,  Mamoli informed Esteban that the Argentina issue had been resolved . . . ."[61]

The important point to note here is that the plaintiffs' memorandum – by stating that the Statutory Board swept the issue under the rug – implies that the Board knew of the concerns raised by Esteban and Deloitte Argentina.  But the complaint says no such thing.  It says only that Mamoli, after a meeting with the Board that is not described in any respect, announced to Esteban

---

[56]    Pl. Mem. 16 (emphasis in original).

[57]    Cpt. ¶ 1035.

[58]    *Id.* ¶ 1036.

[59]    *Id.* ¶ 1037.

[60]    *Id.* ¶ 1038.

[61]    *Id.* ¶ 1039.

that the issue had been resolved. It does not allege that the facts ever came to the attention of the Board.

Finally, plaintiffs contend that *scienter* may be inferred from the fact that Prof. Martellini failed to review or check information that she had a duty to monitor and had access to information suggesting the Statutory Board's public statements were inaccurate.[62] Although plaintiffs here quote from the Second Circuit's opinion in *Novak v. Kasaks*,[63] they do not address the court's explanation there that such allegations would be sufficient where the plaintiffs alleged that the defendant ignored specific instances of obvious fraud or suspicious behavior, or, in the case of access to contrary information, where the plaintiff identified the reports supposedly containing the contrary information.[64] Plaintiffs make no such specific allegations here. In consequence, there is no permissible basis for concluding that the members of the Board acted recklessly.

*Conclusion*

For the foregoing reasons, defendant Martellini's motion to dismiss the complaint as against her [04 MD 1653, docket item 135] is granted. The dismissal of the claims of plaintiffs other than Laura and Arch Sturaitis is for lack of personal jurisdiction. The dismissal of the claims of Laura and Arch Sturaitis is for failure to allege fraud with the particularity required by Fed. R. Civ. P. 9(b) and the PSLRA.

---

[62] Pl. Mem. 17.

[63] 216 F.3d 300, 308 (2d Cir. 2000).

[64] *Id.* at 308-09.

As it is not clear that plaintiffs are incapable of sufficiently alleging fraud, the dismissal of the claims of Laura and Arch Sturaitis is without prejudice to the service and filing, on or before August 8, 2005, of an amended complaint remedying the deficiencies addressed in this opinion.

SO ORDERED.

Dated: July 12, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)