UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re PARMALAT SECURITIES LITIGATION

This document relates to:   All Cases
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER DOCKET
04 MD 1653 (LAK)

## MEMORANDUM OPINION

Appearances:

Steven J. Toll
Lisa M. Mezzetti
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.

Stuart M. Grant
James J. Sabella
John C. Kairis
Diane Zilka
GRANT & EISENHOFER, P.A.

*Attorneys for Class Lead Plaintiffs*


John B. Quinn
Peter E. Calamari
Loren Kieve
R. Brian Timmons
Terry L. Wit
QUINN EMANUEL URQUHART
OLIVER & HEDGES LLP
*Attorneys for Plaintiff Dr. Enrico
Bondi*

Leo R. Beus
Stephen M. Craig
Scot C. Stirling
Adam C. Anderson
BEUS GILBERT PLLC
*Attorneys for Plaintiffs Gerald K.
Smith as the Litigation Trustee of the
Farmland Dairies LLC Litigation
Trust and G. Peter Pappas as the
Plan Administrator of the Plan of
Liquidation of Parmalat-USA
Corporation*


Michael J. Dell
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
*Attorneys for Defendant Deloitte
Touche Tohmatsu*

2

LEWIS A. KAPLAN, *District Judge.*

In the wake of the collapse of Parmalat, the Office of the Public Prosecutor of the Court of Milan retained Dr. Stefania Chiaruttini, a private consultant, as a technical consultant in connection with criminal proceedings in Italy. Defendant Deloitte Touche Tohmatsu ("DTT") moves *in limine* for an order excluding from evidence for any purpose (a) the reports and slides prepared by Dr. Chiaruttini to assist the Public Prosecutor, and (b) the opinion testimony she gave at her deposition in this matter.[1] Dr. Enrico Bondi, the Extraordinary Commissioner of Parmalat, as well as certain of the plaintiffs, resist the motion.

*Facts*

Dr. Chiaruttini is a *consulente tecnico* (or *consulente tecnico di parte*), translated properly as technical consultant or party-retained technical consultant,[2] who provides assistance to litigants in Italian proceedings.[3]

The role of a technical consultant in the Italian system is to assist a party's counsel in arguing its case to the court. The reports and opinions of such a consultant are considered equivalent to the argument of counsel.[4] While a technical consultant is obliged to be truthful in referring to material facts, he or she is free to be guided by the interests of the client in giving

---

[1] It seeks also alternative relief relating to discovery.

[2] Amodio Decl. ¶¶ 2, 4.

[3] Chiaruttini Dep. 503-04.

[4] Amodio Decl. ¶ 5.

opinions.[5]

According to her report, Dr. Chiaruttini was engaged by the Office of the Public Prosecutor to act as technical consultant to it in a criminal proceeding arising out of the Parmalat scandal and specifically to answer two questions:

> "1)  whether Deloitte & Touche S.p.A. ["Deloitte-Italy"], in the performance of its assignment with regard to the certification of the company and consolidated financial statements of PARMALAT FINANZIARIA S.p.A. for the fiscal years 1999/2002, correctly applied the established principles of auditing and the current provisions issued by the CONSOB;[6]
>
> "2)  whether, in the event that it failed to apply the established principles and the provisions referred to above, Deloitte & Touche S.p.A. issued false certificates with regard to the accounts of the company and, in particular, omitted to indicate the information necessary to understand the real proprietary, economic and financial situation of the company that was the subject of the audit."[7]

In the course of her work, Dr. Chiaruttini examined certain Deloitte-Italy work papers as well as certain papers of Parmalat Group companies seized by the Milan Public Prosecutor, various Parmalat documents provided by Dr. Bondi, interrogations of five Parmalat insiders, certain Parmalat accounting records, and a report by PricewaterhouseCoopers.[8] She met with the Public

---

[5] *Id.* ¶ 6.

[6] The CONSOB is roughly the Italian equivalent of the U.S. Securities and Exchange Commission.

[7] Dell Decl. Ex. 13 (the "Report") at 1.

[8] *Id.* at 2-3.

