UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

PARMALAT SECURITIES LITIGATION

| | | |
|---|---|---|
| This document applies to: | 04 Civ. 0030 | 04 MD 1653 (LAK) |
| | 04 Civ. 9771 | |
| | 05 Civ. 4015 | |
| | 06 Civ. 0383 | |
| | 06 Civ. 3109 | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

On March 20 and 22, 2007, plaintiff Dr. Enrico Bondi, Extraordinary Commissioner of Parmalat, moved *in limine* for determinations that reports of (1) Oliver Galea and Roberto Megna for the Public Prosecutor of the Court of Parma, Italy, and (2) PricewaterhouseCoopers S.p.A. ("PwC") for the Parmalat Extraordinary Administration are admissible over hearsay objection under FED. R. EVID. 803(8)(C). Plaintiffs in certain related cases have joined in the motions.

I recently rejected Dr. Bondi's contention that the report of Dr. Stefania Chiaruttini, a technical consultant engaged by the Public Prosecutor of the Court of Milan, was admissible over hearsay objection under FED. R. EVID. 803(8)(C). I noted the controlling Second Circuit and Supreme Court authorities. *In re Parmalat Secur. Litig.*, __ F. Supp. 2d ___, 2007 WL 755270, at *3 (S.D.N.Y. Mar. 12, 2007). And I found that the report was inadmissible because (1) Dr. Chiaruttini was a paid advocate whose findings and views were created for the purpose of litigation, (2) she operated under substantial informational constraints, (3) I was not persuaded that her factual findings were based on a sufficiently broad and unbiased factual investigation, particularly in light of her exclusive reliance upon documents handed to her by the prosecutor, and (4) her refusal to sign the protective order in this case constrained defendants' ability to cross-examine her and challenge her conclusions.[1] *Id.* at *3-4.

*The Galea-Megna Report*

---

[1] I assumed, without deciding, that Dr. Chiaruttini was a public office or agency within the meaning of the rule.

Messrs. Galea and Megna were partners of PwC and were retained by the Public Prosecutor of Parma to reconstruct the financial statements of the Parmalat group.  In so doing, they relied upon documents and information made available to them by the prosecutors, including Deloitte-Italy and GT-Italy workpapers seized by Italian law enforcement officers.   They did not contact Deloitte-Italy or GT-Italy or their overseas affiliates, although they claim to have relied upon information provided to them by Italian police regarding Deloitte-Italy.   While they claim that their report contains no matters of opinion, they applied established auditing principles which, of course, involve matters of judgment, characterization and opinion.  They have been paid €200,000 for their work and are seeking an additional payment of approximately €1.6 million.

While there perhaps are some minor differences between the circumstances of Dr. Chiaruttini's work and those of Messrs. Galea and Megna, they are not persuasive.  All are paid advocates whose work was done for the purpose of litigation.  All operated under similar informational constraints.  I am not persuaded that their work was based on sufficiently broad and unbiased factual investigations, particularly in light of their exclusive reliance upon documents and information handed to them by the prosecutors.  All refused to sign the protective order, thus handicapping defendants' ability to cross-examine at deposition.

*The PwC Report*

PwC was engaged by Dr. Bondi, a plaintiff here, to perform various services in connection with the extraordinary administration, services for which it has been paid something in the neighborhood of €25-30 million.  Unlike Dr. Chiaruttini and Messrs. Galea and Megna, it did not act as technical consultant to Italian prosecutors.[2]  Also unlike Messrs. Galea and Megna, it is in the direct employ of a plaintiff in these actions.

While there are minor differences in the extent of the work done, the critical factors are similar.  PwC, like the others, is a paid advocate.  While Dr. Bondi claims that it did its work free of any preconceived notions or bias, an engagement in which one is paid €25 to €30 million involves a very substantial motive to please the client.  To paraphrase the late Senator Everett Dirksen, "a million here, a million there.  Pretty soon it adds up to real money."  PwC did not review Deloitte or GT workpapers - notably, because Dr. Bondi did not tell it to do so.    It too refused to sign the protective order.

*Conclusion*

---

[2] This makes the contention that PwC is a public office or agency within the meaning of FED. R. EVID. 803(8)(C) even weaker than in the cases of Dr. Chiaruttini and Messrs. Galea and Megna.  I need not rest on that however.

3

The Court is entirely persuaded that these reports are not admissible under Rule 803(8)(C).

Dr. Bondi's plea that the Court's concerns go to weight rather than admissibility is meritless and, moreover, fails to take into account the practical realities of trying these cases. The cases are complex. The risk of placing before a trier of fact reports that cannot be cross-examined and then leaving it to the defendants to attempt to pick them apart by other means is unacceptable. Moreover, it is not too much to ask that Dr. Bondi – who has spent tens of millions of Euros on these endeavors – and the other plaintiffs spend a bit more to have the authors of these documents testify in person and be subject to cross-examination.

Nor is Dr. Bondi's claim that this issue should be deferred to the transferee courts persuasive, assuming that his actions are retransferred for trial. The determination of issues that are common to a panoply of individual cases presenting common issues is among the reasons for the existence of coordinated and consolidated pretrial proceedings under 28 U.S.C. § 1407. It enables a single judge, who often is steeped in the intricacies of complex litigation, to bring that knowledge to bear and avoids inconsistent results in trial courts.

The motions *in limine* [04 MD 1653, docket items 1218, 1223] are denied in all respects. The Clerk is directed to terminate these motions on each of the other dockets on which they were entered [04 Civ. 9771, docket items 507, 510; 05 Civ. 4015, docket items 293, 297].

SO ORDERED.

Dated: April 17, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)