UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

MASTER DOCKET

This document relates to: 04 Civ. 0030                              04 MD 1653 (LAK)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


Appearances:


Stuart M. Grant                                  Marcia L. Goldstein
James J. Sabella                                 Irwin H. Warren
John C. Kairis                                   Howard B. Comet
Diane Zilka                                      WEIL, GOTSHAL & MANGES LLP
GRANT & EISENHOFER P.A.                          *Attorneys for Defendant Parmalat S.p.A.*


Steven J. Toll
Lisa M. Mezzetti                                 John B. Quinn
Mark S. Willis                                   Peter E. Calamari
Julie Goldsmith Reiser                           Loren Kieve
Joshua S. Devore                                 Gerald E. Hawxhurst
COHEN, MILSTEIN, HAUSFELD & TOLL,                QUINN EMANUEL URQUHART OLIVER &
P.L.L.C.                                         HEDGES, LLP
                                                 *Attorneys for Defendant Parmalat S.p.A.*
                                                 *and Dr. Enrico Bondi*
Robert M. Roseman
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
SPECTOR ROSEMAN & KODROFF, P.C.


*Attorneys for Class Lead Plaintiffs*

Lᴇᴡɪꜱ A. Kᴀᴘʟᴀɴ, *District Judge.*

      Parmalat Finanziaria S.p.A., Parmalat S.p.A., and several affiliated entities (collectively, "Old Parmalat" or the "Foreign Debtors") filed for bankruptcy in Italy in late 2003 following an historic collapse allegedly caused by a lengthy and complex fraud. As a result of the bankruptcy proceedings and a reorganization plan approved by a majority of creditors, a new entity was created to assume certain of the Foreign Debtors' assets and liabilities and act as a vehicle for the discharge of claims by unsecured creditors. That new entity, Parmalat S.p.A., referred to herein as "New Parmalat" to distinguish it from the Foreign Debtor of the same name, is sued on claims relating to the alleged fraud. It moves to dismiss the claims against it in the third amended consolidated class action complaint (the "TAC").[1] Dr. Enrico Bondi, the foreign representative of Old Parmalat's estate, moves for an order modifying a preliminary injunction, currently in effect pursuant to Section 304 of the Bankruptcy Code (the "Code"),[2] to prevent plaintiffs from suing New Parmalat in the United States.

*Facts*

      Familiarity with the Court's prior opinions in this and related matters is assumed.[3]

---

[1]    Docket item 672. All references to the docket refer to 04 MD 1653 unless otherwise noted.

[2]    11 U.S.C. § 101 *et seq.*

[3]    *E.g.*, *In re Parmalat Secs. Litig.*, 472 F. Supp. 2d 582 (S.D.N.Y. 2007); *In re Parmalat Secs. Litig.*, 414 F. Supp. 2d 428 (S.D.N.Y. 2006); *In re Parmalat Secs. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005); *In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005); *In re Parmalat Secs. Litig.*, 320 B.R. 46 (S.D.N.Y. 2005); *see also In re Parmalat Secs. Litig.*, 05 Civ. 4015, Tr., Mar. 29, 2006 (docket item 100) (bench opinion).

3

Those opinions capture the gist of plaintiffs' allegations of securities fraud and provide sufficient background for present purposes regarding the collapse of Old Parmalat and the various lawsuits that followed. Some words are necessary, however, concerning the bankruptcy proceedings both here and in Italy and the formation of New Parmalat.

## I.     Proceedings in Italy

Old Parmalat filed for bankruptcy in Parma, Italy, after the collapse in December 2003. In direct response, the Italian Ministry of Productive Activities issued an emergency decree on December 23, which later was ratified by the Italian Parliament, called the Marzano Law. The law amended and supplemented certain provisions of Italian bankruptcy law as applicable to large companies with substantial debt. Among other things, the Marzano Law granted new powers to the Extraordinary Administrator of a bankrupt estate – a position analogous to that of a trustee in U.S. bankruptcy proceedings – to propose a plan for restructuring rather than simply liquidating a bankrupt entity.[4]

The Parma bankruptcy court (the "Parma Court") declared the Foreign Debtors insolvent and eligible for Extraordinary Administration Proceedings. It issued a stay, as authorized by Italian law, enjoining all creditor actions. The Italian government appointed Dr. Bondi as Extraordinary Administrator.[5]

---

[4]     Zavattarelli Decl. (docket item 520) ¶¶ 4-5.

[5]     *Id.* ¶ 6-8.

4

II.     *Proceedings in the United States*

On January 5, 2004, investors in Old Parmalat filed actions in the United States alleging violations of the federal securities laws by various of Old Parmalat's officers, directors, auditors, and others.[6] These were consolidated before the Court into one purported class action (the "Securities Fraud Action"). Plaintiffs subsequently filed two amended consolidated class action complaints.[7]

Dr. Bondi meanwhile filed three lawsuits in the United States against certain banks and accounting firms, alleging fraud on Old Parmalat and its investors. Two were transferred to this Court from district courts in Illinois and North Carolina (the "Recovery Actions"). The third was filed in New Jersey state court, removed, and remanded.

In June 2004, Dr. Bondi commenced also an ancillary proceeding in the bankruptcy court for this district, seeking to bar U.S. actions against the Foreign Debtors pursuant to Section 304 of the Bankruptcy Code.[8] Judge Drain on July 2, 2004 granted a preliminary injunction (the "Section 304 Order").[9]

Certain defendants in the Recovery Actions and the Securities Fraud Action, concerned that the Section 304 Order would prevent them from defending themselves adequately, moved for withdrawal of the reference of the ancillary proceeding in the bankruptcy court. The

---

[6]     04 Civ. 0030, docket item 1.

[7]     04 Civ. 0030, docket items 22, 325.

[8]     11 U.S.C. § 304.

[9]     Docket item 519, Ex. C. (preliminary injunction order).

