UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

This document relates to:    04 Civ. 0030
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER DOCKET
04 MD 1653 (LAK)

## MEMORANDUM AND ORDER

Lewis A. Kaplan, *District Judge.*

This is a purported class action on behalf of purchasers of securities of the international dairy conglomerate Parmalat Finanziaria S.p.A. and its subsidiaries and affiliates (collectively "Parmalat"). The Court assumes familiarity with its prior opinions.[1] The case is before the Court on a motion for summary judgment dismissing the Section 10(b)[2] and Rule 10b-5[3] claims against defendants Bank of America Corporation, Bank of America, N.A., and Banc of America Securities Limited (collectively "BoA"), Citigroup Inc., Citibank, N.A., and Eureka Securitisation plc (collectively "Citi"), and Pavia e Ansaldo ("Pavia") in the Third Amended Consolidated Class Action Complaint.

In a previous decision, *In re Parmalat Sec. Litig.,* 376 F. Supp.2d 472 (S.D.N.Y.

---

[1]
Particularly relevant are the opinions reported at 376 F. Supp.2d 472 (S.D.N.Y. 2005), deciding *inter alia* Citi's and BoA's motions to dismiss the first amended complaint, 383 F. Supp.2d 616 (S.D.N.Y. 2005), deciding Pavia's motion to dismiss the first amended complaint, 414 F. Supp.2d 428 (S.D.N.Y. 2006), deciding BoA's motion to dismiss the second amended complaint, and 497 F. Supp. 2d 526 (S.D.N.Y. 2007), deciding *inter alia* Citi's and BoA's motions to dismiss the foreign purchasers' claims.

[2]
15 U.S.C. § 78j(b).

[3]
17 C.F.R. § 240.10b-5.

2005), this Court upheld on a motion to dismiss the first amended complaint the legal sufficiency of some, but not all, of plaintiffs' Section 10(b) claims against Citi and a number of other banks. It held that plaintiffs could have prevailed against those defendants under Rule 10b-5(a) and 10b-5(c) with respect to some (but not all) of the challenged transactions, assuming that they proved their allegations notwithstanding their lack of any actionable misrepresentations or omissions by them. The moving defendants now seek summary judgment of dismissal on the ground that *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S.Ct. 761 (2008), forecloses this theory of liability.

In *Stoneridge*, the Supreme Court held that "[r]eliance by the plaintiff *upon the defendant's deceptive acts* is an essential element of the §10(b) private cause of action." 128 S. Ct. at 769 (emphasis added). Although it recognized that reliance may be presumed where (1) a party omits a material fact in breach of a duty to disclose or (2) a party's deceptive acts are communicated to the public, the Court, in holding that neither presumption applied, rejected the proposition "that in an efficient market investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect." *Id.* at 769-70. It then determined that where "[n]o member of the investing public had knowledge, either actual or presumed," of a defendant's "own deceptive conduct," a plaintiff could not "show reliance . . . except in an indirect chain . . . too remote for liability." *Id.* Plaintiffs argue that *Stoneridge* does not preclude a finding of Section 10(b) liability here because they can establish reliance with respect to all three movants.

Plaintiffs contend first that reliance should be presumed with respect to both BoA and Pavia because each breached a duty of disclosure. They claim that BoA, as a placement agent, breached a duty to disclose "the true facts about the BoA Brazilian transaction" to investors who

purchased securities from BoA in private placements.  Pls. Mem. at 9-10.  And they contend that Pavia breached a duty, allegedly imposed by Rule 4.1 of the Model Rules of Professional Conduct, to disclose Parmalat's allegedly fraudulent conduct with respect to its divestiture of certain brands and trademarks pursuant to an order from the Italian antitrust authority.  *Id.* at 16.  Plaintiffs' arguments, however, are unpersuasive.

The fundamental problem with plaintiffs' argument with respect to BoA is flows from the fact that the duty of disclosure that BoA allegedly breached was a duty owed only to purchasers from BoA in private placements.  While plaintiffs maintain that some members of the alleged class bought from BoA in private placements, they concede that none of the named plaintiffs themselves did so.  *See* BoA Rule 56.1 Statement ¶ 164.  This is fatal to plaintiffs' argument.  Although reliance is presumed where a defendant seller breaches a duty of disclosure, only investors to whom the duty was owed may avail themselves of that presumption.  *See Stoneridge*, 128 S. Ct. at 769 ("[I]f there is an omission of a material fact by one with a duty to disclose, the investor *to whom the duty was owed* need not provide specific proof of reliance.") (emphasis added).  Thus, reliance is not presumed merely because named plaintiffs in a purported class action allege that a duty was owed to other members of the proposed class.  *Accord In re Initial Pub. Offering Sec. Litig.*, 341 F. Supp.2d 328, 343-44 (S.D.N.Y. 2004).

Plaintiffs' only argument with respect to Pavia is that Pavia breached a duty to disclose by violating Rule 4.1 of the Model Rules of Professional Conduct.  Pls. Mem. at 16.  But even assuming *arguendo* the applicability of the Model Rules[4] and that Pavia violated Rule 4.1, it

---

[4]  Plaintiffs recognize that "New York uses the Code of Professional Responsibility and has not officially adopted the Model Rules" but contend that the Second Circuit has recognized

would not follow that Pavia breached a legal duty *to the plaintiffs*. *See* MODEL RULES OF PROF'L CONDUCT, Preamble and Scope ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules . . . are not designed to be a basis for civil liability.").

