UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

This document relates to: 04 Civ. 0030

MASTER DOCKET
04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Steven J. Toll
Lisa M. Mezzetti
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

Stuart M. Grant
James J. Sabella
John C. Kairis
Diane Zilka
GRANT & EISENHOFER, P.A.

*Attorneys for Plaintiffs*

Daniel F. Kolb
DAVIS POLK & WARDWELL, LLP
*Attorneys for Defendant Deloitte & Touche, LLP*

LEWIS A. KAPLAN, *District Judge.*

Deloitte & Touche LLP ("DT-US") moves for reconsideration of this Court's recent

decision denying its motion for summary judgment dismissing the complaint.[1]

DT-US argues that none of the three specific factors cited by the Court in denying summary judgment alone is sufficient to support a jury finding that DT-US controlled Deloitte Touche Tohmatsu ("DTT"). DT-US incorrectly considers each factor in isolation.[2] Taking those factors – viz., evidence that (1) several DT-US partners, including many who held key leadership positions at DT-US, simultaneously held senior officer positions at DTT, (2) DT-US provided a significant portion of DTT's funding, and (3) DT-US in at least one instance influenced DTT's decision making – together, a jury reasonably could conclude it was more likely than not that DT-US controlled DTT and that DTT thus was its agent. Moreover, DT-US's motion ignores the Court's statement that "the totality of the evidence – including evidence concerning the structure and internal relationships of Deloitte generally, DTT's authority over the professional practices of the member firms, and DTT's exercise of that authority in connection with the Parmalat engagement – raises a genuine issue of material fact as to whether Deloitte Italy was an agent of DTT with respect to the Parmalat engagement."[3] In other words, it neglects the fact that the Court's conclusion rested not only on the three specific factors discussed in the opinion, but an abundance of other evidence that properly might be considered by a jury in resolving the agency and control issues.

Aside from the specific points discussed in the previous opinion, the evidence suggests that DTT is part of an international organization that is disproportionately dependent upon

1 *In re Parmalat Secur. Litig.,* No. 04 MD 1653 (LAK), __ F. Supp.2d __, 2009 WL 179920 (S.D.N.Y. Jan. 27, 2009).

2 *See, e.g.*, *Garcia v. Herald Tribune Fresh Air Fund, Inc.*, 51 A.D.2d 897, 897-98, 380 N.Y.S.2d 676, 679 (1st Dep't 1976) (considering several factors in combination in concluding agency relationship existed).

3 *In re Parmalat Secur. Litig.,* 2009 WL 179920, at *6.

and influenced by a single member firm: DT-US. DT-US is DTT's largest member firm and contributes the largest portion of DTT's operating costs.[4] As of 2000, it represented more than fifty percent of DTT's assets.[5] In the words of James Copeland, chief executive officer of both DT-US and DTT, DT-US wielded "significant" influence over DTT's board of directors[6] and controlled more seats on the board than any other member firm.[7] Without DT-US, said Mr. Copeland, DTT would "cease[] to be a credible global firm."[8] DT-US held equity in and had the right to select directors of some member firms.[9] Indeed, DT-US partners were seconded to some member firms to serve as their chief executive officers or in other high ranking positions.[10] Thus, while a jury would not be obliged to find that DT-US controls DTT, it certainly cannot be said, at least at this stage, that it a jury could not rationally so conclude.

DT-US argues also that the Court misapprehended the facts regarding the third factor, DT-US's possible influence over DTT's decision making. The decision at issue was whether to approve the separation of Deloitte Consulting from DTT. DT-US contends that, as part of this

---

4 Copeland Dep. at 45.

5 *Id.* at 28-29.

6 *Id.* at 29-30.

7 DTT 017401.

8 *Id.* at 30.

9 Copeland Dep. at 68-72, 80-83.

10 *Id.* at 68-71, 75, 78-82.

process, each member firm had to decide independently whether to spin off its own consulting function from its auditing function. DT-US independently made the decision not to separate its consulting function from its accounting practice. DTT then concluded that, without the participation of DT-US, the separation of the global consulting practice from DTT was not viable and removed the proposal from the board's consideration.[11] According to DT-US, this incident does not demonstrate DT-US's control of DTT because DT-US's decision was "DT US's alone to make."[12] DTT's subsequent choice not to proceed with the worldwide transaction was based solely on the practical reality that it would fail without DT-US's participation.

As an initial matter, the draft minutes of the DTT board's March 28, 2003 meeting offer an alternative view of the facts. The minutes state that "the proposal to separate Deloitte Consulting from DTT, previously conditionally approved by the Board . . . had been withdrawn. The leadership of the US Firm had concluded that the risk of the transaction was unacceptable . . . and they could not recommend it."[13] Thus, a permissible reading of this document indicates that DT-US concluded that the worldwide transaction was too risky, in consequence of which DTT dropped its plan to spin off Deloitte Consulting. This document thus is susceptible of the interpretation that DT-US influenced, and possibly controlled, DTT's decision. Because the Court must view the facts in the light most favorable to the plaintiffs and resolve all factual ambiguities in their favor,[14] the Court

---

[11] DI 1672 at 5.

[12] *Id*.

[13] DTT 200094.

[14] *Tom Rice Buick-Pontiac v. Gen. Motors Corp.*, 551 F.3d 149, 154 (2d Cir. 2008).

must credit this version of the facts for the purpose of considering DT-US's motion for summary judgment.

To be sure, DT-US's version of the facts is more than plausible. But even if the Court were permitted to accept DT-US's version on this motion, it would not change the result. According to DT-US's version of the facts, DT-US's consulting practice was so substantial compared to all other member firms' practices combined that there was "no reason for DTT to consider further Deloitte Consulting's withdrawal from DTT" once DT-US decided it would not separate its consulting firm from its accounting practice.[15] In other words, DT-US's unilateral decision caused the DTT board to drop the proposal from its agenda. From this, a jury reasonably could infer that DT-US at least influenced and possibly controlled DTT's decision on the subject.

In light of all the evidence, considered together, a reasonable jury could conclude that it is more likely than not that DT-US controlled DTT. DT-US's motion for reconsideration [04MD1653 docket item 1672, 04 Civ. 0030 docket item 1043] is denied.

SO ORDERED.

Dated: February 23, 2009

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

.

15 DI 1672 at 5.