4

Prosecutor, often on a daily basis,[9] and was retained also by Dr. Bondi.[10]  Notably, she never spoke to any witnesses from DT-Italy or any other Deloitte firm, never sought their version of events, and admittedly was constrained by her inability to review many pertinent documents, including the work papers and related files of DTT member firms that audited financial statements of Parmalat subsidiaries.[11]

Dr. Chiaruttini rendered an extensive report to the Public Prosecutor, which is 130 pages long in translation.  In the course of explicating the basis for Dr. Chiaruttini's opinions with respect to the two questions posed by the Public Prosecutor, the report sets forth an extensive narrative account concerning the Parmalat scandal and the activities of DT-Italy.  As Dr. Chiaruttini has no personal knowledge concerning any of these events, this entire narrative was assembled on the basis of the materials Dr. Chiaruttini reviewed and, it appears, things she was told by others.[12]

In March 2006, Dr. Chiaruttini summarized her conclusions in testimony in a criminal trial in the Court of Milan, using slides she had prepared.[13]

Subsequently, Class Plaintiffs noticed Dr. Chiaruttini's deposition.  In response to an inquiry from DTT's counsel, class Lead Counsel represented that she was being offered as a fact

---

[9] Chiaruttini Dep. 702-03.

[10] Bondi Dep. 882-83; Chiaruttini Decl. ¶ 8.

[11] *E.g.*, Chiaruttini Dep. 552, 639-41.

[12] *Id.* 413-14; Bondi Dep. 883.

[13] Chiaruttini Dep. 906.

5

witness.[14] Nevertheless, plaintiffs elicited a great deal of opinion testimony during the examination. Dr. Chiaruttini, however, declined to sign the protective order in this case, thus preventing her from being cross-examined with documents that have been designated confidential.[15]

*Discussion*

A.   *Rule 26(b)(4)*

DTT argues that it was "back doored" in that plaintiffs made no Rule 26(b)(4) disclosures and told DTT that Dr. Chiaruttini was purely a fact witness, whereas the deposition revealed that she has no personal knowledge of anything and quite plainly is to be called, if at all, as an expert witness.

Plaintiffs' behavior in relation to this deposition raises some concerns given the nature of the testimony they elicited. But I need not come to any conclusion on that point now.

The deadline for exchanging expert reports, and thus for identifying expert witnesses, has not yet expired.[16] If plaintiffs in fact designate Dr. Chiaruttini as an expert witness, DTT will receive the Rule 26(b)(4) disclosures and have a further opportunity to depose her.

---

14
    Dell Decl. Ex. 8.

15
    Dell Decl. Ex. 10; Chiaruttini Dep. 431-32.

16
    The date is April 3, 2007. This is determined by the fact that the Court on October 10, 2006 approved an extension until February 22, 2007 (04 MD 1653, docket item 805) and then, on November 21, 2006 (docket item 911; docket item 968 (tr. 11/21/06 at 18)), extended all deadlines by 40 days to facilitate settlement discussions.

B.   *The Report and the Public Records Exception*

Class Plaintiffs, but not Dr. Bondi, contend that Dr. Chiaruttini's report is admissible under the public records exception to the hearsay rule, specifically FED. R. EVID. 803(8)(C), which provides an exception for:

> "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

As an initial matter, Rule 803(8) is available to reports of foreign public offices and agencies that otherwise come within its terms.[17] I assume – despite the linguistic awkwardness and without deciding – that Dr. Chiaruttini was a public office or agency within the meaning of the Rule.[18] Moreover, although the Report contains an abundance of opinions as distinguished from factual findings, that fact alone does not warrant its exclusion.[19] In consequence, I pass to the question whether DTT has shown that it nevertheless falls outside the Rule on the ground of reliability.

As the Second Circuit has written:

> "When evaluating the trustworthiness of a factual report, we look to (a) the timeliness of the investigation, (b) the special skills or experience of the official, (c)

---

[17] *E.g., FAA v. Landy*, 705 F.2d 624, 633 (2d Cir. 1983) (FED. R. EVID. 803(8) applies to foreign documents); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (same).

[18] It is interesting to note that FED. R. EVID. 803(8) uses the phrase "public offices or agencies," which implies that it speaks to statements by government bodies or institutions, in contrast to, for example, its New York statutory counterpart, N.Y. C.P.L.R. 4520, which applies to a certificate or affidavit of a "public officer."

[19] *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).

7

whether a hearing was held and the level at which it was conducted, and (d) possible motivation problems."[20]

To this may be added the finality of the findings[21] and, in light of the Supreme Court's emphasis on the fact that the foregoing list is non-exclusive,[22] anything else that bears on the reliability of the proffered evidence.

In this case, a number of factors suggest that the Report is not reliable.

As an initial matter, Dr. Chiaruttini has been paid € 700,000 by the Public Prosecutor to date to assist him in making the criminal case in Milan and has been retained also by Dr. Bondi, a plaintiff in a number of these actions. She performed all of her work not merely "with a view to possible litigation,"[23] but for the express purpose of assisting the prosecutor in making his case. Even assuming that she is a public official for purposes of the rule, her role here is not that of a disinterested public servant. She is a paid advocate whose findings and views were created for the purpose of litigation.[24] Indeed, beyond this case, her livelihood depends upon a steady stream of

---

[20] *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (citing FED. R. EVID. 803(8)(C) advisory committee note).