5

motion was granted "to the extent that the reference [was] withdrawn with respect to, and this Court will exercise exclusive jurisdiction over, whether to grant, vacate, modify, make permanent or otherwise continue, construe and enforce [the Section 304 Order] to the extent that such order affects the Securities Fraud Action or any Recovery Action pending in a federal court."[10] The Court modified the Section 304 Order to permit discovery against the Foreign Debtors.[11] It granted also subsequent motions to modify the Section 304 Order to permit the assertion of compulsory counterclaims in the Recovery Actions[12] and a third-party complaint by Grant Thornton International ("GTI") in the Securities Fraud Action.[13]

### III.   New Parmalat and the Concordato

Pursuant to the Marzano Law, Dr. Bondi in July 2004 proposed a restructuring plan that called for the formation of a "Concordato," or "composition with (and agreement among) creditors,"[14] the purpose of which was to enable the continued operations of certain Foreign Debtors while at the same time creating a "'vehicle' that could be used to discharge the claims of unsecured

---

[10] *Parmalat*, 320 B.R. at 52.

[11] *Id.*

[12] 05 Civ. 4015, Tr., Mar. 29, 2006 (docket item 100) (bench opinion); *Parmalat*, 472 F. Supp. 2d 582.

[13] *Parmalat*, 472 F. Supp. 2d 582; *see* 04 Civ. 0030, docket item 828 (third-party complaint).

[14] Zavattarelli Decl. (docket item 520) ¶ 5, 13.

creditors once their claims have been validated."[15] A majority of creditors voted in favor of the Concordato and, on October 1, 2005, the Parma Court approved it, making it effective.[16]

Upon the approval of the Concordato, New Parmalat was created and succeeded to the assets of sixteen of the Foreign Debtors.[17] It assumed also "[a]ll debts" of those entities, including the obligation to discharge approved creditor claims by allocating to each eligible creditor an amount of New Parmalat stock determined in accordance with certain "recovery ratios."[18] The allocation of New Parmalat shares is the only means by which a creditor's claim against Old Parmalat may be satisfied.[19] New Parmalat thus functions essentially as a claims administrator, converting approved claims against Old Parmalat into new equity interests in New Parmalat.

Creditors entitled to receive stock include those whose claims were submitted prior to the approval of the Concordato and approved by the Parma Court as part of a list of liabilities compiled for purposes of the reorganization. Such creditors typically include those whose claims

---

[15]

   *Id.* Ex. B [hereinafter, "Concordato"] ¶ 1.1.

[16]

   *Id.* ¶ 13.

   Although an appeal by certain creditors is pending, the decree "has taken effect" and the Concordato now "governs the rights of all creditors of Old Parmalat." *Id.* ¶ 14.

[17]

   Concordato ¶ 5.1(b).

   The Concordato states that the remaining Foreign Debtors were not included because they were "not strategic or useful for the achievement of the [Concordato's] objectives." The excluded companies "will be the subject of alternative solutions, which will have no impact on the proposed Composition of Creditors." *Id.* ¶¶ 2.1, 2.2.

[18]

   *Id.* ¶¶ 5.3, 6.3.

[19]

   *Id.* ¶ 7.4.

7

were included in Old Parmalat's pre-insolvency financial statements and accounting books, such as suppliers.[20] Other creditors entitled to receive New Parmalat stock under the Concordato include "eligible unsecured creditors with a title and/or cause that predates the date when individual [Foreign Debtors] were declared eligible for Extraordinary Administration Proceedings . . . whose claims were not included in the sum of liabilities but whose claims [are] later verified by a court decision that has become final and, therefore, can no longer be challenged ('Late-Filing Creditors')."[21]

Certain plaintiffs in the Securities Fraud Action already have sought to convert claims against Old Parmalat into New Parmalat shares. Plaintiffs Cattolica Partecipazioni, S.p.A. ("Cattolica"), Capital & Finance Asset Management S.A. ("CFAM"), and Margery Louise Kronengold (collectively, the "Bondholders") submitted pre-insolvency claims in the Parma Court and received New Parmalat shares and warrants as Late-Filing Creditors.[22] Plaintiffs Hermes Focus Asset Management Europe, Ltd., and Hermes European Focus Funds I, II, and III (collectively, "Hermes") filed proofs of claim in the Parma Court prior to the approval of the Concordato to be

---

[20]

      *See* Zavattarelli Decl. (docket item 906) ¶¶ 26, 35.

[21]

      Concordato ¶ 7.3(b).

[22]

      *See* Hawxhurst Decl. (docket item 774) Exs. D (Cattolica's "Proof of Debt" filed in Parma Court), E (letter confirming award of New Parmalat shares and warrants to Cattolica ), F (Azzollini Depo.) (Cattolica converted Old Parmalat bonds into New Parmalat shares), G (proof of claim submitted by Cattolica to Parma Court), H (Vandenkerchove Depo.) (CFAM's Old Parmalat bonds converted into New Parmalat shares), I (proofs of claims submitted by CFAM to Parma Court), J (Kronengold's "Proof of Debt" filed in Parma Court), K (letter confirming award of New Parmalat shares and warrants to Kronengold), L (Kronengold Depo.) (Kronengold's Old Parmalat bonds converted into New Parmalat stock), M (proof of claim submitted by Kronengold to Parma Court).

8

included on the initial list of liabilities.[23] The Parma Court held that those claims would not be included on the list, as it concluded that they should have been brought against Old Parmalat's employees and auditors, not the company itself.[24] Hermes appealed that decision in Italy.[25]

*IV.*    *The Third Amended Complaint*

On June 1, 2006, plaintiffs sought leave to amend the consolidated class action complaint in the Securities Fraud Action to add claims against New Parmalat.[26] The Court granted the motion on July 21,[27] and plaintiffs filed the TAC on July 26.[28]

Counts One and Two of the TAC allege violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act")[29] and Rule 10b-5 thereunder.[30] In particular, Count

---

[23] 
   *See* Zavattarelli Decl. (docket item 520) Ex. G (claims submitted to Parma Court).

[24] 
   *See id.* Ex. I (Parma Court decisions).

[25] 
   *See id.* Ex. K (appellate documents).

[26] 
   Docket item 517.

   In arguing the motion to amend, the parties briefed several of the issues raised here. The parties incorporate by reference many of their earlier arguments into their memoranda concerning the present motions. To the extent they are relevant, the Court considers those arguments herein.