Plaintiffs next attempt to show reliance by arguing that the public was made aware of the allegedly deceptive transactions in which each defendant was involved. Specifically, they contend that Parmalat (1) issued press releases, bond prospectuses, and offering memoranda in which it discussed the Brazilian transaction[5] and named BoA as the leader of "a Group of North American investors" involved in the deal, *see* Pls. Mem. at 7, (2) discussed in its financial statements, bond prospectuses, and private placement memoranda its securitization operations, which were transactions that to some extent involved Citi, *see id.* at 11-13, and (3) discussed in bond prospectuses and press releases an allegedly fraudulent transaction – the Nulait transaction[6] – that was structured and implemented by Pavia in response to an order from the Italian antitrust authority. *See id.* at 14-15. Plaintiffs attempt to distinguish *Stoneridge* on the ground that these disclosures led

that the "Code" has been superseded by the Model Rules. *See* Pls. Mem. at 16 n.53, citing *Purdy v. United States*, 208 F.3d 41, 47 (2d Cir. 2000). But they are mistaken. The Second Circuit in *Purdy* noted no more than that the ABA's Model Code of Professional Responsibility had been superseded by its Model Rules of Professional Conduct. That certainly is true as far as the American Bar Association is concerned. But the standard that governs New York lawyers remains New York's Code of Professional Responsibility. *See, e.g.*, *In re McKelvey*, __ A.D.3d __, 2008 WL 2714334 (4th Dept. July 11, 2008); *see also Solow v. Conseco, Inc.*, No. 06 Civ. 5988(BSJ)(THK), 2007 WL 1599151, at *3 & n.4 (S.D.N.Y. June 4, 2007).

[5] Plaintiffs do not oppose summary judgment on the Venezuela transaction. *See* BoA Rule 56.1 Statement ¶ 177.

[6] Plaintiffs no longer assert any claims against Pavia based on the Webholdings transactions. Pls. Mem. at 14 n.47.

investors to rely on the deceptive transactions themselves, not merely on financial statements that were impacted by those transactions.  This argument too is unconvincing.

*Stoneridge* made plain that investors must show reliance upon a defendant's *own deceptive conduct* before that defendant, otherwise a secondary actor, may be found primarily liable.  Plaintiffs' evidence falls well short of this standard.  Nothing about Parmalat's disclosures describes any defendant's own conduct, much less conduct that was deceptive.  Indeed, the only defendant even named in any of Parmalat's public statements – BoA – was involved in a transaction that was not in itself deceptive.  *See In re Parmalat Sec. Litig.*, 414 F. Supp.2d at 433-34.  In consequence, even assuming the truth of plaintiffs' factual allegations and granting every reasonable inference therefrom, plaintiffs' evidence would establish only that investors relied on Parmalat's deceptive disclosures concerning transactions to which defendants were parties.  It would not establish reliance on any defendant's own deceptive conduct except "in an indirect chain" the type of which the Supreme Court found "too remote for liability."  *Stoneridge*, 128 S. Ct. at 769.[7]

As plaintiffs have failed to establish the reliance element of their Section 10(b) claims against BoA, Citi, and Pavia, the Court need not address defendants' additional grounds for summary judgment.  Moreover, plaintiffs' Section 20(a)[8] claims with respect to BoA, Citigroup Inc., and Citibank, N.A.,[9] which are predicated upon primary violations of Section 10(b), fail as a matter of

---

[7]  The Court has considered plaintiffs' other arguments regarding reliance and concluded that they are without merit.

[8]  15 U.S.C. § 78t(a).

[9]  Plaintiffs assert no Section 20(a) claims against Eureka Securitisation plc.

law because they have not made out a *prima facie* case of any such violations by any of those defendants. *See In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 637 (S.D.N.Y. 2008) ("Section 20(a) claims are necessarily predicated on a primary violation of securities law . . . ."), citing *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).[10]

For the foregoing reasons, Bank of America Corporation, Bank of America, N.A., Banc of America Securities Limited, Citigroup Inc., Citibank, N.A., Eureka Securitisation plc, and Pavia e Ansaldo's motion for summary judgment dismissing the Third Amended Class Action Complaint as against them [04 MD 1653, docket item 1579; 04 Civ. 0030, docket item 982] is granted. As this ruling disposes of all claims against these defendants and there is no just reason for delay, the Clerk is directed, pursuant to Fed. R. Civ. P. 54(b), to enter final judgment with respect to these defendants.

SO ORDERED.

Dated:          August 7, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[10]    Plaintiffs assert a claim against Pavia under Section 20(a), in which they seek to impose control person liability for alleged Section 10(b) and Rule 10b-5 violations by its former partner, Gian Paolo Zini. As the Section 10(b) and Rule 10b-5 claims against Zini fail for the same reasons as those against Citi, BoA, and Pavia, the Section 20(a) claim against Pavia must be dismissed.