[21] *Gentile v. County of Suffolk*, 129 F.R.D. 435, 450 (E.D.N.Y. 1990) (Weinstein, J.), *aff'd*, 926 F.2d 142 (2d Cir. 1991).

[22] *Beech Aircraft Corp.*, 488 U.S. at 167 n.11.

[23] *Beech Aircraft Corp.*, 488 U.S. at 167 n.11.

[24] The relevance of this fact to the reliability judgment is supported by circuit cases attaching significance, in determining the reliability of expert opinions, to whether the opinion was formed for purposes of the litigation. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 408 (6th Cir. 2006); *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 687 (8th Cir. 2001); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

engagements as a technical consultant by prosecutors and defense counsel.[25]

This of course is not to question Dr. Chiaruttini's integrity. Paid advocates and party-retained expert witnesses play an important and usually honorable role in litigation. But it is one thing to have party-retained advocates and witnesses argue and testify in court, where their inherently biased[26] arguments and assertions are put to the test of the adversary process in front of the trier of fact. It is quite another to receive into evidence their out-of-court statements, which are not subject to cross-examination. That would be at odds with the rationale underlying the public records exception, which rests in important measure on the "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports."[27]

Second, Dr. Chiaruttini operated under substantial informational constraints. In performing her functions, she relied almost entirely on documents seized by the Public Prosecutor and on the interrogations of a handful of former Parmalat insiders, all of whom have motives to minimize their own culpability and to shift responsibility to others. She made no effort to interview DTT or any other Deloitte personnel, either in Italy or located elsewhere, and she did not review the work papers of Deloitte affiliates that participated in Parmalat audits in other countries. In short, she did not hear both sides of the story, a fact that renders any findings and conclusions that she did reach unreliable.

---

[25] Chiaruttini Decl. ¶ 5.

[26] They are, of course, hired to be biased. I emphasize that I do not here use the term in a pejorative sense.

[27] *Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986).

9

Third, as the Second Circuit has said, "before the court can presume trustworthiness [for purposes of Rule 803(8)(C)], it must determine that the report contains factual findings based on a factual investigation."[28]  To be sure, Dr. Chiaruttini conducted a factual investigation.  But it cannot be that any investigation at all, no matter how one-sided or superficial, necessarily suffices.  Rather, the question is whether the Court is convinced that the Report lacks reliability.  The extent and quality of the investigation upon which it is based necessarily is an appropriate consideration in reaching that judgment.

Finally, while I understand Dr. Chiaruttini's reluctance, given her responsibilities to the Public Prosecutor, to sign the protective order, the refusal nonetheless is pertinent to a determination of reliability.  Her position, whatever its genesis, has undermined the ability of DTT to challenge her conclusions.

In sum, DTT has persuaded me that the Report itself is not admissible under the Rule 803(8)(C) hearsay exception because the circumstances of its preparation indicate a lack of reliability.  This of course, I hasten to add, does not address the question whether and to what extent testimony by Dr. Chiaruttini would be admissible, to aspects of which I now turn.

C.   *Lay Opinion*

Class Plaintiffs, but not Dr. Bondi, argue that they may offer testimony by Dr. Chiaruttini as lay opinion under Rule 701.  As they have not indicated what testimony they propose to offer on this basis, an *in limine* ruling on the point would be premature.

---

[28] *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998).

10

D.   *Unretained Expert*

Plaintiff Gerald K. Smith, the litigation trustee of the Farmland Dairies LLC Litigation Trust, joined only by plaintiff G. Peter Pappas, the plan administrator of the plan of liquidation of Parmalat-USA Corp., argues that Dr. Chiaruttini could be called as an unretained expert, in which case she would not be subject to Rule 26(b)(4), but that the issue is premature because no one has indicated an intention to call her on that basis. I agree with the latter point. As there is some need for guidance in preparing this matter for dispositive motions and trial, however, I will say that any party intending to proceed on the basis suggested by Mr. Smith might be better advised to retain its own qualified expert.

*Conclusion*

For the foregoing reasons, DTT's motion to preclude [04 MD 1653, docket item 1114; 04 Civ. 0030, docket item 760] is granted to the extent that plaintiffs in all cases are precluded from offering Dr. Chiaruttini's report under FED. R. EVID. 803(8)(C) and denied without prejudice in all other respects. The Clerk shall ensure that DTT's motion, if it was docketed in any of the related cases, is terminated in all cases.

SO ORDERED.

Dated:   March 12, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)