[27] 
   Docket item 589.

[28] 
   Docket item 672.

[29] 
   15 U.S.C. § 78j(b).

[30] 
   17 C.F.R. § 240.10b-5.

9

One alleges that Old Parmalat's officers, directors, and auditors, in violation of Rule 10b-5(a) and (c), used fraudulent accounting, invoicing, and other business methods to "boost Parmalat's reported assets and earnings and reduce its liabilities," thus inducing plaintiffs to purchase securities at inflated prices.[31] Count Two alleges that the same defendants, in violation of Rule 10b-5(b), fraudulently induced plaintiffs to purchase securities by misstating the company's financial status in financial statements and other reports.[32] The TAC does not allege any conduct post-dating the approval of the Concordato or conduct by New Parmalat itself. Rather, it alleges that New Parmalat is liable "as the successor to Old Parmalat."[33]

Plaintiffs have stated that in asserting the claims against New Parmalat in the United States, they seek only to liquidate their claims here. They represent that they will seek to enforce any judgment only in the Parma Court.[34] In other words, they seek ultimately to recover New Parmalat stock in accordance with the Concordato's recovery ratios, with those ratios to be applied to the amounts of any judgments they obtain here.

---

[31]

TAC ¶¶ 1150-1160.

[32]

*Id.* ¶¶ 1161-73.

[33]

*See, e.g.*, *id.* ¶¶ 1151, 1162.

The remaining counts of the TAC assert claims of securities fraud and control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against various financial institutions, auditors, and others who allegedly were involved in Old Parmalat's fraudulent activity.

[34]

*See, e.g.*, Pl. Omnibus Mem. Opp'n (docket item 906) at 31 ("Class plaintiffs seek only the right to prosecute their claims here and then, if successful, obtain payment pursuant to the terms of the Concordato.").

New Parmalat moves to dismiss the claims against it in the TAC. Dr. Bondi moves to modify the Section 304 Order so as to bar claims against New Parmalat.

## Discussion

### I. Motion to Dismiss

In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.[35] Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[36] Allegations of securities fraud, however, must be stated with particularity.[37]

#### A. Successor Liability

New Parmalat does not argue that the TAC fails adequately to allege violations of

---

[35]

*Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002)).

[36]

*Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *But see Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (to allege antitrust conspiracy under the Sherman Act, plaintiff must allege "plausible grounds to infer an agreement" or "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

[37]

15 U.S.C. § 78u-4(b)(2); Fed. R. Civ. P. 9(b); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 394-95 (S.D.N.Y. 2005); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, No. 06-484, 2007 WL 1773208, *2 (June 21, 2007) (plaintiff must allege facts that give rise to "strong inference" of fraudulent intent, which means inference "must be cogent and compelling, thus strong in light of other explanations").

11

Rule 10b-5 by Old Parmalat's employees and auditors. Nor does it argue that plaintiffs' allegations of fraud are insufficiently particular. It argues instead that New Parmalat cannot be liable "as the successor to Old Parmalat" because it did not assume Old Parmalat's liabilities.

In general, successor liability exists when (1) there has been an express or implied agreement to assume the other company's debts and obligations, (2) the transaction was fraudulent, (3) there has been a de facto merger or consolidation of the companies, or (4) the purchasing company is a mere continuation of the selling company.[38]

Under the Concordato, New Parmalat assumed "[a]ll debts" of the sixteen participating Foreign Debtors. It undertook also to discharge those debts – including court-verified pre-insolvency claims by unsecured creditors – by issuing stock in accordance with the Concordato's recovery ratios.[39] New Parmalat therefore expressly agreed to assume Old Parmalat's liability, if any, for the fraud alleged in the TAC.

New Parmalat asserts that it "did not assume the pre-insolvency acts of the Foreign

---

[38]

E.g., *Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996).

The parties have not indicated that Italian law differs from our own on the issue of successor liability. Accordingly, U.S. law applies. *See, e.g.*, *In re Parmalat Secs. Litig.*, 479 F. Supp. 2d 332, 342 n.56 (S.D.N.Y. 2007) (law of forum applies if no conflict is shown to exist (citing cases)).

[39]

*See* Concordato ¶¶ 5.3, 7.3.

The Court may consider the Concordato in connection with the motion to dismiss, as plaintiffs relied on the document in making their claims against New Parmalat. *See* TAC ¶ 116 (alleging assumption of liability under agreement among creditors); *Weizmann Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002) (court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Debtors."[40] But the issue is not the assumption of *acts*. It is the assumption of *liability for those acts*. The doctrine of successor liability is premised on the idea that one company may be held liable for the acts of a predecessor when certain conditions are met, which is the case here.

New Parmalat suggests that it is being asked to bear more responsibility than it agreed to undertake. But it is not. Plaintiffs have stated that they seek only to liquidate their pre-insolvency claims so that they may attempt to enforce them in the Parma Court and, if successful, receive New Parmalat stock in accordance with the Concordato.[41] Accordingly, they seek only to hold New Parmalat to the terms of the Concordato.

B.      *Statute of Limitations*

New Parmalat next contends that plaintiffs' claims against it are untimely.

A plaintiff must file a securities fraud claim within the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation."[42] The parties agree

---

[40]

Def. Mem. Supp. Mot. Dismiss (docket item 772) at 11.

[41]

The parties dispute whether plaintiffs may do this. New Parmalat contends that the bankruptcy proceedings remain pending and that the Parma Court still has exclusive jurisdiction over creditor claims. Plaintiffs insist that the exclusive jurisdiction of the Parma Court ended when it approved the Concordato. Each side has submitted a declaration of an Italian law expert in support of its position. *Compare* Zavattarelli Decl. (docket item 906) ¶ 52, *with* Maffei Decl. (docket item 775) ¶ vii. But the Court need not resolve the issue. Matters of Italian law are best left to the Italian courts. If plaintiffs succeed on their claims here and take them to Italy, New Parmalat would be free to raise the issue there, and the Italian courts then could determine whether they would enforce any judgment rendered by this Court. *See Parmalat*, 479 F. Supp. 2d at 349 (plaintiffs may liquidate claims here and Italian courts can "determine whether they will enforce any judgment for punitive or treble damages").

[42]

28 U.S.C. § 1658(b).

13

that plaintiffs were aware of the facts underlying their claims at least as of December 27, 2003 when Old Parmalat was declared insolvent.[43] Plaintiffs first asserted their claims against New Parmalat on July 26, 2006, more than two years later. They argue that their claims are timely, however, because the statute was tolled.

A litigant seeking equitable tolling bears the burden of establishing that (1) it has pursued its rights diligently and (2) some extraordinary circumstance stood in its way.[44] Plaintiffs have met that burden here.

### 1.    *Diligent Pursuit of Rights*

On January 5, 2004, only days after Old Parmalat was declared insolvent, Plaintiffs filed the initial complaint alleging essentially the same fraud as in the TAC. They named as a defendant, among others, Foreign Debtor Coloniale S.p.A. ("Coloniale"), the majority owner of Parmalat Finanziaria S.p.A.[45] On March 5, 2004, they filed the first amended complaint, again naming Coloniale.[46] The bankruptcy court issued the Section 304 Order in July 2004, thus prohibiting claims against the Foreign Debtors in the United States. As a result, plaintiffs did not

---

[43]

Def. Mem. Supp. Mot. Dismiss 14; Pl. Omnibus Mem. Opp'n 23.

[44]

*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *accord Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005).

[45]

*See* 04 Civ. 0030, docket item 1, ¶ 24.

[46]

*See id.*, docket item 22, ¶ 58.

14

name any Foreign Debtors in the second amended complaint, which they filed on August 22, 2005.[47]

New Parmalat was formed on October 1, 2005, and assumed Old Parmalat's liabilities. This made it possible for plaintiffs again to pursue their claims, as New Parmalat was not protected by the Section 304 Order. On June 1, 2006, plaintiffs sought leave to amend the complaint to add claims against New Parmalat. The motion was granted on July 21, and plaintiffs filed the TAC five days later.

The Court is persuaded that plaintiffs were sufficiently diligent in pursuing their claims to merit equitable tolling. Plaintiffs diligently sought relief against Old Parmalat shortly after becoming aware of its potential wrongdoing and continued to assert their claims in a subsequent amended complaint. They did not name the Foreign Debtors in the second amended complaint, but they were foreclosed from doing so by the Section 304 Order. While plaintiffs perhaps were not paragons of conscientiousness in waiting as long as they did after New Parmalat's formation to file the motion for leave to amend, the delay was not so substantial as to preclude equitable tolling.[48] This especially is so considering plaintiffs' otherwise diligent attempts to pursue their claims prior to the issuance of the Section 304 Order, their continued assertion during the eight-month interval of claims against others allegedly involved in the fraud, and their expeditious filing of the TAC after the motion to amend was granted.

---

[47]

See id., docket item 325.

[48]

See Zhao v. I.N.S., 452 F.3d 154, 159 (2d Cir. 2006) (five month period not too long to merit equitable tolling).

2.      *Extraordinary Circumstances*

"[W]henever some paramount authority [such as a court order] prevents a person from exercising his legal remedy, the statute is tolled for that period during which he has been so thwarted."[49] Plaintiffs were enjoined from seeking relief in the United States against Old Parmalat as of July 2, 2004 when Judge Drain issued the Section 304 Order. Moreover, they already were prevented from seeking relief in Italy by the stay issued by the Parma Court.[50] Plaintiffs therefore had no means of enforcing their rights against Old Parmalat, either in Italy or the United States, as of July 2, 2004. Accordingly, the statute was tolled at that point, about six months after the limitations period began to run.[51]

---

[49]

*Ostrer v. Aronwald*, 434 F. Supp. 379, 388-89 (S.D.N.Y.), *aff'd*, 567 F.2d 551 (2d Cir. 1977) (limitations period governing right of action to recover damages for government's unlawful electronic surveillance is tolled during period when "claimant is prevented by court order from discovering the wiretap materials he needs in order to pursue such a claim" (quoting *In re Application for Order Authorizing Interception of Wire Commc'ns*, 413 F. Supp. 1321, 1335 (E.D. Pa. 1976) (citing *Braun v. Sauerwein*, 77 U.S. 218 (1870); *Davis v. Wilson*, 349 F. Supp. 905 (E.D. Tenn.) *aff'd mem.*, 471 F.2d 653 (5th Cir. 1972))).

[50]

As discussed in more detail below, the Parma Court declined to admit Hermes' claims for damages from Old Parmalat's alleged fraud. It held that under Italian law, those claims should have been asserted against the individuals who allegedly perpetrated the fraud, not Old Parmalat itself. *See* Zavattarelli Decl. (docket item 520) Ex. I (court decisions rejecting Hermes' claims); *id.* ¶¶ 35-36. Accordingly, plaintiffs could not have submitted their claims to the Parma Court as part of the insolvency proceedings either.

[51]

The Court notes that an automatic stay barring claims against a U.S. debtor under 11 U.S.C. § 362 – which often is considered analogous to an injunction under Section 304, *see, e.g.*, *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (an injunction under Section 304 "is not unlike the injunction which is automatic in a chapter 7 or 11 case pursuant to section 362 of the Code") – does not toll a statute of limitations. Section 108(c) of the Code provides that if a limitations period runs during the pendency of a Section 362 stay, a party has an additional thirty days to file a claim after receiving notice of the stay's termination. 11 U.S.C. § 108(c). The Second Circuit has held that this does not stop the limitations period from running while the stay is pending. "[B]y its terms § 108(c) does not provide for tolling of any externally imposed

On October 1, 2005, the Parma Court approved the Concordato. New Parmalat was created and assumed the liabilities of the Foreign Debtors, thus opening a new avenue to relief. Plaintiffs filed the TAC approximately ten months later. Hence, about sixteen months of the limitations period had elapsed on July 26, 2006 when the TAC was filed. This action was filed well within the two year limit.

New Parmalat argues that the statute was not tolled "as to claims against [it]" because the Section 304 Order applied only to the Foreign Debtors, not New Parmalat, which is a "separate and distinct entity."[52] But the argument overlooks the basic principle that "an assignee steps into the assignor's shoes and acquires whatever rights the latter had."[53] Regardless of the fact that it was not protected by the Section 304 Order, New Parmalat assumed liability on claims for which the statute of limitations previously had been tolled. Accordingly, plaintiffs' claims against New Parmalat are not time barred.

---

time bars . . . . The bankruptcy section only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993). Section 108(c) is silent as to the effect of a Section 304 injunction on a statute of limitations, however. The statute speaks only to stays under Sections 362, 922, 1201, and 1301 of the Code. Accordingly, the analogy to a Section 362 stay is not appropriate in this context.

[52]  Def. Mem. Supp. Mot. Dismiss 15.

[53]  *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir. 1998) (assignee of rights under Medicare statute receives also assignor's statutory appeals rights); *cf.* RESTATEMENT (FIRST) CONTRACTS § 167 ("An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment.").

C.      *Claim Preclusion*

Finally, New Parmalat argues that claims by the Bondholders and Hermes are barred by the doctrine of *res judicata*, often referred to as claim preclusion. Those plaintiffs, it asserts, already had their claims adjudicated in the Parma Court and therefore are precluded from bringing them here.

A federal court ordinarily applies federal law to determine the preclusive effect on a federal claim of a foreign country judgment.[54] Claim preclusion "bars relitigation of a claim where the prior claim (1) resulted in a final judgment on the merits (2) by a court of competent jurisdiction and (3) the subsequent claim asserts the same cause of action (4) between the same parties or their privies."[55] The burden of demonstrating that these elements are met "lies with the party arguing that claim preclusion bars the present action."[56]

---

[54]

See *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997) ("[T]the Court concludes that a federal court should normally apply either federal or state law, depending on the nature of the claim, to determine the preclusive effect of a foreign country judgment.").

In any event, the parties have not addressed the issue of what preclusive effect the Parma Court's decisions would have under Italian law. The Court therefore applies U.S. law. *See e.g.*, *Parmalat*, 479 F. Supp. 2d at 342 n.56.

[55]

*Parmalat*, 479 F. Supp. 2d at 342 (citing *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987)).

The same rules apply to the decisions of bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 334 (1966).

[56]

*Parmalat*, 479 F. Supp. 2d at 343.

*a.    The Bondholders*

The parties do not dispute that the Parma Court's resolution of claims brought by the Bondholders resulted in a final judgment on the merits between the same parties. There appears to be disagreement, however, as to whether the Parma Court had jurisdiction to adjudicate the Bondholders' fraud claims against New Parmalat. New Parmalat's Italian law expert stated in his declaration that, so long as the appeal from the decree approving the Concordato remains pending, the Parma Court has exclusive jurisdiction over creditor claims against New Parmalat.[57] Plaintiffs' expert, on the other hand, asserted that "after the approval of the [C]oncordato, the bankruptcy judge and the bankruptcy court do not have jurisdiction over the controversies that may arise among the debtor and one or more creditors and over controversies concerning the existence, the amount and priority of credits that must be verified with an ordinary civil action."[58] The Court need not resolve the dispute, however, as New Parmalat has failed to meet its burden of showing that the claims brought by the Bondholders in the Parma Court were the same as those asserted here.

The proofs of claim that the Bondholders submitted to the Parma Court identified only the type, face value, interest rate, and guarantor of each note the Bondholders owned.[59] The letters New Parmalat subsequently sent to the Bondholders indicated that the Bondholders received

---

[57]    Maffei Decl. (docket item 775) ¶ vii.

[58]    Zavattarelli Decl. (docket item 906) ¶ 52.

[59]    *See, e.g.*, Hawxhurst Decl. (docket item 774) Ex. D (Cattolica's "Proof of Debt" filed in Parma Court).

The Court may consider this evidence in deciding the motion to dismiss, as the documents were in plaintiffs' possession. *See Weizmann*, 229 F. Supp. 2d at 246 (citing *Chambers*, 282 F.3d at 153).

New Parmalat stock in exchange for those notes.[60] This suggests that the Bondholders' claims were purely contractual in nature and that the Bondholders converted their notes into New Parmalat stock according to the Concordato's recovery ratios. Here, by contrast, the Bondholders seek to recover damages allegedly caused by Old Parmalat's fraud – that is, the losses they suffered due to the decline in value of their securities as a result of the alleged fraud.

For example, the record indicates that Cattolica purchased €5 million worth of Old Parmalat bonds before the collapse. The company subsequently converted its bonds into New Parmalat stock, which it then sold for approximately €3.5 to 4 million.[61] Similarly, CFAM purchased approximately €940,000 worth of Old Parmalat bonds. It converted these bonds into to New Parmalat stock, which it sold for about half the amount of its initial investment.[62] Cattolica and CFAM therefore may have suffered losses of as much as €1 to 1.5 million and €470,000 respectively, some of which may have been caused by Old Parmalat's alleged fraud.[63] It is these losses that the Bondholders seek to recoup by asserting the claims in the TAC. New Parmalat has offered no

---

[60]

        *See, e.g.*, Hawxhurst Decl. (docket item 774), Ex. E (letter confirming award of New Parmalat shares and warrants to Cattolica ).

[61]

        *See id.* Ex. F (Azzollini Depo.) at 516.

[62]

        *See id.* Ex. H (Vandenkerchove Depo.) at 232-33.

[63]

        The record indicates that Kronengold had not sold her shares of New Parmalat as of August 30, 2006. *See id.* (Kronengold Depo.) at 41 (Kronengold now owns 504 shares of New Parmalat). If Kronengold continues to hold on to her shares, there is some doubt whether her claims against New Parmalat are viable, as she may be unable to prove loss causation. *See In re Estee Lauder Cos.*, No. 06 Civ. 2505 (LAK), 2007 WL 1522620 (S.D.N.Y. May 21, 2007) (loss causation in securities fraud cases must be proved by showing that plaintiff sold security at a loss, not simply that value declined after purchase (citing *Dura Pharms., Inc. v. Broudo*, 125 S.Ct. 1627, 1629 (2005)). New Parmalat does not raise this issue, however, nor is a motion to dismiss the proper place to decide it.

evidence that the Bondholders asserted a claim for such losses in the Parma Court, or that the court ever passed on the issue of Old Parmalat's alleged fraud.

New Parmalat nevertheless argues that the Bondholders' fraud claims are precluded because they could have been brought in the Parma Court when the Bondholders converted their bonds into New Parmalat stock. It cites the proposition that "when a final judgment has been entered on the merits of a case, it is a finality . . . not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."[64] According to New Parmalat, the Bondholders' claims for fraud could have been brought in the Parma Court because they are based on the same alleged conduct and the same bonds. This is unpersuasive.

In the Second Circuit, "[a] first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first."[65]

The critical evidence needed to support the Bondholders' securities fraud claims is that Old Parmalat committed fraud and that the Bondholders suffered damages as a result when they sold at a loss the New Parmalat stock they received under the Concordato. But this evidence would have been irrelevant to prove the claims submitted to the Parma Court. The operative facts

---

[64]

Nevada v. United States, 463 U.S. 110, 129-130 (1983) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1876)) (quotations and alterations omitted).

[65]

Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997) (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997)).

underlying those claims were that the Bondholders held valid Old Parmalat notes with money due and owing. The Bondholders were entitled to collect on their claims in the Parma Court regardless of whether they were defrauded.

New Parmalat suggests that allegations of Old Parmalat's fraud did underlie the claims submitted to the Parma Court because those claims would not have arisen had Old Parmalat not collapsed and because the Bondholders now contend that the collapse was caused by fraud. The relevant transaction underlying the claims in the Parma Court, however, was Old Parmalat's failure to pay money due and owing on the Bondholders' notes. This failure may in turn have been caused by Old Parmalat's collapse. But the reason for the failure to pay the Bondholders was not at issue in the prior proceedings. Accordingly, while Bondholders' prior claims perhaps could be traced to Old Parmalat's collapse, those claims were not based on allegations of fraud.

Put another way, the Bondholders seek redress in this Court for an injury that was not remedied in Parma and to collect entirely different debts – the debts they allegedly are owed as defrauded purchasers of bonds who suffered losses on their investments as opposed to the debts they were owed as holders of bonds with money due and owing. In cases where a party sues on a contract and subsequently sues for fraud in connection with the contract, courts have held that claim preclusion generally applies when the plaintiff seeks in the latter action to collect the same damages or remedy the same injury as in the former.[66] That is not the case here.

---

[66]  *See, e.g., Kforce, Inc. v. Surrex Solutions Corp.*, 436 F.3d 981, 984-85 (8th Cir. 2006) (action against competitor for, *inter alia*, tortious interference with contract and conspiracy to breach contract precluded under state law where party previously had sued for breach of non-compete agreement, as the tort damages sought in the second action were the direct and natural consequence of the contract breach that was the basis for the first action, thus indicating that the party sought damages for the same injury twice); *United States v. Temple*, 299 F.2d 30 (7th Cir. 1962) (action under False Claims Act for fraudulently

This is not to say that claim preclusion never applies when the subsequent claim is

based on related facts and seeks redress for an injury different than that asserted on the prior claim.

The Second Circuit's test requires a court to examine whether the same *transaction* underlay both

claims, and a single transaction of course could give rise to two distinct injuries. The point, however,

is that whether the injury alleged in the subsequent action is different from that alleged in the prior

action can be probative of whether the actions arose out of different transactions, that is, whether the

evidence required to prove one differs from the evidence required to prove the other.[67]

---

inducing a company to make loans to the defendant precluded where the government previously had sued the defendant for money owed on the promissory notes issued, as it recovered in the first action "a judgment representing the compensatory damages which it sustained by reason of the false and fraudulent statements" that were the basis of the second action, despite the fact that double damages were available under the False Claims Act); *Pennsylvania Eng'g Corp. v. Islip Res. Recovery Agency*, 710 F. Supp. 456, 463 (E.D.N.Y. 1989) (claim based on fraudulent inducement to contract precluded where arbitrator previously had held that, under the contract, party was not entitled to an increase in construction price due to alleged changes and/or extended overhead costs, because second suit would allow party "to relitigate its entitlement to these same costs under a 'new' fraud theory which it should have known about but chose not to present to the Arbitrator"); *Goldstein v. Doft*, 236 F. Supp. 730, 734 (S.D.N.Y. 1964) (under state law, prior arbitration of plaintiff's claim for commissions allegedly due under a contract precluded assertion in federal court of claims for damages based on misrepresentation, inducement of breach of contract, and unjust enrichment, as plaintiff sought essentially to recover the same money and expressly sought to support his prior claim for commissions due by charges of fraud and misrepresentation).

[67] *See, e.g.*, *McDonald v. Johnson & Johnson*, 776 F.2d 767, 770 (8th Cir. 1985) (under state law providing for "same evidence" or "same transaction" claim preclusion test, fraud in inducing a contract and a breach of that contract represent two distinct causes of action (citing cases)); *Insituform Techs., Inc. v. Reynolds, Inc.*, No. 4:05CV1116 CDP, 2007 WL 1198889, *1 (E.D. Mo. April 19, 2007) (distinguishing *Kforce* and holding that claims were not precluded where party in former suit obtained an injunction barring future breach of contract and tortious conduct, but not damages for past breach of contract or tortious conduct); *Glesenkamp v. Nationwide Mut. Ins. Co.*, 344 F. Supp. 517, 519 (N.D. Cal. 1972) (plaintiff not precluded under state law from suing for fraud based on allegation that insurer never intended to perform under policy where plaintiff previously had recovered amount due under policy on a contract claim, because fraud may have caused damages above and beyond those caused by breach).

In the last analysis, the Court is persuaded that the claims submitted by the Bondholders to the Parma Court arose out of different transactions than the claims alleged in the TAC. Evidence of fraudulent activity or any other cause of Old Parmalat's collapse was not at issue in Parma. Nor were the damages allegedly caused by Old Parmalat's fraud. These issues, however, are the center of the dispute here. Accordingly, the Bondholders' claims are not precluded.

### b.   Hermes

The claims brought by Hermes are another matter. "Hermes claimed damages resulting from its purchases of Parmalat's shares at prices inflated by [Old Parmalat's alleged] fraud."[68] It plainly seeks the same damages here. Nevertheless, its claims are not precluded, as the Parma Court did not issue a final decision on the merits.

Hermes submitted its claims to the Parma Court prior to the approval of the Concordato, seeking to have them included on the list of Old Parmalat's liabilities. The Parma Court excluded the claims, holding that they should have been asserted against Old Parmalat's employees and auditors.[69] According to the declaration of Italian bankruptcy lawyer and law professor Daniela

---

[68]   Pl. Mem. Supp. Mot. Amend (docket item 518) at 21 n.15; Zavattarelli Decl. (docket item 520) ¶ 34 ("In the proofs of claim, Hermes requested compensation for its damages resulting from its sales of Parmalat shares at a loss, as those shares had been purchased at inflated prices due to the fraud at Parmalat."); see id. Ex. G (Hermes's proofs of claims in Parma Court).

[69]   The Parma Court noted that insofar as Hermes sought to recover the value of its shares, its claims could not be admitted, as Italian law provides that a shareholder has a right to be reimbursed for the value of its shares only upon the dissolution of the company and only after all the creditors of the company have been paid. The court therefore interpreted Hermes' claims as seeking "the damages to its assets by the directors who with their intentional and criminal behavior concealing the financial instability of the company . . . induced [Hermes] to purchase shares at a price that did not correspond with their real

Zavattarelli, the Parma Court's decision was made as part of a "summary, administrative proceeding" that was not "based on any discovery."[70]

> "Under Italian law, this summary procedure is considered a mere administrative proceeding, which may be reversed by the court following the challenge to the prior summary ruling and following a full review of the evidence and legal argument. In fact, the subsequent proceeding involves the introduction of new evidence (including testimony not presented in the summary proceeding), along with additional briefing and argument. The summary order of the Parma court has, in fact, been challenged by Hermes and this challenge triggered the beginning of an actual civil litigation."[71]

Courts long have held that the pendency of an appeal ordinarily does not suspend the preclusive effect of an otherwise final judgment.[72] But there is an exception for situations in which the appeal actually involves a trial *de novo*.[73] According to Zavattarelli, Hermes' appeal triggered full scale civil litigation and all of its attendant procedure. On appeal, Hermes will be able to take

---

[70]   value." The court held, however, that such claims were not properly asserted against Old Parmalat itself, but rather should have been directed against the individuals who allegedly committed fraud. Zavattarelli Decl. (docket item 520) Ex. I; *id.* ¶¶ 35-36.

[70]   Zavattarelli Decl. (docket item 906) ¶ 47.

[71]   *Id.*

New Parmalat's expert stated also that Hermes' appeal triggered "full-fledged hearings [in which] the parties have a right to submit all legal arguments and establish all proof which they will be able to develop and produce." Maffei Decl. (docket item 775) Ex. B, ¶ 21.

[72]   *E.g.*, *Cerbone v. County of Westchester*, 508 F. Supp. 780, 785 (S.D.N.Y. 1981).

[73]   *Id.*; *accord, e.g.*, *Nixon v. Richey*, 513 F.2d 430, 438 n.75 (7th Cir. 1975); *In re Laventhol & Horwath*, 139 B.R. 109, 114 (S.D.N.Y. 1992); *Neeld v. Nat'l Hockey League*, 439 F. Supp. 446, 451 n.4 (S.D.N.Y. 1977); 18A Charles A. Wright, et. al, Federal Practice and Procedure § 4433 (2d ed. 2002) ("[A] final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo." (citing *Deposit Bank v. Frankfort*, 191 U.S. 499 (1903)).

discovery, put on evidence, and make legal arguments anew.[74] Hence, it cannot be said that the Parma Court's decision to exclude Hermes' claims from the list of Old Parmalat's liabilities was a final adjudication on the merits.

This may mean, of course, that Hermes will end up litigating its claims simultaneously in this Court and in Italy. But this does not merit dismissal. A district court in appropriate circumstances may dismiss an action if it finds, in its discretion, that adjudication in the United States would interfere with pending litigation in a foreign court.[75] But New Parmalat does not move to dismiss Hermes' claims on that ground. Moreover, parallel U.S. and foreign proceedings "in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until

---

[74]

The Court notes also, although it does not decide, that the procedure used to adjudicate Hermes' claims in the first instance alone may be grounds for rejecting the claim preclusion argument. "United States courts 'may choose to give res judicata effect to foreign judgments on the basis of comity,' but 'are not obliged' to do so." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (quoting *Mezitis Diorinou v. Mezitis*, 237 F.3d 133, 140 (2d Cir. 2001)). "As a general rule, comity may be granted where 'it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated.' Indeed, as long as the foreign court abides by 'fundamental standards of procedural fairness,' granting comity is appropriate."*Id.* (quoting *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 457 (2d Cir. 1985)). If, as Ms. Zavattarelli suggests, the procedure used by the Parma Court in adjudicating Hermes' claims involved no discovery or formal presentation of evidence, there is room to doubt that the decision ought to be granted comity. Indeed, the New Jersey state court overseeing one of the lawsuits brought by Dr. Bondi described the insolvency practices and procedures mandated by the Marzano Law as "minimalist" and "pedestrian." *Bondi v. Citigroup, Inc.*, No. BER-L-10902-04, 2005 WL 1284041, *6 (N.J. Super. Ct. Law Div. May 31, 2005). It held that a defendant's previous filing of a claim in Italy as part of a proceeding involving that procedure would not preclude a related counterclaim in a New Jersey action. *See id.*

[75]

*See, e.g.*, *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.* 466 F.3d 88, 92 (2d Cir. 2006) (court may abstain from exercising jurisdiction as a matter of international comity).

a judgment is reached in one which can be pled as res judicata in the other."[76] "The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them."[77] As neither this Court nor the Parma Court yet has rendered a final decision on Hermes' claims, dismissal is inappropriate.

II.      *Motion to Modify the Section 304 Order*

Section 304 of the Bankruptcy Code[78] provides, in relevant part, that a representative of a foreign debtor may petition a bankruptcy court to "enjoin the commencement or continuation of any action against a debtor with respect to property involved in [a] foreign proceeding."[79] The

---

[76]

*Id.* (quoting *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987).

[77]

*Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

The fact that the Parma Court held that Old Parmalat could not be held liable for the actions of its agents does not warrant dismissal either. If plaintiffs succeed in liquidating the claims in this Court, the Italian courts would be free to decide whether to enforce them. *See Parmalat*, 479 F. Supp. 2d at 349.

[78]

11 U.S.C. § 304. This section was repealed in 2005 but remains applicable where, as here, a case was commenced before the effective repeal date. The law governing a U.S. court's ability to aid foreign bankruptcy proceedings now appears in Chapter 15 of the Code.

[79]

*Id.* § 304(b) (subdivision numbering omitted).

The bankruptcy court already held, and the parties do not dispute, that the Italian bankruptcy proceedings are "foreign proceedings" and that Dr. Bondi is a "foreign representative" within the meaning of the Code. *See, e.g.*, Zilka Decl. (docket item 519) Ex. 17 (Section 304 Order as modified to remain in effect through Mar. 31, 2006) ¶¶ 1-2.

Plaintiffs contend that New Parmalat is not entitled to relief because the TAC does not assert claims against "a debtor with respect to property involved in a foreign proceeding."

statute provides that, in deciding whether to grant Section 304 relief, "the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with" six factors,[80] including, *inter alia*, the "just treatment of all holders of claims against or interests in such estate"[81] and "comity."[82]

The Court previously modified the Section 304 Order to allow GTI to file a third-party complaint in the Securities Fraud Action against Old Parmalat for contribution. It based its decision principally on the following considerations:

- "[T]he interests of judicial economy and the policy of doing whatever would 'best assure an economical and expeditious administration of [the foreign] estate' both would be served by liquidation of Parmalat's liability, if any," in the United States where the relevant facts already were being litigated as part of the Securities Fraud Action.[83]

---

But the Court need not reach the issue. As will become clear, even assuming that New Parmalat is entitled to relief under Section 304(a) and (b), the Court is persuaded that relief is not warranted under Section 304(c).

[80]

11 U.S.C. § 304(c).

[81]

*Id.* § 304(c)(1).

[82]

*Id.* § 304(c)(5).

The parties agree that the remaining factors are not implicated here. *See* Pl. Omnibus Mem. Opp'n 31 n.30; Def. Mem. Supp. Mot. Modify (04 Civ. 0030, docket item 621) at 20-29.

[83]

*Parmalat*, 472 F. Supp. 2d at 585.

28

- "[T]he interests of comity would be served fully by the fact that the enforceability of any contribution judgment would be reserved entirely to the Italian courts," as GTI sought only to liquidate its claim in the United States and enforce it in Italy.[84]

- "[T]he 'just treatment of all holders of claims against or interests in [the foreign] estate' . . . would be served . . . for much the same reason. Unless [GTI] were permitted to assert the contribution claim in the Securities Fraud Action, it would, should it be found liable there, be compelled to relitigate much of the case in the Italian courts in order to establish its claim for contribution."[85]

- Dr. Bondi's claim to Section 304 relief was weakened by the fact that he "resorted eagerly to litigation in the United States by bringing the Recovery Actions. . . . [H]is equitable claim to the protection of the U.S. courts would have been stronger had he elected to pursue all of his claims in Italy, the jurisdiction in which the bankruptcies are pending, rather than resorting to U.S. litigation when it suits him and seeking protection of the U.S. courts

---

[84]  *Id.* at 586.

[85]  *Id.*

against his involvement where it does not."[86]

- "[T]he process of settling the entire controversy, in all of its permutations, would be facilitated by having all potentially liable parties, including the Foreign Debtors, before the Court."[87]

The same considerations weigh against Section 304 relief here. It would be economical and efficient to liquidate New Parmalat's liability, if any, as part of the Securities Fraud Action. As a result of GTI's third-party complaint, New Parmalat already is before the Court to litigate the issue of its relative fault in the fraud alleged in the TAC. The Italian courts therefore would benefit from having New Parmalat's liability determined alongside that of other alleged perpetrators of the fraud, "as opposed to being confronted . . . with the need . . . to relitigate the Securities Fraud Action in Italy for the purpose of determining . . . [New Parmalat's fault] under the complex and, to Italian courts, unfamiliar federal securities laws."[88]

Moreover, the interests of comity and the just treatment of claim holders would be served by allowing the claims to go forward, as plaintiffs seek to liquidate their claims in the United States, but would seek to enforce any judgment only in Italy. It will "be up to the Italian courts to decide whether a . . . judgment [against New Parmalat] should be recognized at all and, if so, its

---

[86]     *Id.* at 587.

[87]     *Id.*

[88]     *Id.* at 586.

30

consequences in the bankruptcy proceedings involving the Foreign Debtors."[89]

Finally, Dr. Bondi's claim to equitable relief is no stronger than before. And having the claims against New Parmalat before this Court along with the others alleged in the TAC will aid the process of possibly settling this dispute. Accordingly, while denying Section 304 relief undoubtedly would impose some expense on New Pamalat, the Court is persuaded that the benefits in efficiency and expeditiousness outweigh the costs.[90]

*Conclusion*

The motions to dismiss the TAC as to New Parmalat [04 MD 1653, docket item 771] and modify the Section 304 Order [04 Civ. 0030, docket item 620] are denied in all respects. The foregoing constitute the Court's findings of fact with respect to the latter motion and its conclusions of law.

SO ORDERED.

Dated:       June 28, 2007

_____
                                    Lewis A. Kaplan
                           United States District Judge
(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[89]

    *Id.*

[90]

    *See id.* at 587 (potential cost to Dr. Bondi "unquestionably cuts against allowing the assertion of the third-party contribution claim. In my view, however, this consideration is substantially outweighed by" the above considerations).